UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) | Case No. 06-15601 |
| | ) | |
| Plaintiffs, | ) ) | Hon. Gerald E. Rosen |
| v. | ) ) | Magistrate:  Mona K. Majzoub |
| | ) | |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL d.b.a BEAUMONT HOSPITALS, and TRINITY HEALTH CORP., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**THIRD CORRECTED
CLASS ACTION COMPLAINT
JURY TRIAL REQUESTED**

Plaintiffs Pat Cason-Merenda and Jeffrey A. Suhre ("Plaintiffs"), by and through counsel, on behalf of themselves and all others similarly situated, bring this action against defendants for damages, and demand trial by jury, files this complaint.

**Nature of the Action**

1.      Defendants, which own and operate hospitals in the Detroit-Warren-Livonia Metropolitan Statistical Area ("Detroit MSA" or "Detroit area"), have for years conspired among themselves and with other hospitals in the Detroit MSA to depress the compensation levels of registered nurses ("RNs") employed at the conspiring hospitals, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2.      In furtherance of their conspiracy, defendants and their co-conspirators also agreed to regularly exchange detailed and non-public information about the compensation each is paying or will pay to its RN employees.  The agreement to exchange such information has facilitated the formation, implementation and enforcement of defendants' wage-fixing conspiracy.  Pursuant to this agreement defendants and their co-conspirators in fact have exchanged such information, through meetings, telephone conversations and written surveys. The exchange of this information itself has suppressed competition among Detroit-area hospitals in the compensation of RN employees, and has depressed the compensation they have paid to such employees, in violation of Section 1 of the Sherman Act.

3.      Defendants' conspiratorial conduct has occurred in the context of a national nursing shortage.  Absent their conspiracy, Detroit-area hospitals would have responded to the nursing shortage by, among other things, substantially increasing RN compensation in an effort to attract a sufficient number of RNs to their respective hospitals.  The history of hospital RN compensation and vacancy rates in the Detroit MSA, however, reveals that hospital RNs are not being compensated at competitive levels.  Despite years of high vacancy rates, compensation for hospital RNs in the Detroit MSA has remained low and surprisingly stagnant.  The few compensation increases in the past several years have been far too small to substantially decrease the area's nursing shortage.

4.      Plaintiffs, on their own behalf and on behalf of the Class defined below, seek to recover for the compensation properly earned by RNs employed at Detroit-area hospitals but unlawfully retained by such hospitals as a result of the conspiracy alleged herein.  Plaintiffs also seek costs, including reasonable attorneys' fees and interest, as allowed by law.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

6.      Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c).

- 2 -

## PARTIES

7.     Plaintiff Pat Cason-Merenda is an RN who has been employed by Detroit Medical Center since November 2002 and currently resides within the Detroit MSA.

8.     Plaintiff Jeffrey A. Suhre is an RN who has been employed by Providence Hospital since November of 2002 and currently resides within the Detroit MSA.

9.     St. John Health is a member of Ascension Health and is comprised of numerous hospitals and medical facilities in southeast Michigan. St. John Health's principal place of business is located at 28000 Dequindre, Warren, Michigan 48092.

10.     Ascension Health is a Missouri corporation with its principal place of business located at 4600 Edmundson Road, St. Louis, Missouri 63134. Ascension Health is a parent corporation for health care systems and hospitals throughout the United States. It has affiliate hospitals and hospital systems throughout the United States and within the Detroit MSA, including St. John Health.

11.     St. John Health is a Michigan Corporation which owns and operates a number of hospitals located in the Detroit MSA including, but not limited to: St. John Detroit Riverview Hospital, a 285 bed hospital located at 7733 East Jefferson, Detroit, Michigan 48214; St. John Hospital and Medical Center, a 607 bed facility located at 22101 Moross Road, Detroit, Michigan 48236; St. John River District Hospital, a 68 bed facility located at 4100 South River Road, East China, Michigan 48054; St. John North Shores Hospital, a 96 bed facility located at 26755 Ballard Street, Harrison Township, Michigan 48045; St. John Oakland Hospital, a 210 bed hospital located at 27351 Dequindre Road, Madison Heights, Michigan 48071; Providence Hospital, a 384 bed hospital located at 16001 West Nine Mile Road, Southfield, Michigan 48075; Brighton Hospital, a 92 bed hospital located at 12851 East Grand River Avenue, Brighton, Michigan 48116; and St. John Macomb Hospital, a 376 bed facility located at 11800 East Twelve Mile, Warren, Michigan 48093. It is estimated that over 3,000 RNs are employed through St. John Health hospitals.

- 3 -

12.     Defendant Henry Ford Health System ("Henry Ford Health") is a Michigan corporation with its principal place of business located at 1 Ford Place, Detroit, MI 48202. Henry Ford Health earns $3.05 billion in revenues annually, and $112 million in net income in 2005.   *See*   http://www.henryford.com/body.cfm?id=37460&oTopID=0.   Henry Ford Health owns and operates health care facilities within the Detroit MSA which include, but are not limited to:  Henry Ford Hospital, a 903 bed hospital located at 2799 W. Grand Blvd., Detroit, Michigan 48202; Henry Ford Wyandotte Hospital, a 344 bed hospital located at 2333 Biddle Avenue, Wyandotte, Michigan 48192; Henry Ford Bi-County Hospital, a 203 bed hospital located at 13355 East Ten Mile Road, Warren, Michigan 48089; Kingswood Hospital, a 100 bed hospital located at 10300 West Eight Mile Road, Ferndale, Michigan 48220.

13.     Henry Ford Health represents that it employs over 3,000 RNs in its various hospitals. http://www.henryford.com/body.cfm?id=38768.

14.     Bon Secours Cottage Health Services is a joint venture between Bon Secours Health System of Marrriottsville, MD, and the Henry Ford Health System.  Bon Secours Cottage Health System is headquartered at 468 Cadieux Road, Grosse Pointe, MI 48230. Bon Secours Cottage Health Services operates Cottage Hospital located at 159 Kercheval Avenue, Grosse Pointe Farms, Michigan 48236 and Bon Secours Hospital located at 468 Cadieux Road, Grosse Pointe, Michigan 48230.   These hospitals have a collective 175 bed capacity.

15.     Defendant Detroit Medical Center ("Detroit Medical") is a Michigan corporation with its principal place of business located at 3663 Woodward Avenue, Suite 200, Detroit, Michigan 48201 and Corporate Offices at DMC Corporate Offices, 3990 John R, Detroit, MI 48201.  Detroit Medical represents itself as the largest health care provider in southeast Michigan and has more than 2,000 licensed beds.  *See* http://www.dmc.org/org_profile/.  Detroit Medical owns and operates numerous health care facilities within the Detroit MSA which include, but are not limited to:  Harper University Hospital located at 3990 John R, Detroit, Michigan 48201; Sinai-Grace Hospital located at 6071 W. Outer Drive, Detroit, Michigan 48235; Children's Hospital of Michigan located at 3901 Beaubien, Detroit, Michigan 48201; Rehabilitation

Institute of Michigan located at 261 Mack Avenue, Detroit, Michigan 48201; Detroit Receiving Hospital/University Health Center located at 4201 St. Antoine Blvd, Detroit, Michigan 48201; Huron Valley-Sinai Hospital located at 1 William Carls Drive, Commerce, Michigan 48382; and The Orthopaedic Specialty Hospital located at 30671 Stephenson Highway, Madison Heights, Michigan 48071.  Approximately 2,300 RNs are employed through these hospitals.

16.     Defendant Oakwood Healthcare Inc. ("Oakwood") is a Michigan corporation with its principal place of business located at 23400 Michigan Avenue, Dearborn, Michigan 48124. Oakwood owns and operates hospitals within the Detroit MSA including Oakwood Annapolis Hospital, a 259 bed hospital located at 33155 Annapolis Street, Wayne, Michigan 48184; Oakwood Heritage Hospital, a 233 bed hospital located at 10000 Telegraph Road, Taylor, Michigan 48180; Oakwood Hospital & Medical Center, a 632 bed facility located at 18101 Oakwood Blvd, P.O. Box 2500, Dearborn, Michigan 48124; and Oakwood Southshore Medical Center, a 183 bed hospital located at 5450 Fort Street, Trenton, Michigan 48183.  In 2005, Oakwood recorded $2.0 billion in gross revenues and $902 million in total operating revenues. *See* http://www.oakwood.org/About/about_detail.asp?ContentId=272.     Oakwood employs approximately 1,500 RNs through these hospitals.

17.     Defendant Mount Clemens General Hospital, Inc., ("Mount Clemens") is a Michigan Corporation.  Mount Clemens is located at 1000 Harrington Street, Mount Clemens, Michigan 48043.  In approximately July of 2006, McLaren Health Care Corp acquired Mount Clemens General Hospital, Inc.  McLaren Health Care Corp operates hospitals throughout the state of Michigan and is a Michigan Corporation located at G-3255 Beecher Rd. Flint, MI 48532. Mount Clemens is a 288 bed facility and employs over 300 RNs.

18.     Defendant William Beaumont Hospital, d.b.a. Beaumont Hospitals, is a Michigan Corporation located at 3601 W. 13 Mile Rd., Royal Oak, MI 48073.  William Beaumont Hospital owns and operates numerous health care facilities within the Detroit MSA which include, but are not limited to: William Beaumont Hospital, a 1061 bed facility located at 3601 W. 13 Mile Rd.,

Royal Oak, MI 48073, and William Beaumont Hospital, Troy, a 296 bed facility at 44201 Dequindre Road, Troy MI, 48085.

19.     Trinity Health Corporation is an Indiana Corporation located at 251 E. Ohio Street, Ste 1100, Indianapolis, IN 46204, whose registered office and headquarters is located at 27870 Cabot Dr., Novi, MI 88377-2920. Trinity Health earns revenues of $6.1 billion dollars annually.  http://www.trinity-health.org/who/pdf/2007%20Facts%20and%20Figures.5.10.07.pdf. Trinity Health owns and operates numerous health care facilities within the Detroit MSA which include but are not limited to: St. Joseph Mercy, Oakland, a 428 bed facility at 44405 Woodward Avenue, Pontiac, MI 49341, and St. Mary Mercy Hospital, a 304 bed facility at 36475 West Five Mile Road, Rochester, MI 48307.

## CO-CONSPIRATORS

20.     Various other hospitals and individuals not named as defendants in this complaint have participated as co-conspirators with defendants in the violations alleged herein.

## CLASS ACTION ALLEGATIONS

21.     Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(3) on their own behalf and on behalf of the following Class:

> All persons employed by any defendant or co-conspirator to work in a hospital in the Detroit MSA as an RN at any time from December 12, 2002 until the present.

22.     Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of defendants.  As of 2005, there were at least thousands of full-time-equivalent RNs employed by the defendant hospitals and their co-conspirators during the aforementioned Class period.  Thus, the Class is so numerous that joinder of all Class members is impracticable.

23.     Questions of law and fact that are common to Plaintiffs and other members of the Class predominate over questions that affect only individual members.  The questions of law and fact that are common to the Class include:

a.      Whether Detroit-area hospitals, including defendants, have conspired to depress the compensation they paid to their RN employees during the Class period;

b.      Whether the alleged conspiracy has been effective in depressing RN compensation;

c.      Whether Detroit-area hospitals, including defendants, have agreed to share regularly with each other detailed and non-public data about current and prospective RN employee compensation;

d.      Whether defendants and the other Detroit-area hospitals have regularly exchanged detailed and non-public information about current and future RN employee compensation;

e.      Whether the exchange of such information suppressed competition among Detroit-area hospitals in the compensation of RN employees, and depressed the compensation paid to such employees; and

f.      The formula and data for estimating the amount by which Class members' compensation was depressed.

24.     Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs, like all Class members, are RNs who have been employed by one or more of the Detroit-area hospitals during the Class period and have been damaged by the unlawful conduct alleged herein.  Plaintiffs, by advancing their own claims, will also advance the claims of all members of the Class.

25.     Plaintiffs and their counsel will fairly and adequately protect the interests of all Class members.  There are no material conflicts between Plaintiffs' interests in this litigation and those of Class members that would make class certification inappropriate.  Counsel for Plaintiffs are experienced in antitrust class actions, and will vigorously assert Plaintiffs' claims and those of the other Class members.

26.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the causes of action alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this case that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

27.     Each of the hospitals named as a defendant herein provides patient care for persons coming to that hospital from states other than Michigan.

28.     Each defendant named herein compensates the RNs it employs within the Detroit MSA in part with funds provided by insurance carriers and other health care providers that are located in states other than Michigan.  These carriers and providers render payments to each named defendant by mailing funds across state lines.

29.     Each defendant named herein also compensates the RNs it employs within the Detroit MSA in part with Medicare funds paid to each defendant by the United States; these payments to each named defendant are mailed across state lines.

30.     The unlawful conduct alleged herein directly involves and substantially affects interstate trade and commerce.

## FACTUAL BACKGROUND

### *The Detroit MSA Hospital RN Market*

31.     The Detroit MSA is comprised of Detroit, Warren, Livonia, Dearborn, Troy, Farmington Hills, Southfield, Pontiac, Taylor, Novi, and their immediately surrounding towns and cities.

32.     Hospitals in the Detroit MSA employ approximately ten thousand full-time-equivalent RNs.

- 8 -

33.     This market is heavily concentrated.   The named defendants employ approximately 80 % of the hospital RNs in the Detroit MSA.

***Conspiracy to Suppress RN Compensation***

34.     Beginning before November 2002 and continuing to the present, defendants have conspired with each other and with other Detroit-area hospitals to depress the compensation paid to RNs employed at hospitals within the Detroit MSA.

35.     In furtherance of their conspiracy, defendants and their co-conspirators have done those things they agreed to do, including:

      a.      Agreeing to regularly exchange, and regularly exchanging, detailed and non-public data concerning the compensation each is paying or will pay to its RN employees;

      b.      Agreeing not to compete, and not competing, with each other in the setting or RN employee compensation;

      c.      Paying RN employees at the same or nearly the same rate as each other; and

      d.      Jointly recruiting RNs at job fairs and elsewhere to avoid competing to attract new RNs to their respective hospitals.

36.     In particular, during and before the Class period, the actions of defendants and their co-conspirators taken in furtherance of the conspiracy have included the following.

37.     Human resources employees working at defendant and co-conspirator hospitals have regularly telephoned and/or surveyed each other to determine the compensation for RNs at competing hospitals, including any scheduled increases in RN compensation.  These information exchanges have increased in frequency and detail at the end of each fiscal year when hospitals draft budgets and decide on RN compensation levels for the following year.   Hospital

- 9 -

administrators in the Detroit MSA have used this information to set RN compensation.  Human resources employees have been evaluated by their superiors on their ability to accomplish this RN compensation coordination.

38.    Several of the defendants and their co-conspirators conducted informal surveys of other hospitals in order to determine what wages those entities were providing to RNs.

39.    Several of the defendants and their co-conspirators retained consultants such as Watson Wyatt Worldwide and Sullivan, Cotter and Associates, Inc. to conduct surveys of other hospitals in order to determine what wages those entities were providing to RNs.

40.    Hospitals that cooperated in compiling these consultants' surveys would receive free copies of reports commissioned by their supposed rival hospitals.

41.    The Michigan Health and Hospital Association ("MHA") releases periodic reports relating to benefits and salaries of Detroit areas hospitals, and the human resource departments of several of the defendants and their co-conspirators obtain and review these reports.  Human resources employees can readily identify each surveyed hospital from identifying information contained therein including identification of the number of beds provided for each listed hospital. Hospital administrators in the Detroit MSA have used this information to set RN compensation.

42.    Hospital recruiters and other hospital human resource personnel of the defendants and their co-conspirators met periodically in both formal and informal settings to discuss and exchange wage information for RNs in the Detroit area.

43.    Hospital recruiters attended meetings of various organizations in the Detroit area at which current wage information is shared.  One example is the Health Care Recruiters Associations of Metro Detroit ("HCRAMD").  According to the HCRAMD website, since "the early 80's a group of Nurse Recruiters from local hospitals in the metropolitan Detroit area began meeting on a regular basis to share information and offer support and direction to each other. . . .  Today, HCRAMD functions with over 50 members from 32 facilities", and meetings are held monthly.  http://hcramd.hodes.com/index.asp.  Hospital recruiters and administrators in

the Detroit MSA exchanged wage information for RNs in the Detroit area, and used this information to set RN compensation.

44.     Through HCRAMD, defendant hospitals and other unnamed conspirators agreed that it would be in the interests of HCRAMD members to limit the use of recruitment incentives, such as sign-on bonuses, because such incentives financially hurt hospitals and led to "churning" of their nurses.

45.     Nurse wage data was also shared at meetings of the Michigan Organization of Nurse Executives ("MONE").

46.     During the class period, hospitals within the Detroit MSA have paid very similar RN compensation.

47.     Defendants' unlawful conspiracy has had the following effects, before and after the Class period:

> a.     Competition among defendants and their co-conspirators in the recruitment and compensation of hospital RN employees in the Detroit area has been restrained;
>
> b.     Compensation for hospital RN employees in the Detroit MSA has remained at artificially low levels; and
>
> c.     Detroit area hospitals have underutilized RNs, yielding low nurse-to-patient ratios, forcing RNs to work harder for longer hours, and reducing patient quality of care.

48.     Defendants' conspiracy to depress RN wages raises a serious healthcare issue. The Antitrust Division of the U.S. Department of Justice noted in its "Statements of Antitrust Enforcement Policy in Health Care" that "[a] collusive restriction on the compensation paid to health care employees, for example, could adversely affect the availability of health care personnel."  Similarly, numerous studies have shown a strong correlation between the numbers of RNs that a hospital employs per patient and the hospital's morbidity and morality rates.

Although defendants and their co-conspirators, like hospitals across the country, complain about the RN shortage, they have not taken the most basic remedial action to achieve it – they have not offered RNs competitive wages.

**Injury to Plaintiffs and the Class**

49.     During the Class Period (and before), Plaintiffs have suffered substantial economic harm in the form of lost compensation as a direct result of defendants' and their co-conspirators' unlawful agreement to depress RN compensation and their unlawful agreement to exchange RN compensation information.

**COUNT I:**
**CONSPIRACY TO DEPRESS WAGES IN VIOLATION OF**
**SECTION 1 OF SHERMAN ANTITRUST ACT**

50.     Plaintiffs re-allege the allegations in paragraphs 1-47 as if set forth fully herein.

51.     Beginning before November 2002 and continuing until the present**,** defendants and their co-conspirators have engaged in a continuing conspiracy in restraint of trade to depress the compensation of RNs employed at hospitals in the Detroit MSA, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

52.     Pursuant to this unlawful conspiracy, defendants and their co-conspirators have set the compensation of RNs employed at hospitals in the Detroit MSA at artificially low levels.

53.     As a result of the unlawful conspiracy alleged in this Count, Plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

**COUNT II**
**CONSPIRACY TO EXCHANGE COMPENSATION INFORMATION**
**IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT**

54.     Plaintiffs re-allege the allegations in paragraphs 1-51 as if set forth fully herein.

55.     Beginning before November 2002 and continuing until the present**,** defendants and their co-conspirators have engaged in a continuing agreement to regularly exchange detailed

- 12 -

and non-public information about the compensation being paid or to be paid to their RN employees. This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

56.     This information-exchange agreement has reduced competition among Detroit-area hospitals in the compensation of their RN employees and has depressed the compensation of such employees.

57.     The relevant geographic market for the claim alleged in this Count is the Detroit MSA, and the relevant service market consists of the services provided to hospitals by RN employees.

58.     A slight decrease in RN compensation from a competitive level could be imposed collectively by the hospitals in the Detroit MSA without causing too many RNs to move to non-hospital employers within the Detroit MSA or to employers outside the Detroit MSA.

59.     RNs often are constrained from moving to another geographic area because of region-specific licensing requirements, as well as other professional and familial obligations.

60.     Hospital RNs possess unique skill sets and gain industry-specific and employer-specific experience as they work, which renders them more valuable to hospitals than to non-hospital RN employers. As they gain experience, hospitals become the only practical outlets for hospital RNs to sell their services at an amount reflecting their skills and knowledge. Other potential employers, such as doctors' offices, nursing homes and outpatient clinics, offer RNs compensation substantially below that offered by hospitals.

61.     Detroit-area hospitals expend significant resources accumulating information about compensation paid to RNs at other hospitals in the Detroit MSA, but not about compensation paid to non-hospital RNs or RNs working outside the Detroit MSA. Detroit-area hospitals rely on this compensation information to set RN compensation levels, reflecting their own understanding that the relevant market involves only hospital RN employees in the Detroit area.

62.     Defendants collectively have substantial market power within the relevant market, including the power jointly to set hospital RN employee compensation below competitive levels. This joint power clearly exists because it in fact has been used to pay Class members sub-competitive compensation.  Moreover, RNs, like most laborers, cannot withhold their services until a later date as a means of negotiating for a higher compensation rate.  They depend on a regular income.  This weakens their negotiating position with hospitals and enhances the hospitals' market power.

63.     The information-exchange agreement has had the effect of suppressing competition among Detroit-area hospitals in the compensation of their RNs.  The agreement's anticompetitive effect is apparent from the following facts, among others:

64.     The information regularly exchanged by Detroit-area hospitals pursuant to the agreement has been detailed and non-public information about current and future RN compensation.  An agreement to exchange information of this type eliminates a major incentive of hospitals to increase RN compensation.  The advantage of raising RN compensation is to attract more and better RN candidates by exceeding the compensation (as estimated from properly available competitive intelligence) paid by competing hospitals.  But if a hospital knows that it cannot keep its superior compensation confidential from competitors, it will not offer such compensation in the first place.  Without confidentiality, a hospital knows that most or all competing hospitals will match its higher compensation levels.  The result is higher labor costs with no competitive advantage.  An agreement to regularly exchange detailed and non-public information about current and prospective RN compensation assures that superior compensation will be timely and specifically known by competitors.  Such an agreement, therefore, eliminates the incentive of hospitals to outbid their competitors.

65.     Hospitals view RNs, within a few basic categories of experience and specialization, as fungible, permitting hospitals readily to compare and match each other's compensation.

66.     The exchange of compensation information increases the relative bargaining power of hospitals in setting RN wages.  With such information, hospitals know what others are paying their RN employees, while RN employee applicants, who lack access to most or all of such (non-public) information, know much less about the competitive landscape.

67.     The regularity and detail of the information exchanged, the relationships of trust developed among the individuals exchanging the information, and the assurances given that the information would not be used for competitive advantage, encouraged defendants and their co-conspirators to use the information to match and not exceed each other's RN employee compensation levels.

68.     For these reasons, the effect of the information-exchange agreement, before and during the Class period, has been to reduce competition among hospitals in the compensation of RN employees and to depress such compensation.

69.     As a result of the unlawful agreement alleged herein to exchange RN compensation information, Plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that:

A.     The Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.     Defendants' actions alleged herein be adjudged and decreed to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.     Plaintiffs and the other members of the Class recover their damages against each defendant, jointly and severally, in an amount to be determined, and that this damage amount be trebled pursuant to 15 U.S.C. § 15(a);

D.      Plaintiffs and the other members of the Class, to the greatest extent allowed by law, be awarded post-judgment interest at the highest legal rate from and after the date of service of this Complaint;

E.      Plaintiffs and the other members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

F.      Plaintiffs and the other members of the Class be granted such other relief deemed proper to this Court.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable in this case.

KELLER ROHRBACK L.L.P.


By:____s/ Mark A. Griffin_____
Mark A. Griffin
Raymond J. Farrow
Lorraine Lewis Phillips
1201 Third Ave., Suite 3200
Seattle, WA 98101
Tel: 206-623-1900
Fax: 206-623-3384
Email:  mgriffin@kellerrohrback.com
Email:  rfarrow@kellerrohrback.com
Email:  lphillips@kellerrohrback.com


Stephen Wasinger (P25963)
STEPHEN F. WASINGER PLC
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel:  248-554-6300
Fax: 248-479-0391
Email:  sfw@sfwlaw.com


Charles P. Tompkins
Daniel Small
Kalpana Kotagal
COHEN MILSTEIN HAUSFELD & TOLL PLLC
1100 New York Avenue, NW,
Suite 500, West Tower
Washington D.C. 2005
Tel: 202-408-4600
Fax: 202-408-4699
Email:  ctompkins@cmht.com
Email:  dsmall@cmht.com
Email:  kkotagal@cmht.com


Shelly L. Friedland
Sharon Robertson
COHEN MILSTEIN HAUSFELD & TOLL PLLC
150 East 52d Street, Thirtieth Floor
New York, NY 10022
Tel: 212-838-7797

- 17 -

Fax: 212-838-7745
Email:  sfriedland@cmht.com


David P. Dean
Mary Joyce Carlson
JAMES & HOFFMAN
1101 17th Street, NW, Suite 510
Washington, DC 20036-4748
Tel:  202-496-0500
Fax: 202-495-0555
Email:  dpdean@jamhoff.com
Email:  carlsonmjj@aol.com

Daniel E. Gustafson
Brian L. Williams
Amanda M. Martin
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel:  (612) 333-8844
Fax:  (612) 339-6622
Email:  dgustafson@gustafsongluek.com
Email:  bwilliams@gustafsongluek.com
Email:  amartin@gustafsongluek.com

Michael P. Lehmann
Thomas P. Dove
Kimberly A. Kralowec
FURTH LEHMAN LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 433-2070
Fax: (415) 982-2076
Email:  mlehman@furth.com
Email:  tdove@furth.com
Email:  kkralowec@furth.com

Arnold Levin
Charles Schaffer
LEVIN, FISHBEIN SEDRAN & BERMAN
510 Walnut St., Ste 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Email:  alevin@lfsblaw.com
Email:  cschaffer@lfsblaw.com

*Co-Counsel For Plaintiffs*

Dated: June 15, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Michael J. Bommarito | michaelb@mclaren.org |
| Charles N. Raimi | craimi@dmc.org |
| Stephen F. Wasinger | sfw@sfwlaw.com |
| Benjamin J. Hanauer | bhanauer@mwe.com |
| David L. Hanselman, Jr. | dhanselman@mwe.com |
| Fred K. Herrmann | fkh@krwlaw.com |
| Howard B. Iwrey | hiwrey@dykema.com |
| David Marx, Jr. | dmarx@mwe.com |
| Terrence J. Miglio | tjm@kellerthoma.com |
| Jonathon A. Rabin | jar@kellerthoma.com |
| Mark S. Wilkinson | msw@kellerthoma.com |
| Alethea A. Wilson | awilson4Wdmc.org |
| Stephen Y. Wu | swu@mwe.com |
| Patricia C. Schabath | pschabat@dmc.org |
| L. Pahl Zinn | pzinn@dickinsonwright.com |
| Kenneth J. McIntyre | kmcintyre@dickinsonwright.com |
| David A. Ettinger | dettinger@honigman.com |
| Peter E. Boivin | pboivin@honigman.com |
| David A. Hardesty | dhardest@clarkhill.com |
| Thomas M.J. Hathaway | thathaway@clarkhill.com |
| Louis P. Gabel | lpgabel@jonesday.com |

| | |
|---|---|
| Paul F. Novak | pnovak@clarkhill.com |
| Shari Ross Lahlou | slahlou@crowell.com |
| Michelle R. Heikka | mheikka@dickinsonwright.com |

KELLER ROHRBACK L.L.P.

s/ Mark A. Griffin
Mark A. Griffin
Raymond J. Farrow
KELLER ROHRBACK L.L.P.
1201 Third Ave., Suite 3200
Seattle, WA  98101
Telephone:  (206) 623-1900
Facsimile:  (206) 623-3384
Email:  mgriffin@kellerrohrback.com
Email:  rfarrow@kellerrohrback.com