UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and
JEFFREY A. SUHRE,

       Plaintiffs,                        Case No. 06-15601
                                                  Hon. Gerald E. Rosen

vs.

DETROIT MEDICAL CENTER, *et al.*,

       Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT MOUNT CLEMENS GENERAL HOSPITAL'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 24, 2009

PRESENT: Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

### I. INTRODUCTION

In this case, Plaintiffs Pat Cason-Merenda and Jeffrey A. Suhre allege, on behalf of themselves and a class of registered nurses, that the Defendant hospitals and medical centers in the Detroit metropolitan area have conspired among themselves to fix the compensation paid to their nurse employees. Through the present motion, one of the Defendant hospitals, Mount Clemens General Hospital, seeks an award of summary judgment in its favor, arguing that its largely unionized workforce of registered nurses cannot establish the requisite "antitrust injury" because the wages of these union members

are not set through a competitive process.[1]

This motion has been fully briefed by the parties. Having reviewed the parties' briefs in support of and opposition to Defendant's motion, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that this motion must be denied.

## II. ANALYSIS

Defendant's motion rests upon a simple premise and only a few basic facts.[2] According to Defendant, its registered nurse ("RN") workforce is unique among Detroit area hospitals, as approximately 80 percent of its RNs are union members whose wages are set through a collective bargaining process.[3] By its very nature, the collective bargaining process reduces, if not eliminates, the competition among workers in the

---

[1] No other Defendant has moved for summary judgment on this ground, nor have they joined in this motion. Accordingly, the Court will refer to Mount Clemens General Hospital as "Defendant" throughout the remainder of this opinion.

[2] As Plaintiffs point out, the Court must take Defendant at its word as to these facts, since essentially no discovery had been provided to Plaintiffs at the time Defendant filed its motion.

[3] Because not all of Defendant's RNs are union members, it would seem that Defendant's motion, even if granted, would not altogether shield it from potential liability in this case. In addition, Plaintiffs suggest that Defendant would remain jointly and severally liable for the conspiracy that it allegedly joined to suppress the wages of Detroit area RNs, even if only a modest percentage of its own employees were exposed to antitrust injury as a result of this conspiracy.

setting of their wages and other conditions of employment. It follows, in Defendant's view, that these union member RNs cannot have suffered any "competitive" injury of the sort necessary to sustain a claim under federal antitrust law.

The Supreme Court has explained that as an element of an antitrust claim, a plaintiff "must prove the existence of *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334, 110 S. Ct. 1884, 1889 (1990) (internal quotation marks and citation omitted). Thus, an "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny." *Atlantic Richfield,* 495 U.S. at 334, 110 S. Ct. at 1889. While "[c]onduct in violation of the antitrust laws" may reduce competition, increase competition, or be "neutral as to competition," the "antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." 495 U.S. at 344, 110 S. Ct. at 1894.

In support of the present motion, Defendant argues that its unionized RN workforce cannot establish the requisite antitrust injury because the collective bargaining process purportedly insulates these union members from any competition-reducing effects of the alleged agreement among Detroit area hospitals to suppress RN wages.[4] In this

---

[4]Defendant's contention here must be distinguished from defenses based upon the so-called "'nonstatutory' labor exemption" from the antitrust laws, a doctrine that the courts have

3

respect, Defendant maintains that this case is analogous to those in which the courts have rejected antitrust claims for lack of an anticompetitive effect, where the defendants' activity was not competitive in the first instance.  *See, e.g., Continental Cablevision of Ohio, Inc. v. American Electric Power Co.,* 715 F.2d 1115, 1119-20 (6th Cir. 1983); *City of Pittsburgh v. West Penn Power Comp.,* 147 F.3d 256, 266-67 (3d Cir. 1998).  Because collective bargaining is likewise a competition-stifling activity, Defendant posits that its union member RNs cannot have been injured by any anticompetitive effects in a wage "market" in which they do not participate.  As Defendant puts it, "even assuming plaintiffs' allegations are true in this case, defendants' actions did not change the nature of the competition and had no 'competition-reducing' effect with regard to the setting of the Union Nurses' wages, because they were not determined by a competitive process in the first instance."  (Defendant's Motion, Br. in Support at 6.)

      Yet, as Plaintiffs point out, there is one obvious difference between the circumstances presented in the cases cited by Defendant and the facts as alleged in the complaint here.  In each of the cases on which Defendant relies, the court's ruling rested upon the absence of competition among the ***defendant entities*** that stood accused of

---

implied from federal labor statutes.  *See Brown v. Pro Football, Inc.,* 518 U.S. 231, 235-36, 116 S. Ct. 2116, 2120 (1996).  The Supreme Court has explained that this "implicit exemption recognizes that, to give effect to federal labor laws and policies and to allow meaningful collective bargaining to take place, some restraints on competition imposed through the bargaining process must be shielded from antitrust sanctions."  *Brown,* 518 U.S. at 237, 116 S. Ct. at 2120.  Although defendants in other nurse-wage cases have sought (unsuccessfully) to invoke this nonstatutory labor exemption, *see, e.g., Reed v. Advocate Health Care,* No. 06-3337, 2007 WL 967932 (N.D. Ill. Mar. 28, 2007), Defendant's present motion does not rest upon this ground.

4

collusive conduct, so that any such collusive activity could not have reduced competition — and, hence, could not have produced an injury stemming from a (non-existent) competition-reducing aspect of this conduct. Here, in contrast, there is no dispute, at least for present purposes, that the Defendant hospitals compete among themselves for the services of RNs — or, at least, those RNs who are not union members — and the Court likewise must assume, for present purposes, that Defendants have reduced this competition by agreeing among themselves on the compensation they will pay these RNs. To the extent that some members of the plaintiff class of RNs might *also* have reduced or eliminated the competition *among themselves* for wages by electing to participate in the collective bargaining process, this does nothing to alter the anticompetitive nature of Defendants' alleged collusion — at most, it mitigates the impact of this anticompetitive conduct upon these union member RNs. *Cf. Reed,* 2007 WL 967932, at *5 (opining that the defendant hospital in that case could not "use its collective bargaining agreement with the nurses union to insulate any anti-competitive activity it may have engaged in outside of and separate from the collective bargaining process with the nurses union" (internal quotation marks and citation omitted)).

     The cases cited by Defendant offer little or no guidance as to the extent or legal significance of this mitigation. In order to secure the requested award of summary judgment, Defendant must establish, as a matter of law, that *despite* the competition-reducing effect of Defendants' alleged wage-fixing conspiracy, Defendant's unionized RN workforce cannot have been injured by this reduced competition among Detroit area

hospitals. As Defendant itself recognizes, this requires a showing — again, as a matter of law — that the collective bargaining process employed by these RN union members exists entirely outside of, and wholly insulated from, the separate "competitive arena" in which Defendant and other Detroit area hospitals allegedly have reduced competition by agreeing upon RN wages. (*See* Defendant's Response Br. at 2.) Whether or not this can be shown, either at this point or at a later juncture, it is at least clear that the cases cited in Defendant's principal brief do not assist in establishing this point. Neither, of course, can the bare assertions of counsel, unsupported by any economic analysis in the record, establish that Defendant's unionized RN workforce suffered no injury that could be construed as "stem[ming] from" the competition-reducing effect of Defendants' alleged wage-fixing agreement. *See Atlantic Richfield,* 495 U.S. at 344, 110 S. Ct. at 1894.

To be sure, it is Plaintiffs, and not Defendant, who will ultimately bear the burden of proving the elements of their antitrust claims, including the requirement of antitrust injury. It is further true, as Defendant points out, that Plaintiffs cannot meet this burden merely by proving an injury that is "causally related to an antitrust violation," but is not "attributable to an anti-competitive aspect of the practice under scrutiny." *Atlantic Richfield,* 495 U.S. at 334, 110 S. Ct. at 1889. Defendant also highlights the practical difficulties that Plaintiffs are likely to encounter in making the requisite showing that Defendants' alleged conspiracy to suppress RN wages had a negative effect upon the results achieved in the collective bargaining process. (*See* Defendant's Reply Br. at 3-4.)

Yet, to say that this burden will be difficult to meet does not establish that it cannot

6

be met at all.  For now, it is enough to observe, first and foremost, that Plaintiffs have not yet had an opportunity to uncover evidence or secure expert testimony in support of their theory that unionized and non-union RNs alike have been harmed by Defendants' alleged agreement to fix nurse wages.  Moreover, Plaintiffs have identified at least some authority which, while not directly on point, nonetheless recognizes the analogous point that price-fixing conspiracies among defendants can be expected to have an impact on price negotiations with customers, even those customers that can mitigate the impact through their own market power.  *See, e.g., In re Universal Service Fund Telephone Billing Practices Litigation,* 219 F.R.D. 661, 675 (D. Kan. 2004).  Similarly, it is not inconceivable here that Defendant's alleged wage-fixing agreement with other Detroit area hospitals had a demonstrable effect upon Defendant's negotiating stance when it sat down at the bargaining table with its unionized RNs, and that this affected the outcome of the collective bargaining process despite the greater bargaining power achieved by the RNs through their own "anticompetitive" conduct.  The Court declines to rule as a matter of law, at least at the present juncture and under the present record (or lack thereof), that Plaintiffs cannot make such a showing of antitrust injury.

### III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Mount Clemens

General Hospital's July 25, 2007 motion for summary judgment (docket #99) is

DENIED.

s/Gerald E. Rosen  
Chief Judge, United States District Court

Dated:  March 24, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry  
Case Manager

8