UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) ) Case No. 06-15601 (GER) |
| Plaintiffs, | ) ) Hon. Gerald E. Rosen |
| v. | ) ) |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL d.b.a. BEAUMONT HOSPITALS, and TRINITY HEALTH CORP., | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**CERTAIN DEFENDANTS' MOTION TO STAY CONSIDERATION OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT WITH ST. JOHN HEALTH**

Defendants Trinity Health Corp., Henry Ford Health System, Mount Clemens General

Hospital, Inc., William Beaumont Hospital and the Detroit Medical Center move the Court for an

Order staying consideration of Plaintiffs' Motion for Preliminary Approval of the Settlement

reached with St. John Health, until the Court has ruled on Plaintiffs' anticipated Motion for

Certification of a Litigation Class and the Defendants' Oppositions thereto, briefing on which is

set to begin April 24, 2009.  A supporting Memorandum of Law follows.

Pursuant to Local Rule 7.1(a), counsel for the moving Defendants conferred with

Plaintiffs' counsel on the issues raised in this Motion, and was unable to obtain concurrence on

the relief sought.  Accordingly, it was necessary to file this Motion.  Counsel for the moving

Defendants also conferred with counsel for St. John, who stated that St. John is not opposed to

this Court's deferring consideration of Plaintiffs' Motion to Approve Settlement until its

determination as to a litigation class.

Dated:  April 20, 2009

<div style="margin-left:40%">

Respectfully Submitted:

SONNENSCHEIN NATH & ROSENTHAL LLP

By:  ___/s/ Sandra D. Hauser_____

</div>

Charles N. Raimi (P29746)
DETROIT MEDICAL CENTER
Legal Affairs
4707 St. Antoine
Suite W514
Detroit, Michigan 48201
(313) 966-2226
craimi@dmc.org

***Counsel for Detroit Medical Center***


Sheldon H. Klein (P41062)
Bruce L. Sendek (P28095)
BUTZEL LONG, P.C.
150 West Jefferson, Suite 100
Detroit, Michigan 48226-4454
(313) 225-7000
klein@butzel.com
sendek@butzel.com

***Counsel for William Beaumont Hospital***

Sandra D. Hauser
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
shauser@sonnenschein.com

Margo Weinstein
Corey M. Shapiro
7800 Sears Tower
Chicago, Illinois 60606
(312) 876-8000
mweinstein@sonnenschein.com
cshapiro@sonnenschein.com

David B. Gunsberg (P24235)
LAW OFFICE OF DAVID B. GUNSBERG, P.C.
322 North Old Woodward Avenue
Birmingham, Michigan  48009
(248) 646-9090
davidgunsberg@hotmail.com

Cathrine F. Wenger (P37861)
TRINITY HEALTH CORPORATION
27870 Cabot Drive
Novi, Michigan 48377
(248) 489-5004
wengerc@trinity-health.org

***Counsel for Trinity Health Corp.***

David A. Ettinger
Peter E. Boivin
HONIGMAN MILLER SCHWARTZ AND COHN
LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7368
dettinger@honigman.com
pboivin@honigman.com

**Counsel for Mount Clemens General Hospital**

David Marx, Jr.
David L. Hanselman, Jr.
Stephen Y. Wu
Amy J. Carletti
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606
(312) 372-2000
dmarx@mwe.com
dhanselman@mwe.com
swu@mwe.com
acarletti@mwe.com

Terrence J. Miglio
Gouri G. Sashital
KELLER THOMA, P.C.
440 East Congress Street, 5th Floor
Detroit, Michigan 48226
Telephone: (313) 965-7610
tjm@kellerthoma.com
gsr@kellerthoma.com

**Counsel for Henry Ford Health System**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) Case No. 06-15601 (GER) |
| Plaintiffs, | ) ) Hon. Gerald E. Rosen |
| v. | ) ) |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL d.b.a. BEAUMONT HOSPITALS, and TRINITY HEALTH CORP., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO STAY CONSIDERATION OF PLAINTIFFS' MOTION FOR PRELIMINARY <u>APPROVAL OF SETTLEMENT WITH ST. JOHN HEALTH</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................iii

QUESTION PRESENTED ............................................................................................... iv

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 4

    I.    This Court Can and Should Exercise Its Discretion to Stay the Motion to Approve a Settlement Class.................................................................................................................. 4

    II.   A Stay Will Not Prejudice Settling Parties, But Preliminary Approval Would Unfairly Prejudice the Non-Settling Defendants...................................................................... 9

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................................................4

*In re Compensation of Managerial, Professional, and Technical Employees Antitrust Litigation*,
    2003 U.S. Dist. Lexis 22836 (D.N.J. May 27, 2003)..........................................................6

*In re Delphi Corporation Securities Derivative & "ERISA" Litigation*,
    248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................................5

FEDERAL RULES OF CIVIL PROCEDURE, Rule 23 ..................................................................... *passim*

*Fleischman v. Albany Medical Center*,
    No. 1:06-CV-765, 2008 WL 2945993 (N.D.N.Y. July 28, 2007) .......................................6

*Funeral Consumers Alliance, Inc. v. Service Corporation International*,
    Civ. A. No. H-05-3394 (S.D. Tex., Mar. 26, 2009)............................................................6

*In re Hydrogen Peroxide Antitrust Litigation*,
    552 F. 3d 305 (3d Cir. 2008)................................................................................................5

*Ivax Corp. v. Akzo Nobel Chemicals B.V.*,
    Civ. A. No. 01-1714 (D.D.C. Dec. 3, 2001) .......................................................................4

MANUAL FOR COMPLEX LITIGATION FOURTH, § 21.651 (2004) ...................................................10

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
    236 F.R.D. 53 (D. Me. 2006)...............................................................................................4

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001).................................................................................................5

*Todd v. Exxon Corporation*,
    275 F.3d 191 (2d Cir. 2001).................................................................................................6

*Weisfeld v. Sun Chemical Corp.*,
    210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 Fed. Appx. 257 (3d Cir. 2004).........................6, 8

## QUESTION PRESENTED

1. Should the Court stay consideration of Plaintiffs' Motion for Preliminary

Approval of Settlement with St. John Health until the Court has ruled upon Plaintiffs' anticipated

motion for certification of a litigation class, since: (a) the proposed settlement is conditioned on

the certification of a litigation class, and will not even take effect unless and until this Court

conducts the rigorous analysis required by Rule 23 and agrees with plaintiffs that a litigation

class should be certified – an eventuality that Defendants contend should never occur; and (b)

preliminary approval, including authorizing notice now to the proposed settlement class, would

be both inefficient, confusing and misleading to the notice recipients and unfairly prejudicial to

the non-settling Defendants?


**Movants answer:  "Yes," consideration of preliminary approval should be stayed.**

## INTRODUCTION

Plaintiffs ask this Court for preliminary approval of a so-called settlement with St. John Health.  What they actually present, however, is a deal that is entirely contingent upon this Court's future ruling as to whether a litigation class should be certified against the remaining Defendants.  Although disclosed nowhere in Plaintiffs' draft Notice to the class, by its terms the proposed settlement is not effective unless and until a litigation class has been certified by the Court.  If Court does not certify a litigation class in this case, or chooses to materially modify the proposed class, St. John has the express right to renegotiate the terms of the agreement[1]

It is both inefficient and unfairly prejudicial for this Court to preliminarily approve the proposed settlement and permit class notice when the motion to certify a litigation class – the granting of which is a condition precedent for this settlement – will soon be before the Court.  The non-settling Defendants are preparing to present extensive evidence, expert analysis and argument demonstrating why the very class proposed in this motion should not be certified.  The non-settling Defendants will also challenge under *Daubert* the untested, unreliable and substantively flawed opinions of Orley Ashenfelter, the expert upon whom plaintiffs rely in support of certification of the settlement and litigation classes, and whose opinion is plaintiffs'

---

[1]        The Settlement Agreement states:

        9.        "Effective Date" means the date on which … and (b) a litigation class has been certified and Plaintiffs have received no notice from St. John of an intent to renegotiate pursuant to Paragraph 49.

        *****

        49.        As provided in paragraph 41, no monies from the Settlement Fund will be distributed until after a litigation class is certified or the Court has approved settlements with all Non-Settling Defendants.  If the Court does not certify a litigation class, or if the Court certifies a litigation class that is materially modified from the Class defined herein, then St. John shall notify Plaintiffs within thirty (30) days of such Court decision of any intent to renegotiate and, after receipt of such notice by Plaintiffs, St. John and Plaintiffs shall negotiate in good faith a revised settlement.

(Settlement Agreement ¶¶ 9, 49).

sole basis for claiming that they can prove impact on a class wide basis.  It would create unfair prejudice for the Court to simply accept Plaintiffs' proffer of Professor Ashenfelter's opinion on a preliminary motion, without having the benefit of, and analyzing, all of both sides' economic evidence and testimony and the parties' briefs on the full range of class certification issues. Because the issue of class certification and Defendants' *Daubert* motion to exclude Ashenfelter's opinions will be fully briefed by June 30, Plaintiffs will not be prejudiced by the Court's deferral of the preliminary motion.[2]

Plaintiffs claim that they are requesting only "preliminary approval" and, according to them, the Court need "not decide the merits of the case or resolve unsettled legal questions" at this juncture (Pl. Br. at 6).[3]  But whether or not this Court might otherwise apply a lesser standard of review to a preliminary approval of a settlement, such a short cut would achieve no efficiency and would have little meaning.  There will be no settlement here at all unless and until this court finds – as to the litigation class – that Plaintiffs have satisfied their burden under Rule 23, rejecting Defendants' evidence and analysis in the process, and certifies a litigation class that is identical to the proposed settlement class.  Certification of a litigation class requires rigorous analysis to determine whether plaintiffs actually have met their burden on class certification, based not on rhetoric or assumptions as presented in their present Motion but on the actual facts and evidence.

In addition, sending Notice at this juncture is unduly prejudicial to the non-settling Defendants.  Many of the over 20,000 RNs who would receive the Notice are current employees

---

[2]     The moving non-settling Defendants are not submitting objections to the St. John settlement, but rather are moving this Court to exercise its discretion to stay consideration of Plaintiffs' motion, in light of the unfair prejudice to the non-settling Defendants and the inefficiency of proceeding now.

[3]     Of course, the Proposed Order that Plaintiffs submit inappropriately asks the Court to extend beyond preliminary findings and reach conclusions now on Rule 23, as discussed *infra* at p. 11.

of the non-settling Defendants.  Under any circumstances, the mass mailing to the non-settling Defendants' employees would be disruptive and detrimental to the employment relationship, but here the mailing would be unfairly prejudicial because, at this point, there is no effective settlement of which to inform the class.  What purpose would be served by sending the Notice now, when the settlement is contingent on certification of a litigation class and subsequent notices – which will likely confuse and confound the class – will certainly be required?  And what would the notice say to inform class members of this contingency and the possibility of wholesale renegotiation by St. John, even after class members decide either to participate or exercise their right to opt out?  Certainly it cannot say nothing, as the current proposed Notice does.  Plaintiffs' Motion addresses none of these questions, and instead ignores the issue as if this remarkable – in fact, totally unheard of – contingent provision of their settlement agreement is somehow just ordinary and routine.

Conversely, there is no prejudice whatsoever to the settling parties if this motion is stayed.  The effective date of the proposed settlement would not be delayed by the stay, rather it was put on hold by the settling parties themselves, since a negotiated term of the agreement provides that the settlement is not effective unless and until a litigation class is certified.  And the putative class will not be prejudiced at all, given that the proposed settlement provides that there will be no distribution of funds prior to certification of litigation class (and is vague as to when after that any distribution may occur).

Considerations of both efficiency and fairness suggest that the Court should exercise its discretion to defer ruling on the present motion until after the Court rules on the condition precedent to the proposed settlement:  Plaintiffs' motion for certification of a litigation class.

**ARGUMENT**

I.    **THIS COURT CAN AND SHOULD EXERCISE ITS DISCRETION TO STAY THE MOTION TO APPROVE A SETTLEMENT CLASS**

Where, as here, deferring decision on a proposed settlement will promote judicial efficiency and justice – and may well prevent possibly inconsistent results caused by successive and related determinations –the Court can and should stay preliminary approval of the settlement pending full consideration of the litigation class.  For example, in *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 236 F.R.D. 53, 56 (D. Me. 2006), the court declined to preliminarily approve a settlement reached by a single defendant in an antitrust action, and continued a stay on class notice until decision was reached on litigation classes as to other defendants.  The court expressed concerns about the efficiency of action when there was "no imminent need," as well as probable inconsistencies between the proposed litigation and settlement classes.  In so doing the court further recognized that "preliminary approval" of a settlement class "may, as a practical matter, give an unwarranted presumption of correctness to a proposal that the court has not carefully considered."  *Id.,* at 57, *quoting* American Law Institute, *Principles of the Law of Aggregate Litig.*, §3.04 cmt. a, at 156.  Similarly, in  *Ivax Corp. v. Akzo Nobel Chemicals B.V.*, Civ. A. No. 01-1714 (D.D.C. Dec. 3, 2001), the Court deferred certification of a settlement class involving one antitrust defendant near the outset of the case, stating "particularly in the case of a partial settlement like this one, early certification of settlement class can be problematic."  Slip Op. at 3 (attached as Ex. 1).

Certification of a litigation class is far from a certainty and cannot simply be assumed.  As Plaintiffs acknowledge, before a class can be certified (whether for litigation or settlement purposes) the Court must determine that any proposed class meets the requirements of Fed. R. Civ. P. 23.  (Pl. Br. at 13); *see generally Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997); *In*

- 4 -

*re Delphi Corp. Sec. Derivative & "ERISA" Litig.,* 248 F.R.D. 483 (E.D. Mich. 2008). It is Plaintiffs' burden to establish at the class certification stage that they will be able to demonstrate, with common proof, each element of their claims – and specifically must demonstrate that every individual member of the plaintiff class in fact suffered injury, and separately, that each class member has measurable damages. *See generally In re Hydrogen Peroxide Antitrust Litig.,* 552 F. 3d 305 (3d Cir. 2008); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 188 (3d Cir. 2001) (in antitrust and securities fraud class actions, "[p]roof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)").

It is now well established that the Court must conduct a rigorous analysis of the Rule 23 factors in order to determine whether or not plaintiffs have actually met their burden on class certification. As the Third Circuit recently explained in denying certification of an antitrust price-fixing putative class case, the court must:

- determine whether all Rule 23 requirements have been satisfied and not certify a class based on a mere "threshold showing";

- resolve all factual and legal disputes relevant to certification, even if doing so overlaps with the merits of the underlying claims, and require the class proponent to prove the facts on which it relies by a preponderance of the evidence; and

- resolve all expert disputes bearing on the Rule 23 elements and not uncritically accept an expert's opinion supporting class certification.

*In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 307. And, consistent with most recent decisions, the Third Circuit rejected any "presumption" favoring class certification in price-fixing cases, explaining that it would be inconsistent with the rigorous analysis required by Rule 23 and in particular with the 2003 amendments to Rule 23. *Id.* at 326.

- 5 -

The Court should not be lured into accepting Plaintiffs' promises that they can and will tender "common proof."  No damages class ever has been certified in a wage suppression conspiracy case, and every Court to consider a class has rejected one.  This Court already is aware of the Northern District of New York's decision in *Fleischman v. Albany Medical Center*, No. 1:06-CV-765, 2008 WL 2945993 (N.D.N.Y. July 28, 2007) (attached as Exhibit 2), in which the court considering similar nurse wage antitrust allegations brought by the same counsel as in this case rejected certification as to the issues of injury-in-fact (impact) and damages, holding that individual issues would predominate in proving both impact and damages.  The court found, among other things, that "Interchangeability and job mobility in the nursing profession, and the reasons affecting the wage of a particular nurse or class of nurses, though contested, involve too many variables and provide too much ambiguity to carry a motion for class certification." *Id.* at *6.

The few other courts to have analyzed analogous classes also have rejected them.  *E.g., In re Compensation of Managerial, Prof'l, & Tech. Employees Antitrust Litig.*, 2003 U.S. Dist. Lexis 22836 (D.N.J. May 27, 2003) (following skepticism expressed by Second Circuit before case was remanded and transferred, holding that individualized issues would predominate in attempt to prove impact, damages, and relevant markets) (attached as Exhibit 3), *on remand from Todd v. Exxon Corp.*, 275 F.3d 191, 202 n.5 (2d Cir. 2001), *and transfer from* 206 F. Supp. 2d 1374 (Jud. Panel on MDL 2002); *see also Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 Fed. Appx. 257 (3d Cir. 2004); *cf. Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, Civ. A. No. H-05-3394 (S.D. Tex., Mar. 26, 2009) (adopting recommendation and findings of Magistrate's Report that a class could not be certified in putative price fixing class

- 6 -

action regarding funeral services containing allegations of information exchange) (decision and report attached as Ex. 4).

Here, extensive discovery has unearthed no actual agreement to fix any aspect of RN compensation, nor is there any evidence of parallel wage-setting behavior among Defendants. Significantly for a class analysis, numerous individual issues need to be evaluated to determine whether there is any anticompetitive effect from information exchange, whether any individual nurse is in fact injured by the purported conspiracy, and whether there is any actual measurable damage to any particular person.  The actual proof will show that:

- Nurses are exceptionally heterogeneous, with different skills, experience, preferences and desired work arrangements.  They are not interchangeable, as plaintiffs' class analysis demands – and these different and inherently individual, human elements of RNs influence both the compensation-related choices they make and the opportunities available to them.  Common issues cannot predominate where these individual differences abound.

- Nurses' total compensation is made up of many types of base and non-base pay that are used flexibly, non-uniformly, and idiosyncratically by hospitals (or by specific units within hospitals) depending on their unique needs for nursing staff.  Non-base compensation (such as shift and unit premiums, overtime, compensated time off, bonuses, and other components used to adjust compensation or pay some RNs more than others) accounted for more than one quarter – and for some RNs, more than one half – of their total monetary compensation.  Whether or not these various opportunities would remain available, to whom specifically they would be available and to what extent, and how a nurse would make choices, are all complex and individual issues that need to be analyzed to evaluate whether or not there is any injury from the wage conspiracy alleged here.

In short, the compensation of any particular nurse is so complex, and involves so many variables and individual considerations, preferences and circumstances across this vastly heterogeneous population, that one person's situation says nothing about another's.

- 7 -

In addition, the analysis of Professor Ashenfelter – Plaintiffs' sole support for the assertion in their Motion that both injury-in-fact and damages can be shown on a class wide basis – is fatally flawed.  Plaintiffs contend that, because Defendants use nurses supplied by temporary agencies ("agency nurses"), the agency fees Defendants pay those agencies (subject to certain adjustments) would provide an appropriate "benchmark" for what the compensation of members of the settlement class would be in a more competitive market.  Declaration of Orley Ashenfelter at ¶ 9.  This approach fails to take into account realities of the marketplace, has no empirical support nor support in labor economic study, and is insufficient to satisfy *Daubert*, let alone the requirements of Rule 23.[4]  Defendants will show that both the assumption behind, and the execution of, this approach are seriously flawed for many reasons, among them:

- Professor Ashenfelter uses as his benchmark the fee paid by the Defendant hospital to the agency, not the compensation the agency actually pays nurses.  The benchmark thus bears no resemblance to compensation earned by anyone.

- Professor Ashenfelter's methodology for calculating damages completely ignores differences in pay and pay increases among individual nurses, reflecting their experience, skills, training, function, work characteristics, and job performance.  One bizarre consequence of his unfounded damages theory is that his benchmark provides only a single wage number for all nurses at a hospital in a given year.  In other words, Professor Ashenfelter assumes that a first year bedside nurse with no experience whatsoever would be paid the same rate as an experienced oncology nurse.  Professor Ashenfelter himself admits that he did not think this ever would be the case in the real world.  A corollary of this bizarre theory is that an inexperienced nurse suffers "damages" far greater than the experienced specialized nurse, and that the sole reason for the difference in compensation between those nurses is the "conspiracy."

- Moreover, Professor Ashenfelter's analysis misses the boat with respect to supporting any argument on class because he addresses only an "average" nurse – and not whether there was common impact across nurses generally.  Plaintiffs cannot avoid the burden of proving common impact

---

[4]     Defendants *Daubert* brief will detail these points, and will be filed April 24, 2009.

by simply calculating an average result.  *See Weisfeld*, 210 F.R.D. at 143-44 (rejecting regression showing general impact on class members because it did not purport to show that all class members were impacted).

- Professor Ashenfelter also fails to account for the fact that some hospitals rarely use agency at all, and some use agency nurses for emergency situations – e.g., in harder to fill areas, at times of spiked demand, or to cover short-term vacancies such as leaves or vacations – all differences that would exist irrespective of the alleged violations, and all differences that enable agencies to significantly raise fees.  Ashenfelter acknowledged this at deposition, but (notwithstanding the centrality of his assumption) failed to perform any analysis whatsoever to determine in what circumstances Defendant hospitals actually do use agency nurses, to the extent they use them at all.[5]

- Professor Ashenfelter suggests that certain adjustments be made to agency bill rates – but still fails to account for many financially significant costs, which, if counted, completely undermine his "agency premium."

At minimum, this Court's analysis should await the full critique by Defendants and their experts in the context of the *Daubert* motion and the litigation class.

## II.   A STAY WILL NOT PREJUDICE SETTLING PARTIES, BUT PRELIMINARY APPROVAL WOULD UNFAIRLY PREJUDICE THE NON-SETTLING DEFENDANTS

Neither named plaintiffs nor St. John will be prejudiced by a stay.  A negotiated term of their agreement is that the settlement would not be effective unless and until a litigation class is certified, thus the settlement will not be delayed by a stay.  The putative class will not be prejudiced by the stay, both because of the contingent nature of the deal and because the settlement has no plan of distribution of any funds from the St. John payment.  In other words, the settlement agreement does not address the basic question of how any nurse's recovery will be determined.

---

[5]      While Professor Ashenfelter's benchmark opinions critically depend on his examination of the fees charged for temporary nurses, he did not bother to learn the most basic things about such nurses in forming his opinions.  In drafting his initial report, he failed to read any literature on temporary nurses, interview any temporary nurses, or examine any temporary agency websites.  As a result, he failed to learn the most basic facts about agency nurses, *e.g.* that they are divided into two categories, per diem nurses and travelers.  Indeed, he did not even know the meaning of these terms.

The putative class could, however, be prejudiced if the requested stay is not granted.  As recognized by the Manual for Complex Litigation, multiple notices in the context of partial settlements should be avoided as they can confuse and prejudice class members:

> Settlement classes present special problems when they involve partial settlements. … [M]embers of the settlement class might have difficulty understanding their position in the litigation. Because they may not know whether they will be members of a class with respect to claims against nonsettling defendants, they may be unable to make an informed decision regarding the adequacy of the settlement.

MANUAL FOR COMPLEX LITIGATION FOURTH, § 21.651 (2004).  Under Plaintiffs' proposal, serial notices to the same RNs would be unavoidable.  At least one additional notice will be required, regardless of whether a litigation class is certified.  If the litigation class is certified, notice of that class will be required.  If a litigation class is not certified or is certified for a class different than that for the settlement, re-noticing the settlement class could be required because of the failure of the settlement or new settlement terms.  Moreover, another defendant is purportedly close to settlement and is not participating in the defense of the action or opposition to class certification, and notice of that settlement presumably would need to be sent.  How is a nurse to sort through and understand the varying notices of settlements with and/or litigation against, her employer and make informed decisions of whether to participate or opt out?  Such confusion and the accompanying unfair prejudice easily can be avoided if the Court delays decision on preliminary approval until it rules upon the certification of a litigation class.

In addition, inadequacies in the Notice that Plaintiffs propose to send compound the unfair prejudice to the non-settling Defendants, especially since the Notice communicates to Defendants' employees that St. John Health has agreed to "settle," without disclosing that the settlement is entirely conditional and could be renegotiated or scrapped altogether if the non-

settling Defendants prevail in defeating class certification.  The Notice also fails to provide critical information regarding the actual proportion of Plaintiffs' damages estimate that St. John has agreed to pay.  Misleading messages in the context of this ongoing litigation significantly and needlessly prejudices the non-settling Defendants.

Finally, Plaintiffs' Proposed Order improperly reaches for rulings beyond what is appropriately before the Court at this juncture.  Rather than proposing that the Court condition any findings as preliminary and for settlement purposes only, Plaintiffs present an Order that suggests that the Court would be concluding now, before seeing and ruling on the substantial evidence and arguments the non-settling defendants plan to present that, for example "common issues predominate over any individual issues affecting the members of the Settlement Class."  It will unfairly prejudice the non-settling Defendants for the Court to issue this order without hearing at the same time the evidence and arguments the non-settling Defendants will presently shortly.  Issuing such an Order at this preliminary stage would be an invitation to its misuse, by plaintiffs in this case or others, suggesting that legal conclusions have been reached before they even were ripe and presented.  Under these circumstances, Court's exercise their discretion to delay consideration of the proposed settlement class and avoid giving a premature stamp of approval to certification.

## CONCLUSION

The moving Defendants thus respectfully request that this Court grant this motion and stay consideration and ruling upon Plaintiffs' Motion for Preliminary Approval of Settlement With St. John Health until the Court has decided Plaintiffs' motion to certify a litigation class.

Dated: April 20, 2009

Respectfully Submitted:

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____/s/ Sandra D. Hauser_____

Charles N. Raimi (P29746)
DETROIT MEDICAL CENTER
Legal Affairs
4707 St. Antoine
Suite W514
Detroit, Michigan 48201
(313) 966-2226
craimi@dmc.org

**Counsel for Detroit Medical Center**

Sheldon H. Klein (P41062)
Bruce L. Sendek (P28095)
BUTZEL LONG, P.C.
150 West Jefferson, Suite 100
Detroit, Michigan 48226-4454
(313) 225-7000
klein@butzel.com
sendek@butzel.com

**Counsel for William Beaumont Hospital**

Sandra D. Hauser
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
shauser@sonnenschein.com

Margo Weinstein
Corey M. Shapiro
7800 Sears Tower
Chicago, Illinois 60606
(312) 876-8000
mweinstein@sonnenschein.com
cshapiro@sonnenschein.com

David B. Gunsberg (P24235)
LAW OFFICE OF DAVID B. GUNSBERG, P.C.
322 North Old Woodward Avenue
Birmingham, Michigan 48009
(248) 646-9090
davidgunsberg@hotmail.com

Cathrine F. Wenger (P37861)
TRINITY HEALTH CORPORATION
27870 Cabot Drive
Novi, Michigan 48377
(248) 489-5004
wengerc@trinity-health.org

**Counsel for Trinity Health Corp.**

- 12 -

David A. Ettinger
Peter E. Boivin
HONIGMAN MILLER SCHWARTZ AND COHN
LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7368
dettinger@honigman.com
pboivin@honigman.com

***Counsel for Mount Clemens General
Hospital***

David Marx, Jr.
David L. Hanselman, Jr.
Stephen Y. Wu
Amy J. Carletti
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606
(312) 372-2000
dmarx@mwe.com
dhanselman@mwe.com
swu@mwe.com
acarletti@mwe.com

Terrence J. Miglio
Gouri G. Sashital
KELLER THOMA, P.C.
440 East Congress Street, 5th Floor
Detroit, Michigan 48226
Telephone: (313) 965-7610
tjm@kellerthoma.com
gsr@kellerthoma.com

***Counsel for Henry Ford Health System***

## <u>CERTIFICATE OF SERVICE</u>

I, Sandra D. Hauser, an attorney of record in this case, hereby certify that, on this 20th day of April, 2009, I electronically filed the forgoing documents with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record in this action who are registered as CM/ECF users.

/s/ Sandra D. Hauser
Sandra D. Hauser
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
shauser@sonnenschein.com

***Counsel for Trinity Health Corp.***