UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A.
SUHRE on behalf of themselves and others
similarly situated,                                    Case No. 06-15601

                                    Plaintiffs,         Hon. Gerald E. Rosen

v.                                                      Magistrate:  Donald A. Scheer

DETROIT MEDICAL CENTER, HENRY
FORD HEALTH SYSTEM, MOUNT
CLEMENS GENERAL HOSPITAL, INC.,
ST. JOHN HEALTH, OAKWOOD
HEALTHCARE INC., BON SECOURS
COTTAGE HEALTH SERVICES, WILLIAM
BEAUMONT HOSPITAL and TRINITY
HEALTH CORP.

                      Defendants.

**MEMORANDUM IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION
TO STAY CONSIDERATION OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH ST. JOHN HEALTH**


**PUBLIC VERSION**

**ISSUES PRESENTED**

Should the Court grant a motion to stay consideration of Plaintiffs' Motion For Preliminary Approval Of Settlement With St. John Health (Docket No. 321), which will have the effect of keeping Detroit area nurses uninformed about their rights in connection with that settlement and may impede further settlements in this case, when the Nonsettling Defendants who seek the stay have no standing to do so and have not demonstrated that any of the requirements for such relief are satisfied here?

**Plaintiffs' Answer: No**

**TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES.**

*Ballard v. Stanton*, 833 F.2d 593 (6th Cir. 1987)

*Geyer v. USX Corp.*, 896 F. Supp. 1440, 1446 (E.D.Mich. 1994)

*Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987)

*Zupnick v. Fogel*, 989 F.2d 93 (2d Cir. 1993)

3B James W. Moore & John E. Kennedy, Moore's Federal Practice ¶ 23.80[5] (2d ed. 1992)

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008)

*Fleischman v. Albany Medical Center*, 06-00765, *slip op.* (N.D.N.Y. Apr. 13, 2009)

*Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)

## I.  INTRODUCTION

Pending before the Court is an unopposed motion, Plaintiffs' Motion For Preliminary Approval Of Settlement With St. John Health ("St. John Preliminary Approval Motion") (Docket No. 321), that seeks this Court's approval to notify nurses who provide direct patient care in certain Detroit-area hospitals of a Settlement Agreement that provides for a $13,583,475 cash payment to those nurses.  Plaintiffs' unopposed motion seeks, among other things, Court approval of the Legal Notice of Class Action Settlement (the "Notice")[1] and the notice plan directing that notice be mailed to the nurses impacted by the proposed Settlement Agreement. Lacking any standing to challenge this Settlement Agreement, five of the eight Defendants in this case (hereinafter "Nonsettling Defendants")[2] have filed a motion to stay consideration of the St. John Preliminary Approval Motion to prevent the affected nurses from receiving such a Court-approved Notice.  However, since these Defendants lack standing to challenge the St. John Preliminary Approval Motion, they also lack standing to seek such a stay.  Moreover, they cannot demonstrate -- indeed do not even try to argue -- that the requirements for issuance of a stay, as articulated by the Sixth Circuit, are met here.  The Court should deny the motion so that the Court can proceed to consider the proposed Notice to the nurses, recognizing the motion for

---

[1] A copy of the proposed Notice is attached as Exhibit  B to the Declaration of Mark A. Griffin In Support Of Plaintiffs' Motion For Preliminary Approval of Settlement (Docket No. 322).

[2] The motion to stay was filed by Defendants Trinity Health Corp., Henry Ford Health System, Mount Clemens General Hospital, Inc., William Beaumont Hospital, and Detroit Medical Center.  Besides St. John Health, Plaintiffs have settlements in principle with the other two defendants, Oakwood Healthcare, Inc. and Bon Secours Cottage Health Services.  As soon as the settlement agreements with Oakwood and Bon Secours are finalized, motions for preliminary approval similar to the pending motion with respect to St. John Health will be filed. *See* Declaration of Mark Griffin in Support of Opposition to Stay ("Griffin Decl.") ¶2.

what it is, a transparent ploy by parties without standing to do so, to object to the Settlement

Agreement with St. John.  The proposed settlement with St. John has already received

widespread publicity, and Plaintiffs' counsel has received a significant number of inquiries about

the meaning of the settlement from members of the proposed Settlement Class.  Rather than

leave these nurses in the dark about *their* rights in this litigation of *their* claims by saying nothing

about the proposed settlement for an indefinite period of time as suggested by the Non-Settling

Defendants, the Court should order that these Detroit area nurses should promptly receive the

proposed Notice informing them about the status of their claims.  Moreover, resolution of this

motion is an important part of the overall process of moving this matter forward to finality, not

just with St. John but with all parties.  As this Court recognized when it urged the parties to

participate in a mediation even when some Defendants expressed a clear disinclination to

participate – a mediation that has ultimately resulted in multiple settlements with defendants -

actions that promote settlements often bear fruit.

## II. STATEMENT OF FACTS

### A.  The Litigation

Plaintiffs filed this lawsuit individually and as representatives of all persons employed by

any defendant to work in a hospital in the Detroit MSA as a Registered Nurse ("RN") from

December 12, 2002 to the present (the "Class Period").  The Third Amended Complaint (the

"Complaint") (Docket No. 67) alleges that the Defendant hospitals engaged in a conspiracy to

depress the wages of their hospital nurses and to exchange information regarding nurse pay with

the effect of suppressing wages and that, as a result of the alleged conduct of Defendants, the

wages of RNs were depressed during the Class Period.

Plaintiffs Pat Cason-Merenda and Jeffrey Suhre seek certification of a class of over 20,000[3] RNs working in the Defendants' hospitals in the Detroit Metropolitan Statistical Area ("Detroit MSA" or "Detroit"). Plaintiffs allege that these RNs have been harmed by Defendants' longstanding conspiracy to depress the wages of their hospital nurses and Defendants' conspiracy to exchange information regarding nurse pay.

The evidence in this matter presents overwhelming support for the allegations stated in the Complaint.[4] In addition to evidence presented by Plaintiffs' expert, Professor Orley Ashenfelter, showing parallel compensation behavior among the Defendants,[5] one of Defendants' own experts, Professor Daniel Rubinfeld, has presented graphical evidence demonstrating the lockstep compensation followed by these Defendants -- data which Prof. Ashenfelter has further analyzed, showing that Prof. Rubinfeld's analysis discloses that wages of class members across hospitals are extremely highly correlated.[6] Such parallel pricing, when

---

[3] *See*, Report of Orley Ashenfelter ("*Ashenfelter Rep.*") ¶33. (excerpt produced as Ex. 1 to the Griffin Decl.) (Report previously produced in its entirety as Exhibit 1 to Declaration of Raymond Farrow In Support Of Motion To Certify Class ("Farrow Class Certification Decl.") Dkt No. 450).

[4] During the course of discovery in this case, Plaintiffs analyzed and reviewed over 8.2 million pages of Defendant and third party documents and analyzed multiple large and complex payroll and human resource databases produced by the Defendants. In addition, Plaintiffs and Defendants have taken over one hundred depositions, including multi-day depositions of expert witnesses. Beyond these costs of attorney time, counsel have incurred substantial out-of-pocket costs on behalf of Plaintiffs, including significant costs associated with expert discovery. Even the simple vendor costs of processing and storing 8.2 million pages of electronic documents are many times the recovery any single Plaintiff could hope to obtain. Farrow Class Certification Decl. ¶2 (Dkt No. 450).

[5] *See Ashenfelter Rep.*, Figure 1 (Ex. 1 to Griffin Decl.)

[6] *See* Report of Daniel Rubinfeld (Ex. 2 to Griffin Decl. and to Farrow Class Certification Decl., Dkt. No. 450) at p 47 (graph accompanying ¶ 98) and Rebuttal Report of Orley Ashenfelter

combined with (1) extensive evidence of regular communications among the executives of these

hospitals at every level from CEO to CFO to senior and lower level Human Resources personnel,

as well as (2) a degree of price information exchange which Defendants' own expert, Dr. Edward

Snyder, admitted exceeded anything he had seen in his many years of testifying in antitrust class

actions, (Snyder Tr. at 423:10-426:6) (Ex. 4 to Griffin Decl. and to Dkt. No. 450), presents

overwhelming evidence in support of both of Plaintiffs' claims.

Because of this Court's denial of Defendants' efforts to block discovery into their

conduct prior to certification through bifurcated discovery, Plaintiffs have been able to

demonstrate definitively how the claims of every member of the proposed class may be proven

with common class-wide evidence.  Plaintiffs have demonstrated this not just by explaining

proposed methods of analysis that they intend to conduct later, but by showing this Court

concretely exactly how all elements of Plaintiffs' claims may be proven on a class-wide basis.

That evidence comes from documents and testimony about Defendants' own conduct and

practices as well as through the economic analysis presented by Plaintiffs' expert, Professor

Orley Ashenfelter,[7] as described in Plaintiffs' Motion for Class Certification (Dkt. No. 384).

---

(Ex. 3 to Griffin Decl. and to Farrow Class Certification Decl., Dkt. No. 450) ¶¶ 159-60 and
Table R28 (showing correlation coefficients for monthly average base wages across the eight
defendant hospitals varying between 0.87 and 0.98.)

[7] Prof. Ashenfelter is unarguably one of the most influential and widely respected labor
economists in the United States.  Indeed, just last week, it was announced that he has been
nominated (as sole nominee) as President Elect of the American Economic Association
("AEA").  Many economists would consider the position as President of the AEA to be a more
prestigious recognition by peer economists than the award of a Nobel Prize.  Griffin Decl. ¶3.

*B.  The Settlement*

After extensive negotiations stretching over many months -- during which the merits of each party's positions were thoroughly discussed, evaluated and negotiated -- a settlement with St. John Health was reached.  The discussions were founded on a full understanding of the strengths and weaknesses of the case, based, *inter alia*, on information gleaned from discovery. In accordance with the Settlement Agreement, Plaintiffs filed the St. John Preliminary Approval Motion on March 26, 2009.[8]  Likewise, St. John has already served a notice of the proposed settlement on the appropriate Federal officials and the appropriate State official of each state in which a class member resides in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 and paragraph 32(a) of the Settlement Agreement (Dkt No. 334).   St John, represented by some of the nation's most experienced corporate lawyers in the fields of class actions and anti-trust, determined that it should pay a very substantial sum – over thirteen and a half million dollars – on the basis of its belief that the class here (a smaller and more homogeneous class than that named in the Complaint, and a class identical to that recently certified by Judge McAvoy in the related *Fleischman* litigation, as described further below) was proper for certification under Rule 23.[9]

---

[8] Paragraph 31 of the St. John Settlement Agreement states, "Plaintiffs and St. John shall use their best efforts to effectuate this Settlement Agreement, and Plaintiff shall *promptly* seek to obtain the Court's preliminary and final approval of this Settlement Agreement (including providing class notice under Federal Rules of Civil Procedure 23(c) and (e)) and to secure the *prompt*, complete, and final dismissal with prejudice of the Class Action as to St. John only." (Ex. A to Dkt. No. 322) (emphasis added).

[9] *See*, Settlement Agreement ¶¶ 30-31 (Ex. A to Dkt. No. 322)

Unsurprisingly, for a matter of such importance and interest, the filing of the St. John

Motion For Preliminary Approval attracted extensive news coverage in national, local and

industry-related publications and other sources.  Numerous Detroit area nurses have contacted

Plaintiffs' counsel reporting that they heard about this settlement on the local news.  Griffin

Decl. ¶4.  For instance, on March 30, Crain's Detroit Business reported on this matter under the

headline "St. John Health agrees to $13.6 million settlement with nurses."  A small sampling of

the enormous number of written news sources reporting this story were the Associated Press,

CNBC, Business Week, USA Today, Netscape.com, the Lansing State Journal,

finance.yahoo.com, AOL, the Chicago Tribune, as well as television news sources such as Fox27

and WZZM13, and specialist medical industry (and nursing practice) publications such as

Nursing Link, HealthWorkforceInfo, Modern HealthCare, AHANews, HealthLeadersMedia, and

Examiner.com.[10]  Griffin Decl. Ex . 9.  Given this publicity, proposed class counsel have been

---

[10] *See*, *e.g.*,

http://209.85.173.132/search?q=cache:kd4Xj_hN5B0J:www.msnbc.msn.com/id/30137498/+st+j
ohn+settle+nurse&cd=36&hl=en&ct=clnk&gl=us;

http://www.modernhealthcare.com/apps/pbcs.dll/article?Date=20090330&Category=REG&ArtN
o=303309967&SectionCat=&Template=printpicart;

http://ahanews.com/ahanews_app/jsp/display.jsp?dcrpath=AHANEWS/AHANewsNowArticle/d
ata/ann_033109_settlement&domain=AHANEWS;

http://bx.businessweek.com/employment-law/hospitals-settle-antitrust-lawsuit-alleging-wages-
fixed-for-nurses/7434029099546035790-adc5872341acfbebc9cd8a7ed8930f5e/;

http://origin.wzzm13.com/news/state/story.aspx?storyid=107817&catid=83;

http://webcenters.netscape.compuserve.com/celebrity/story.jsp?idq=/ff/story/0001/20090409/145
6266233.htm;

http://article.wn.com/view/2009/04/10/Hospital_operator_wants_to_settle_nurse_lawsuit/;
http://www.nursinglink.com/news/articles/8030-hospital-operator-wants-to-settle-nurse-lawsuit;
http://www.examiner.com/a-1952732~Hospital_operator_wants_to_settle_nurse_lawsuit.html;
http://www.healthleadersmedia.com/content/231299/topic/WS_HLM2_HR/Michigan-hospital-
operator-wants-to-settle-nurse-lawsuit.html;

http://finance.yahoo.com/news/Hospital-operator-wants-to-apf-14894863.html?.v=3;
http://www.crainsdetroit.com/article/20090330/FREE/903309950;

fielding questions from numerous interested potential class members.  Certainly, there are many more potential class members who want to know more information about their rights under the proposed St. John settlement.

### III.ANALYSIS

    A.  *Nonsettling Defendants Have No Standing To Object To The Settlement.*

      "Generally, nonsettling defendants lack standing to object to a partial settlement."  *Waller v. Financial Corp. of America*, 828 F.2d 579, 582-83 (9th Cir. 1987); *Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993) ("[A] nonsettling defendant lacks standing to object to a court order approving a partial settlement because a nonsettling defendant is ordinarily not affected by such a settlement.").  "This rule advances the policy of encouraging the voluntary settlement of lawsuits."  *Waller*, 828 F.2d AT 582-83.  *See also* 3B James W. Moore & John E. Kennedy, Moore's Federal Practice ¶ 23.80[5] (2d ed. 1992) ("A co-defendant has no standing to appeal from a consent decree that binds him in no way and does not affect his legal rights.").  Indeed, courts in the Sixth Circuit, including this one, have recognized that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

---

http://www.healthworkforceinfo.org/news/browse/xd162;
http://www.lansingstatejournal.com/article/20090410/NEWS03/904100314/1004/NEWS03, in each case, last visited on April 29, 2009.  Copies of each of these publications are attached as Exhibit 9 to the Griffin Decl.

A nonsettling defendant may object to a settlement only when it can demonstrate that it will suffer some "formal legal prejudice" as a result of the settlement. *Geyer v. USX Corp.*, 896 F. Supp. 1440, 1446 (E.D.Mich. 1994) (citing *Waller* 828 F.2d at 583). "A nonsettling defendant can suffer formal legal prejudice from a settlement which purports to strip the nonsettling defendant of an action for indemnity or contribution." *Id.* Here, the Settlement Agreement with Defendant St. John Health does not strip the Nonsettling Defendants of such an action for indemnity or contribution. Indeed, there is no such right under the antitrust laws. *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981). Therefore, the Nonsettling Defendants have no standing to object to this settlement. In fact, the actions of the Nonsettling Defendants acknowledge their lack of standing since none filed any objection to the St. John Preliminary Approval Motion, as they explicitly note in the instant motion. Memorandum Of Law In Support Of Certain Defendants' Motion To Stay Consideration Of Plaintiffs' Motion For Preliminary Approval of Settlement With St. John Health ("Motion To Stay"), p. 2, n. 2 ("[Nonsettling Defendants] are not submitting objections to the St. John settlement.")

> B.  *Nonsettling Defendants Cannot Circumvent Their Lack Of Standing To Object To The Settlement By Moving To Stay The Motion For Preliminary Approval Because They Equally Lack Standing To Seek A Stay.*

Having essentially conceded that they have no standing to object to the settlement with St. John Health by not filing such an objection, the Nonsettling Defendants attempt to circumvent this well-settled legal principle by instead moving to stay the pending, unopposed St. John Preliminary Approval Motion. Such a stay will impede Plaintiffs' and St. John's goal of resolving their dispute set forth in the Complaint, an issue between St John and members of the class as to which no other party (except this Court) has any say. Unsurprisingly, Nonsettling

Defendants' effort to circumvent their lack of standing to interpose themselves in this settlement must fail.  Nonsettling Defendants have no more right to seek a stay than they do to object to the settlement itself.  The Sixth Circuit Court of Appeals has recognized that only a party that has standing in the underlying judicial proceeding can seek a stay of that proceeding.  In *Ballard v. Stanton*, 833 F.2d 593 (6th Cir. 1987), the Court denied Plaintiffs' motion for an emergency stay of the state court criminal proceedings against Frances Ballard ("Ballard").  The emergency stay motion was brought by Ballard and another Plaintiff, Betty Stimpson ("Stimpson").  With respect to Stimpson's request for an emergency stay, the Sixth Circuit denied that motion based on her lack of standing in the underlying proceeding.  "Initially, this court notes that Stimpson lacks standing to pursue the issue presently before this panel, i.e. the motion for an emergency stay of Ballard's state court criminal trial."  *Id.* at 594.  Likewise, in this case, the Nonsettling Defendants' motion to stay should be denied because they lack standing to object to the St. John Preliminary Approval Motion.

> C. *Nonsettling Defendants Cannot Show, And Have Not Even Argued, That The Prerequisites For Granting A Stay Are Satisfied Here.*

In determining whether to grant a stay, a court should consider: (1) the likelihood that the party seeking the stay will prevail on the merits, (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay.  *Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  In applying this test, courts must balance the factors.  The moving party must demonstrate a likelihood of success on the merits to a degree inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. "[I]n order to justify

a stay of the district court's ruling, the [moving party] must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted." *Griepentrog,* 945 F.2d at 153 (citing *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985)).  Nowhere in their motion do the Nonsettling Defendants argue that a stay is justified under this controlling standard or, indeed, even mention this controlling standard.   The Nonsettling Defendants avoidance of this legal standard is unsurprising since they cannot show that any of these requirements are satisfied here, rendering the required balance of factors uniquely simple.[11]

> 1.  The Nonsettling Defendants Will Not Prevail On The Merits Of Either The St. John Preliminary Approval Motion Or The Motion for Class Certification.

As discussed above, the Nonsettling Defendants have no standing to oppose the St. John settlement, and no opposition has been filed to the St. John Motion For Preliminary Approval. Therefore, the likelihood that the Nonsettling Defendants will prevail in opposing that motion is virtually non-existent.

Nonsettling Defendants devote much of their memorandum in support of their motion discussing the likelihood of certification of a litigation class, a matter not at issue in the Motion they seek to stay, which only seeks certification of a Settlement Class.  However, as to the litigation class, all of the Nonsettling Defendants' arguments have been addressed in Plaintiffs'

---

[11] Having failed to even try to make such a showing or even acknowledge this standard, Nonsettling Defendants cannot belatedly try to rectify this omission in any Reply they may file to argue that these standards have been satisfied. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454 (6th Cir. 2003) (holding that the trial court abused its discretion in basing its ruling upon new arguments first raised in reply).

Motion for Class Certification (Dkt No. 384), and they will not be repeated here.[12]  Based on those pleadings, the content of which are incorporated here, Plaintiffs contend that the likelihood of the Nonsettling Defendants prevailing on class certification is also remote.[13]  Certainly, the Nonsettling Defendants have not met their burden of showing that it is sufficiently likely that they will prevail to justify a stay when they cannot show any cognizable harm at all, let alone "irreparable harm," and the public interest strongly weighs in favor of the right of absent proposed Settlement Class members to know about their rights as to their claims in this matter.

One misstatement contained in the Motion To Stay deserves to be highlighted, however. The Nonsettling Defendants inaccurately assert that "[n]o damages class has ever been certified in a wage suppression case, and every Court to consider a class has rejected one." In fact, many courts have certified such classes. *See*, *e.g.*, *Fears v. Wilhelmina Model Agency, Inc.*, No. 02-4911, 2003 WL 21659373, at *6-9 (S.D.N.Y. July 15, 2003) (certifying class of models alleging conspiracy to fix compensation despite defendants' argument that "each model is unique. . ."); *Law v. NCAA*, 5 F. Supp. 2d 921, 931 (D. Kan. 1998) (declining to decertify class of college coaches alleging conspiracy to depress pay despite substantial differences among coaches for

---

[12] The Nonsettling Defendants argue that "[t]he Court should not be lured into accepting Plaintiffs' promises that they can and will tender 'common proof.'" Motion To Stay, p. 6. However, given the fact that discovery in the case has been completed and Plaintiffs have now filed their Motion for Class Certification, Plaintiffs have provided far more than a promise of common proof. Rather, in that motion, Plaintiffs have shown this Court concretely exactly how all elements of Plaintiffs' claims will be proven on a class-wide basis.

[13] As the Sixth Circuit recently affirmed, speaking of the element of Rule 23 challenged by the Nonsettling Defendants:  "'[p]redominance is a test readily met in certain cases alleging ... violations of the antitrust laws,' ... because proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (emphasis in original) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), and citing 7AA Wright & Miller § 1781)).

different sports); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992) (denying motion to decertify class of professional football players alleging league and component teams violated antitrust laws by imposing salary restraints). Indeed, another court in the Sixth Circuit has recently confirmed the appropriateness of certifying a class of employees in a class action alleging that hiring illegal immigrants artificially increased supply, thereby suppressing compensation for other workers performing similar jobs -- exactly the same wage suppression issue as is raised here, even if the claim does not arise under the Sherman Act. *See Trollinger v. Tyson Foods Inc.*, No. 4:02-23, 2006 WL 2924938, at *10-11 (E.D. Tenn. Oct. 10, 2006); *see also Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 447 (E.D. Wash. 2004) (same).

Most egregiously, the Nonsettling Defendants cite Judge McAvoy's decision in *Fleischman v. Albany Medical Center*, 2008 WL 2945993 (N.D.N.Y. July 28, 2007) ("*Fleischman I*") (Ex. 5 to Griffin Decl.),[14] to support this inaccurate statement that no court has certified such a class. What Defendants fail to tell this Court is that *one week before* the Nonsettling Defendants filed their Motion to Stay, Judge McAvoy certified a settlement class in the *Fleischman* case identical to the settlement class proposed here.[15] In *Fleischman v. Albany*

---

[14] Judge McAvoy certified this substantively identical settlement class having considered substantial parts of the Detroit Defendants' experts' critiques of Prof. Ashenfelter's analysis because all relevant parts of Dr. Rubinfeld's and other Detroit defense experts' reports were filed with the Albany Court. Farrow Class Certification Decl. ¶ 3 (Dkt. No. 450). With full access to that record, Judge McAvoy determined that, based upon an analysis of those competing expert reports, the class was certifiable as to all issues.

[15] The only differences between the class certified by Judge McAvoy on April 13 and the St John Settlement Class before this Court are that the word "Detroit" is replaced by the word "Albany" in the class definition, and the class period differs because the Albany case was filed earlier than this case. The certified Albany class represents the same set of bedside, staff nurses as the class here.

*Medical Center*, 06-00765, *slip op.* (N.D.N.Y. Apr. 13, 2009) ("*Fleischman III*"),[16] Judge McAvoy certified a settlement class of staff nurses, explaining that "although the Court previously held that Rule 23(b)(3) has not been satisfied with respect to injury-in-fact & damages for the [broader] class analyzed [in, *Fleischman I*, which proposed class included advanced practice nurses, managers and supervisors] …, the Court finds that common issues predominate over any individual issues affecting class members of the [revised class of staff nurses]." (Ex. 7).[17] This failure to inform the Court about this subsequent ruling cannot be viewed as a mere oversight by the Nonsettling Defendants because certain of the attorneys representing these Defendants also unsuccessfully opposed certification of the settlement class in *Fleischman*, resulting in this ruling.[18]

The Nonsettling Defendants also rely on *In re Compensation of Managerial, Prof'l, & Tech. Employees Antitrust Litig.,* (*In re MPT Compensation*) 2003 U.S. Dist. LEXIS 22836 (D.N.J. May 27, 2003) (generally referred to as *Todd v. Exxon* after the caption of the associated appellate decision) to support their erroneous assertion. However, as Judge McAvoy recognized in his decision in *Fleischman v. Albany Medical Center,* 06-00765, slip op. (N.D.N.Y. Sep. 17,

---

[16] A Copy of the April 13 *Fleischman III* Minute Order is attached as Exhibit 6 to the Griffin Decl.

[17] On May 1, 2009, Judge McAvoy entered an Order Granting Preliminary Approval Of Settlement Of Class Action And Authorizing The Dissemination Of Notice in the *Fleischman* action consistent with his prior Minute Order, a copy of which is attached as Exhibit 7 to the Griffin Decl.

[18] In fact, McDermott Will & Emery LLP, counsel for Nonsettling Defendant Henry Ford Health System, was the signator and primary spokesperson for the *Fleischman* nonsettling defendants in their failed opposition to preliminary approval of the settlement with defendant Northeast Health in that case. That firm represents defendant Albany Medical Center in the *Fleischman* action. Griffin Decl. ¶5. *See,* MRPC 3.3 ("Candor Towards the Tribunal").

2008) (*Fleischman II*) (Ex. 8 to Griffin Decl.), the analysis in *Todd* is entirely irrelevant to this case. As here, the *Todd* plaintiffs alleged an anticompetitive conspiracy to lower employee compensation arising through exchanges of information about wages among various oil companies. However, unlike here, the class that the plaintiffs sought to have certified spanned every professional, managerial, and technical job at these companies, including pilots, accountants, engineers, attorneys, and petroleum engineers.[19] As Judge McAvoy recognized, the class of staff nurses at issue here represent a far more homogeneous group of workers characterized by largely overlapping skills and all operating in the same labor market, unlike a pilot who works for Exxon in Texas and an accountant who works for Exxon in New Jersey who quite obviously operate in entirely separate labor markets. *See Fleischman II* Tr. at 44-45. (Ex. 8 to Griffin Decl.).

    2.   The Nonsettling Defendants Will Not Be Irreparably Harmed Absent A Stay.

While the Nonsettling Defendants state in conclusory fashion that preliminary approval of the St. John settlement will unfairly prejudice them, they do not explain how they will be harmed nor do they present any evidence in support of their assertion of harm, beyond a vague statement that a mailing to their employees "would be disruptive and detrimental to the employment relationship." Motion to Stay at 3. However, the fact of this litigation is a matter of public record which has, as explained above, already received extensive publicity (including

---

[19] In a report that was largely followed by the district court in denying certification, Prof. Ashenfelter, Plaintiffs' expert economist here who was the expert for the defendants in *Todd*, explained in a Report filed by Exxon with the *In re MPT Compensation* district court why the complete lack of any common underlying labor market for the supposedly affected workers prevented common proof of impact or other elements of their claim. Griffin Decl. ¶6. Prof. Ashenfelter understands when the characteristics of the employment category alleged to be the targets of a wage fixing conspiracy is appropriate for certification (as here) and where it is not (as in *Todd*).

when the case was first filed). Not only do Nonsettling Defendants fail to point to any authority stating that mere publicity of developments in a lawsuit amounts to irreparable harm, but Nonsettling Defendants also cannot point to any incremental effect on their relationship with their employees resulting from notice of this Settlement.[20] More importantly, they do not argue <u>irreparable</u> harm absent a stay as required by the Sixth Circuit. Unable to show any harm to themselves, the Nonsettling Defendants are left to argue instead that they are concerned that the putative class "could" be prejudiced if the requested stay is not granted. *Id* at 10. In considering this argument, the Court should be mindful of the Seventh Circuit's wry observation:

> The burden of establishing class requirements rests on plaintiff, but it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. … [I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981) (internal cite omitted). As should be clear from the Motion To Stay, the Nonsettling Defendants have no interest in protecting the putative class. Rather, they simply want to avoid certification of any class, even a settlement class, at all costs.

---

[20] Further, Nonsettling Defendants' efforts to hide either the fact of this litigation or facts about the progress of this litigation from members of the proposed class are fundamentally inconsistent with the public's right to access to civil litigation (especially litigation that directly concerns the rights of the people to be notified). *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996) ("[A] District Courts['] … discretion to [limit access to information about litigation] … is circumscribed by a long-established tradition which values public access to court proceedings ….."). Class members have a particularly strong and vital right to know about the course of litigation of matters with a significant public policy implication such as this antitrust case involving significant local employers. Francis Hare et al., CONFIDENTIALITY ORDERS, § 6.14 at 155 (1988) ("The greater the public's interest in the case, the less acceptable are restraints on the public's access to the proceedings."); *Mitsubishi Motors Inc v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 635 (1985) ("A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy.") (internal quote omitted).

The focus of the Nonsettling Defendants' concern seems to be the purported "inadequacies in the Notice," asserting that the Notice should disclose that it is conditional and could be renegotiated if the Nonsettling Defendants prevail on the pending motion for class certification. While both Plaintiffs and St. John believe that the Notice as proposed to the Court adequately describes the terms of the Settlement Agreement, particularly since the entire agreement will be made available to proposed class members online (at www.detroitnursewages.com) or by writing or calling the claims administrator at a toll-free telephone number, Plaintiffs are willing to add a sentence to paragraph 2.4 of the Notice saying, "The settlement is also subject to renegotiation if the Court does not certify a litigation class or if the Court certifies a litigation class that is materially different than the Settlement Class." The Nonsettling Defendants also complain that the Notice fails to provide information about the proportion of Plaintiffs' damages that St. John has agreed to pay. Nonsettling Defendants can point to no authority that requires any such statement and Plaintiffs are unaware of any Court that has ever required such a disclosure. In fact, paragraph 2.4 of the Notice does explain the workings of the Most Favored Nation Clause (paragraphs 59-61 of the Settlement Agreement). Since the full Settlement Agreement and all pleadings relating to its approval will be available in the ways set forth above, the Notice is adequate and does not mislead the proposed class.

3.   The Detroit Area Nurses Will Be Harmed If The Court Grants The Stay.

By moving for a stay of the motion that would approve the Notice and the plan for disseminating the Notice, the Nonsettling Defendants are advocating that the putative class be kept in the dark regarding the terms of the proposed settlement with St. John. They are, in essence, seeking to restrain the notice mandated by the Federal Rules of Civil Procedure. Fed. R.

Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class member who would be bound by the [settlement] proposal."). Such Notice is particularly important in this case because, as noted above, this is a matter of such interest that the filing of the St. John Preliminary Approval Motion attracted extensive news coverage in national, local and industry-related publications and other sources. Given this publicity, interested potential class members have been contacting Plaintiffs' counsel with questions about the settlement, and there are likely many more potential class members who want to know more information about the Settlement Agreement with St. John Health. While news outlets may describe the settlement with St. John Health in general terms, they do not satisfy the notice requirement of Rule 23. Putative class members are harmed by not being provided with a complete description of the settlement and how their legal rights are potentially affected in connection with that agreement. The St. John Motion For Preliminary Approval seeks to provide Court-approved Notice to members of the putative class. Indeed, since Nonsettling Defendants here seek through the proposed stay nothing less than a prior restraint on speech, the hurdle to seek a stay is substantially higher. *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). *See also* n.20, *supra.*

4. The Pubic Interest Cautions Against Granting The Stay.

Public policy strongly favors settlement of class action suits. *Cardizem.*, 218 F.R.D. at 530. "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1008-9 (S.D. Ohio 2001). This is particularly true with class actions, the settlement of which is generally favored. *Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998). And, as

already explained, the public, and so certainly potential class members whose claims are directly at stake, have a fundamental right to know about the progress of civil litigation. Here, the Nonsettling Defendants are seeking a stay that will have the effect of delaying the process of approving the settlement with St. John and keeping class members in the dark about the status of their claims. Accordingly, the public interest is against issuing a stay.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court deny the Nonsettling Defendants' motion to stay the St. John Preliminary Approval Motion. They lack standing to object to the St. John settlement and, hence, lack standing to move for a stay. Moreover, they fail to demonstrate satisfaction of any of the prerequisites for such relief.

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By: /s/  Mark A. Griffin __
Mark A. Griffin
Ray Farrow
Tana Lin
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

**COHEN MILSTEIN SELLERS
& TOLL PLLC**
Daniel A. Small
Patrick A. Tillou
Kalpana Kotagal
Sharon K. Robertson
1100 New York Avenue, N.W.,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

**JAMES & HOFFMAN**
David P. Dean
Emilie S. Kraft
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036-4748
Tel: (202) 496-0500
Fax: (202) 496-0555

Stephen Wasinger
STEPHEN F. WASINGER PLC
26862 Woodward Avenue, Suite 202
Royal Oak, MI 48067
Tel:  248-544-5100
Fax: 248-479-0391
Email:  sfw@sfwlaw.com

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A.
SUHRE on behalf of themselves and others
similarly situated,

                                    Plaintiffs,

v.

DETROIT MEDICAL CENTER, HENRY
FORD HEALTH SYSTEM, MOUNT
CLEMENS GENERAL HOSPITAL, INC., ST.
JOHN'S HEALTH, OAKWOOD
HEALTHCARE, INC., BON SECOURS
COTTAGE HEALTH SERVICES, WILLIAM
BEAUMONT HOSPITAL d.b.a. BEAUMONT
HOSPITALS, and TRINITY HEALTH CORP.,

                                     Defendants.

Case No. 06-15601

Hon. Gerald E. Rosen

Magistrate:  Donald A. Scheer

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2009 I served the attached document(s) on the parties listed below as indicated:

**VIA ECF**

| | | |
|---|---|---|
| Alethea A. Wilson | Charles N. Raimi | Patricia C. Schabath |
| Sandra D. Hauser | Amy J. Carletti | David Marx, Jr. |
| David L. Hanselman, Jr. | Stephen Y. Wu | Terrence J. Miglio |
| Gouri G. Sashital | David A. Ettinger | Peter E. Boivin |
| Jill L. Marr | Margo Weinstein | Christopher Q. King |
| Corey M. Shapiro | Howard B. Iwrey | Fred K. Herrmann |
| Shari Ross Lahlou | Bethany M. Wimsatt | Thomas M.J. Hathaway |
| David A. Hardesty | Bruce L. Sendek | Michael R. Shumaker |
| Toby G. Singer | Michael R. Turco | Mark T. Nelson |
| Sheldon H. Klein | Catherine F. Wenger | |
| David B. Gunsberg | | |

                                    s/Mark A. Griffin
                                    Mark A. Griffin