UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | Case No. 06-15601 |
| v. | ) ) | Hon. Gerald E. Rosen |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL and TRINITY HEALTH CORP. | ) ) ) ) ) ) ) ) ) | Magistrate: Donald A. Scheer |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT WITH BON SECOURS COTTAGE HEALTH SERVICES.**

Plaintiffs move the Court for an Order granting preliminary approval of the Settlement Agreement described herein and certification of the Settlement Class defined in that agreement. The Settlement Agreement provides for payment of $325,000 to be allocated among the Settlement Class in a manner to be determined if and when additional funds become available whether through additional settlements or judgments. The settlement was reached after some two years of vigorous litigation and through a lengthy process of arms-length negotiations which took over eight months including mediation conducted by the Court-appointed Master for Settlement Negotiations, Prof. Eric D. Green on October 17, 2008. The Settlement will provide significant benefits to the Class, while removing the risk and delay associated with further litigation against defendant, Bon Secours Cottage Health Services. The Settlement Agreement that was fully executed on September 11, 2009 is attached as Exhibit A to the Declaration of

Mark A. Griffin in support of this motion.

      Dated this 14th day of September, 2009

                           Respectfully submitted:

                           **KELLER ROHRBACK L.L.P.**

                           By:  /s/   Mark A. Griffin
                           Mark A. Griffin
                           Ray Farrow
                           Tana Lin
                           1201 Third Avenue, Suite 3200
                           Seattle, WA 98101-3052
                           (206) 623-1200 (Telephone)
                           (206) 623-3384 (Facsimile)

                           Daniel A. Small
                           Sharon K. Robertson
                           COHEN MILSTEIN SELLERS
                           & TOLL PLLC
                           1100 New York Avenue, N.W.,
                           Suite 500 West
                           Washington, D.C. 20005
                           Tel: (202) 408-4600
                           Fax: (202) 408-4699

                           David P. Dean
                           Emilie S. Kraft
                           JAMES & HOFFMAN
                           1101 17th Street, N.W., Suite 510
                           Washington, D.C. 20036-4748
                           Tel: (202) 496-0500
                           Fax: (202) 496-0555

                           Stephen Wasinger
                           STEPHEN F. WASINGER PLC
                           26862 Woodward Avenue, Suite 100
                           Royal Oak, MI 48067
                           Tel:  248-544-5100
                           Fax: 248-479-0391
                           Email:  sfw@sfwlaw.com

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. | ) | |
| SUHRE on behalf of themselves and others | ) | |
| similarly situated, | ) | Case No. 06-15601 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Gerald E. Rosen |
| | ) | |
| DETROIT MEDICAL CENTER, HENRY | ) | Magistrate:  Donald A. Scheer |
| FORD HEALTH SYSTEM, MOUNT | ) | |
| CLEMENS GENERAL HOSPITAL, INC., | ) | |
| ST. JOHN HEALTH, OAKWOOD | ) | |
| HEALTHCARE INC., BON SECOURS | ) | |
| COTTAGE HEALTH SERVICES, WILLIAM | ) | |
| BEAUMONT HOSPITAL and TRINITY | ) | |
| HEALTH CORP. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT
<u>WITH BON SECOURS COTTAGE HEALTH SERVICES</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ............................................................................................... 2

   A. The Litigation.............................................................................................. 2

   B. Bon Secours Cottage Health Services........................................................ 3

   C. The Settlement Agreement.......................................................................... 3

      1.   The Settlement Class ........................................................................ 4

      2.   The Settlement Amount .................................................................... 4

      3.   Cooperation ....................................................................................... 5

      4.   Release ............................................................................................... 5

   D. The Timeline .............................................................................................. 5

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL........................................ 6

   A. Standard for Granting Preliminary Approval.............................................. 6

   B. The Proposed Settlement is in the Range of Possible Approval as Fair, Reasonable and Adequate. .......................................................................................... 9

   C. The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness. ................... 10

   D. The Proposed Settlement Provides Significant Benefit to the Class, Particularly Given the Expense, Duration and Uncertainty of Continued Litigation and this Defendant's financial Situation. ................................................................................ 12

IV.  CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED. .... 13

   A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)......................... 14

      1.   The Settlement Class Meets the Numerosity Requirement. ......................................... 14

      2.   Common Questions of Law and Fact Exist. ................................................. 14

      3.   Plaintiffs' Claims and Defenses Are Typical of Those of the Class. ............................ 15

      4.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of All Settlement Class Members....................................................................................... 16

   B. The Requirements of Rule 23(b)(3) are Satisfied. ................................................. 17

   C. Superiority................................................................................................. 20

V.   THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO CLASS MEMBERS. .................. 21

VI.  CONCLUSION................................................................................................ 22

## STATEMENT OF ISSUES PRESENTED

1.  Whether the Court should preliminarily approve the Settlement Agreement.[1]

2.  Whether the Court should certify a Settlement Class.

3.  Whether the Court should approve the form and method of Class Notice.

4.  Whether the Court should set a Fairness Hearing, along with deadlines for Class Counsel to submit their motion for final approval of the proposed Settlement Agreement.

**Plaintiffs' Response To All Questions: YES**

---

[1] All capitalized terms herein are defined either in this Memorandum or the Settlement Agreement itself.

## <u>STATEMENT OF</u>
## <u>MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT</u>

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)

*Williams v. Vukovich, 720* F.2d 909 (6th Cir. 1983)

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 ( S.D. Ohio 2007)

*Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006)

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93 (W.D. Mich. 1998)

*Reed v. Rhodes,* 869 F. Supp. 1274 (N.D. Ohio 1994)

Fed. R. Civ. P. 23

## I.   INTRODUCTION

After over two years of litigation and hard fought, arms-length negotiation by highly experienced, capable counsel, Bon Secours Cottage Health Services ("Bon Secours") and Plaintiffs (together "the parties") have reached a Settlement Agreement resolving the claims of a proposed class of "registered nurses who provide direct patient care in short term acute care facilities, exclusive of supervisory, managerial and advance practice nurses and who were employed by Defendants within the Detroit Metropolitan Statistical Area at any time from December 12, 2002 through December 12, 2006" (the "Bon Secours Settlement Class" or "Settlement Class").[2]

The Settlement Agreement reached between the parties secures a cash payment of $325,000 for the Settlement Class.  Therefore, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class; (2) certifying the Bon Secours Settlement Class, as defined below; (3) appointing Keller Rohrback L.L.P., Cohen Milstein Sellers & Toll, P.L.L.C., James & Hoffman, PC, as Class Counsel for the Settlement Class, Stephen F. Wasinger PLC as Liaison Counsel for the Settlement Class, and Pat Cason-Merenda and Jeffrey A. Suhre as Class Representatives; (4) approving the form of the Legal Notice of Class Action Settlement (the "Notice"), attached as Exhibit B to the Declaration of Mark A. Griffin in Support of Preliminary Approval of Bon Secours Cottage Health Services Settlement ("Griffin Bon Secours Declaration"); (5) approving the notice plan and directing that notice be mailed; (6) establishing

---

[2] A copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Mark A. Griffin in Support of Preliminary Approval of Bon Secours Cottage Health Services Settlement filed with this motion.

a deadline for filing papers in support of final approval of the proposed settlement and a request
for reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections
by Settlement Class members; (8) establishing a deadline for Settlement Class members to
exclude themselves from the proposed Settlement Class; (9) establishing a date for a hearing on
final approval of the proposed settlement; and (10) ordering a stay of all proceedings against Bon
Secours except those proceedings provided for or required by the Settlement Agreement.

## II.  BACKGROUND

### A.  The Litigation

Plaintiffs filed this lawsuit individually and as representatives of all persons employed by
any defendant or co-conspirator to work in a hospital in the Detroit MSA as a Registered Nurse
("RN") from December 12, 2002 to the present.  The Third Amended Complaint (the
"Complaint") (Dkt No. 67) alleges that the Defendant hospitals engaged in a conspiracy to
depress the wages of their hospital nurses and to exchange information regarding nurse pay with
the effect of suppressing wages and that, as a result of the alleged conduct of Defendants, the
wages of RNs were depressed during the Class Period.  The lawsuit seeks damages, other relief,
attorneys' fees and costs from Defendants.  Defendants each denied liability and all wrongdoing,
and have vigorously defended this lawsuit.

Plaintiffs have analyzed and reviewed over 8.2 million pages of documents produced by
Defendants and third parties and conducted an extensive analysis of enormous quantities of data
produced by the Defendants regarding the compensation of their RN employees.  In addition,
Plaintiffs and Defendants have thus far taken a total of over one hundred party and third-party
depositions, including multi-day depositions of six expert witnesses.  Plaintiffs have extensively
consulted with their experts -- Prof. Henry Farber, Prof. Orley Ashenfelter, and Dr. Gregory
Vistnes -- regarding the complex economic and statistical issues presented by this case as well as

assisted Professor Ashenfelter in preparing an expert report in support of Plaintiffs' case and Prof. Ashenfelter and Dr. Vistnes in preparing rebuttal reports. Prof. Ashenfelter has been twice deposed by counsel for Defendants, Dr. Vistnes has been deposed by Defendants' counsel, and Plaintiffs' counsel have deposed four purported experts who submitted reports on behalf of Defendants, Prof. Daniel Rubinfeld, Dr. Edward Snyder, Prof. Daniel S. Hamermesh, and Mr. Joseph Caracci.

### B.  Bon Secours Cottage Health Services

Bon Secours was formed in 1998 as a joint venture between Bon Secours Health System Inc. ("BSHSI") and Henry Ford Health System, Inc. ("HFHS"). Griffin Bon Secours Declaration ¶ 2. On October 1, 2007, the joint venture agreement between BSHSI and HFHS was terminated; BSCHS sold substantially all its assets, including Bon Secours Hospital, to Defendant William Beaumont Hospital; BSCHS was renamed Bon Secours Gross Pointe ("BSGP"); and BSGP was incorporated. BSGP's Restated Articles of Incorporation report the value of all real and personal property of BSGP as $0.00. *Id.* As stated in the Agreement, "Bon Secours represents that it has zero net worth and that this Agreement reflects its financial inability to pay a higher settlement amount." Settlement Agreement at ¶ 57. Bon Secours has agreed to provide, under seal to Eric Green the Court-appointed mediator, evidence supporting these statements. *Id.* Bon Secours has no insurance coverage against any judgment or settlement in this Action. *Id.*

### C.  The Settlement Agreement

After extensive negotiations stretching over many months, commencing with the mediation held on October 17, 2008 under the auspices of the Court-appointed Master for Settlement Negotiations, Prof. Eric Green, the Parties entered a Settlement Agreement on

September 11, 2009.   The discussions leading up to this Agreement were founded on a full

understanding of the strengths and weaknesses of the case, based, *inter alia*, on information

gleaned from discovery.   The basic terms of the Settlement Agreement include:

### 1.   The Settlement Class

The   Settlement   Agreement   defines   a   Class   ("Bon   Secours   Settlement   Class"   or

"Settlement Class") as follows:

> All persons employed by any Defendant to work in a short term
> acute care facility in the Detroit MSA as an RN during the Class
> Period, excluding RNs providing supervisory and managerial
> services only for that portion of the Class Period during which they
> performed such services

Settlement Agreement at ¶ 2.   Plaintiffs have sought certification of a Litigation Class

identical to this Settlement Class.   Bon Secours agrees that it does not oppose

certification of this class, or the appointment of Pat Cason-Merenda and Jeffrey Suhre

as class representatives, or the appointment of Keller Rohrback, L.L.P., Cohen Milstein

Sellers & Toll, P.L.L.C. ("CMST"), and James and Hoffman ("J&H") as Class

Counsel.  *Id.* at ¶ 26.

### 2.   The Settlement Amount

The proposed Settlement Agreement provides that Bon Secours will pay or cause to be

paid $325,000 in cash for the benefit of the Settlement Class.   This amount will be deposited in a

Qualified Settlement Fund ("QSF") Account by Bon Secours 30 days after execution of the

Settlement Agreement.   Bon Secours no longer operates hospitals in the Detroit area and has

represented that it has zero net worth and that the Settlement Agreement reflects its inability to

pay a higher Settlement Amount.  *Id*. at ¶ 57.

### 3. Cooperation

In addition to the financial relief described above, Bon Secours has also agreed to provide certain listed "cooperation to Plaintiffs and their counsel in further prosecution of the Action against the non-settling Defendants," as set forth in the Settlement Agreement. *Id*. at ¶ 56.

### 4. Release

In exchange for the above consideration from Bon Secours, Plaintiffs have agreed for themselves and on behalf of the putative Settlement Class, to release and discharge Bon Secours from any and all claims against it arising from or relating in any way to any alleged anticompetitive conduct by Bon Secours prior to the Execution Date concerning the monetary compensation, non-monetary compensation, recruitment, employment and/or retention of Settlement Class members in short term acute care facilities in Detroit. *Id*. at ¶ 40. The Released Claims include all claims related to or arising out of the facts, occurrences, transactions or other matters alleged on behalf of the Settlement Class members in the Class Action during the Class Period, but exclude claims based upon a nurse's employment in a supervisory and managerial capacity. *Id.*

### D. The Timeline

Pursuant to Fed. R. Civ. P. 23(e), a hearing on the final approval of the settlement should take place after class members have received notice and have had the opportunity to evaluate the settlement. Section E of the Settlement Agreement proposes the following schedule:

1. Notice to be mailed within 30 days of entry of an order Preliminary Approving the Settlement ("Notice Date").

2. Plaintiffs' motion for final approval of the settlement to be filed no later than 45 days after the Notice Date;

5

3.      Requests for exclusion from the proposed Settlement Class must be postmarked no later than 40 days following the Notice Date;

4.      A hearing before the Court on final approval of the settlement to be scheduled subject to the Court's convenience, between 60 and 90 days following the Notice Date.

### III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D.Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be approved by the Court before a case may be dismissed or compromised.  "Fed. R. Civ. P. 23(e)(1)(C) provides that 'the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.'"  *Rankin v. Rots, ("Kmart ERISA Class Action")* No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *8 (E.D. Mich. June 28, 2006).  "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

#### A.  Standard for Granting Preliminary Approval

In reviewing a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). A court also should "not substitute its business judgment for that of the parties." *Kmart ERISA Class Action*, 2006 U.S. Dist. LEXIS 45706, at *9.  Rather, the only question for a court is

"whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *Id.* (internal quote omitted).  Thus, a court's inquiry, even on final approval, is limited to the consideration of whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)).[3]  "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-9.  This is particularly true with class actions, the settlement of which is generally favored.  *Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

However, the Court is not required at this first stage of the approval process to determine whether it ultimately will approve the Settlement Agreement.  Rather, at this time, the Court's analysis is more limited: "the court first must determine whether the proposed settlement is *potentially* approvable." *Berry,* 184 F.R.D. at 97 (emphasis added); *Reed v. Rhodes,* 869 F. Supp. 1274, 1278 (N.D. Ohio 1994).  The purpose of this preliminary review is to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Berry,* 184 F.R.D. at 97.  A district court "bases its preliminary

---

[3] Courts in the Sixth Circuit have found the following eight factors relevant in determining whether the settlement is fair, adequate, reasonable, and consistent with the public interest: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the risks, expense, and delay of further litigation; (3) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (4) the amount of discovery completed and the character of the evidence uncovered; (5) whether the settlement is fair to the unnamed class members; (6) objections raised by class members; (7) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (8) whether the settlement is consistent with the public interest. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008); *In re Cardizem*, 218 F.R.D. at 522. "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Investments,* 962 F.2d at 1205-06.  Courts usually conduct a detailed analysis of each only at the final approval stage.

approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Telectronics,* 137 F. Supp. 2d at 1026; *In re Dun & Bradstreet Credit Servs. Litig.,* 130 F.R.D. 366, 370 (S.D. Ohio 1990).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d. at 1015 (quoting MANUAL FOR COMPLEX LITIGATION §30.44 (2d ed. 1985)).  Courts have wide discretion to determine what information to consider at the preliminary stage; this initial assessment can be made on the basis of information already known to the court.  MANUAL FOR COMPLEX LITIGATION (FOURTH), at §21.162 (2004).

Here, the settlement with Bon Secours falls well within the range warranting preliminary approval and there are no grounds to doubt the fairness of the proposed settlement.  The parties engaged in arms-length negotiations over an extended period of time starting with the mediation efforts of the court-appointed mediator, Prof. Eric Green.  Both Bon Secours and the proposed Bon Secours Settlement Class were represented by experienced counsel, and the Settlement Agreement was executed after the discovery cut-off date so the parties had a good understanding of the strengths and weaknesses of the case.  In addition, the Agreement ensures prompt payment of a Settlement Amount reflecting Bon Secours's maximum ability to pay into a QSF for distribution to the Bon Secours Settlement Class, as well as cooperation of value to the class in the continued prosecution of their claims against the remaining defendants.  This substantial relief is far preferable to the possibility of a smaller recovery or none at all, particularly in light

of the fact that Bon Secours does not now operate in the Detroit area, has represented that it has zero net worth, has no insurance against these claims, and has represented that this Agreement "reflects its inability to pay a higher Settlement Amount." Agreement at ¶ 57. Plaintiffs conducted an extensive and diligent investigation of Bon Secours's financial condition, including lengthy interviews of key personnel and their investigation confirms the company's financial inability to pay a higher amount. *Id.*; Griffin Bon Secours Declaration at ¶ 3. Bon Secours has no insurance that provides coverage for any judgment or settlement in this Action. Agreement at ¶ 57. In short, the proposed Settlement represents an excellent recovery from this Defendant in light of all the relevant facts and merits preliminary approval.

### B. The Proposed Settlement is in the Range of Possible Approval as Fair, Reasonable and Adequate.

"[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). If, as here, the proposed settlement "falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d at 1015.

The recovery here represents a significant sum of money for the class from the smallest defendant, an entity that no longer operates in Detroit and has zero net worth, and provides important cooperation in the continued prosecution of this Action. As courts have noted, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974). This recovery is within the range of settlements

9

approved in other antitrust cases.  *See, e.g., Fischer Bros., Inc. v. Mueller Brass Co.*, 630 F.

Supp. 493, 499 (E.D. Pa. 1985) (approving a settlement representing 0.2 percent of the

defendant's sales, and noting that earlier settlements approved in the case represented 2.4

percent, 0.88 percent, 0.65 percent, 0.3 percent, 0.2 percent, and 0.1 percent of other settling

defendants' sales).  Furthermore, a $325,000 settlement from a financially challenged Defendant

in conjunction with valuable cooperation is fair, reasonable, and adequate when balanced against

the expense and risk that Plaintiffs and the Settlement Class would face in litigating this case

through trial and possible appeal against Bon Secours.  This is especially true because, as a result

of joint and several liability, Settlement Class members' claims based on Bon Secours's

compensation stay in the case, and the remaining defendants can still be held liable for any

overcharge relating to that compensation.

### C.  The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness.

In addition to being well within the range of possible approval, the proposed settlement

does not disclose any ground for the Court to doubt its fairness.  Because vigorous, arms-length

negotiations between seasoned counsel protect against collusion and advance the fairness

considerations of Rule 23(e), settlements resulting from such negotiations are entitled to

deference from the court.  *See, e.g., Telectronics,* 137 F. Supp. 2d at 1018 ("Courts respect the

integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement,

unless evidence to the contrary is offered.").  Plaintiffs' Counsel here has extensive experience in

handling antitrust cases and other complex litigation.  Lead Counsel Keller Rohrback L.L.P. and

CMST are national leaders in this area of complex litigation.  Lead Counsel J&H brings unique

experience in litigating employment-related class actions as well as having played a critical role

in this matter.  These three firms are also lead counsel in the related nurse wage antitrust actions

pending in Albany, Chicago, Memphis and San Antonio, giving them experience in understanding the legal and factual issues underlying the proposed class's claims.  Declaration of Mark A. Griffin in Support of St John Settlement ("Griffin Decl.") (Dkt No. 577), ¶ 1.  Lead Counsel was, therefore, in a strong position to evaluate the strengths and weaknesses of its case. Bon Secours was also represented by experienced counsel from Crowell Moring.

In preparation for such negotiations, Lead Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation.  Counsel reviewed over 8.2 million pages of documents produced by Defendants and third parties, analyzed data regarding the compensation paid to Defendants' RN employees, deposed (or defended) over one hundred party and third-party deponents, including six expert witnesses.  Plaintiffs' counsel defeated a summary judgment motion, a motion to dismiss, and contested multiple numerous discovery motions.  Prior to negotiating the settlement agreement with Bon Secours, they retained two expert labor economists, Professor Henry Farber and Prof. Orley Ashenfelter, who provided preliminary estimates of the alleged wage suppression in the Detroit MSA.  Griffin Decl., Exhibit C (Dkt No. 577).  While this analysis was preliminary, it formed the basis for the negotiations of the settlement amount with Bon Secours started at the October mediation.  Thus, Class Counsel are significantly informed as to the facts of the case and the strengths of the claims asserted.  Lead Counsel also engaged in a lengthy and diligent investigation into Bon Secours's financial status and the details of the dissolution of the joint venture.

The arms-length nature of the negotiations, the participation of experienced counsel throughout the process, and the role played by Prof. Green, strongly support the conclusion that the proposed settlement is fair, reasonable, and adequate.  In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the

11

presence of good faith bargaining between the contending parties." *Kmart ERISA Class Action*, 2006 U.S. Dist. LEXIS 45706, at *8. Nothing in the course of the negotiations or the substance of the proposed settlement presents any reason to doubt its fairness.

### D. The Proposed Settlement Provides Significant Benefit to the Class, Particularly Given the Expense, Duration and Uncertainty of Continued Litigation and this Defendant's financial Situation.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013. Presenting an antitrust case of this type on the merits is a mammoth undertaking, with associated risks, expense, and delay. Here, Plaintiffs have alleged violations of Section 1 of the Sherman Antitrust Act under the *per se* rule and the rule of reason analysis. Success under the *per se* rule still leaves Plaintiffs with the burden of proving all issues of causation, injury, and damages. *Cardizem*, 218 F.R.D. at 523. "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *Id.* Continuing this litigation against Bon Secours would entail a lengthy and expensive legal battle, involving complex legal and factual issues.[4]

Against this background, the Settlement provides genuine value to members of the Settlement Class. Bon Secours's $325,000 payment provides for significant compensation to the Bon Secours Settlement Class relative to the amount that could ultimately recovered from this

---

[4] Because Plaintiffs' Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

zero net worth Defendant which has no continuing active operations likely to generate any future increase beyond its current value.  Because the "complexity, expense, likely duration and risks of litigation, the state of the proceedings to date, the negotiations leading up to, and the ultimate terms" of the settlement, it certainly falls within the possible range of approval as a "fair and reasonable" settlement of the Settlement Class's claims.  *See In re Delphi,* 137 F.R.D. at 502. Therefore, in light of the risks faced by Plaintiffs, the monetary benefits achieved by the settlement, the value of the non-monetary components of the Agreement, and the fact that claims based on overcharges as a result of compensation paid by Bon Secours to Bon Secours Settlement Class members remain in the case under principles of joint and several liability and therefore may still be pursued against the remaining defendants, the settlement is well within the range of being fair, reasonable and adequate and should be preliminarily approved.

## IV. CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED.

As part of approving the settlement, the Court must also approve and certify the proposed Bon Secours Settlement Class.  Bon Secours has agreed not to oppose certification of this class. Settlement Agreement at ¶ 26.  Class certification is governed by Fed. R. Civ. P. 23 whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement (with differences in application due to the settlement context).  *See, generally, Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 619-29 (1997).  Thus, the Court may certify the proposed class now upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the three subdivisions of Rule 23(b).  *Id.*

The courts have recognized that antitrust cases are particularly suitable for class treatment.  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 258, 258 (D.C. Cir. 2002); *In re Playmobil Antitrust Litig.,* 35 F.Supp.2d 231, 238 (E.D.N.Y. 1998).  This is because the core allegation of

such cases, and the vast majority of the issues to be litigated, focus entirely on the conduct of the Defendants, not on any aspect of Plaintiffs' response.  *See In re Vitamins* at 260.  Moreover, courts tend to favor class certification when there is doubt as to whether class certification is warranted.  *See Playmobil*, 35 F.Supp.2d at 239; *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("The interests of justice require that in a doubtful case…any error, if there is to be one, should be committed in favor of allowing a class action.").  For these reasons, antitrust cases are routinely certified, and this one should be no exception.

### A.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.  The Settlement Class Meets the Numerosity Requirement.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs believe the Bon Secours Settlement Class to include over twenty thousand members.   Griffin Decl., Exhibit D (Excerpt of Ashenfelter Report, ¶ 33.) (Dkt No. 322).  Thus, the Class obviously is too large for joinder to be practicable and the numerosity requirement is satisfied.  *See, e.g., In re Cardizem Antitrust Litig*., 200 F.R.D. 297, 303 (E.D. Mich, 2001) (numerosity satisfied by class of 80 class members).

#### 2.  Common Questions of Law and Fact Exist.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class."  This standard "is not a high burden."  *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000).  "[T]here need be only a single issue common to all members of the class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), and "the resolution of [that common issue] will advance the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

In the present case, Plaintiffs have identified a series of common questions of law and

fact, including: (a) whether hospitals in the Detroit MSA, including defendants, have conspired to depress the compensation they paid to their RN employees during the Class Period; (b) whether the alleged conspiracy has been effective in depressing RN compensation; (c) whether Detroit-area hospitals, including defendants, have agreed to share regularly with each other detailed and non-public data about current and prospective RN employee compensation; (d) whether defendants and other Detroit-area hospitals have regularly exchanged detailed and non-public information current and future RN employee compensation; (e) whether the exchange of such information suppressed competition among Detroit-area hospitals in the compensation of RN employees, and depressed the compensation paid to such employees; and (f) whether the formula and data exist for estimating the amount by which Settlement Class members' compensation was depressed.  Complaint at ¶ 23 (Dkt No. 67).  The existence and the scope of the conspiracy at issue here is an issue common to all of the Settlement Class members, and thus commonality is readily satisfied in this context, as the Plaintiffs allege the defendants conspired to depress compensation levels of all of the Settlement Class members.

### 3.   Plaintiffs' Claims and Defenses Are Typical of Those of the Class.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class."  *Kmart Class Action,* 220 F.R.D. at 518.  "The typicality requirement is met if the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory.'"  *Id.* (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 242-43 (E.D. Mich. 1997)).  Representatives and class members need not, however, have suffered identical injuries or damages.  *United Bhd. of Carpenters &*

*Joiners, Local 899 v. Phoenix Assocs., Inc.,* 152 F.R.D. 518, 522 (S.D.W.Va. 1994).

"In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants.  Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom - precisely what the absent class members must prove to recover."  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 ( S.D. Ohio 2007).

Plaintiffs' claims arise from the same course of events as the claims of the Settlement Class - the Defendants are alleged to have conspired to depress compensation levels of RNs in non-supervisory or managerial positions in short term acute care facilities in the Detroit MSA.  Each Settlement Class member can make the same arguments in support of the Defendants' liability.  With each Settlement Class member stating the same claim concerning the same conduct and seeking the same relief on behalf of the Settlement Class, there can be no fair dispute that the claims asserted are typical for purposes of Rule 23(a)(3).

### 4. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of All Settlement Class Members.

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent.  As this Court previously noted:

> In *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976), the Sixth Circuit articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."

*Kmart ERISA Class Action,* 220 F.R.D. at 520.  Furthermore, "[b]ased on the language in *Senter,* the Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff."  *Id.*

These requirements are easily met here.  The Named Plaintiffs' interests are the same as those of the absent class members; all seek to recover damages against the Defendants.  There can be no question that the Named Plaintiffs' interests are aligned with those of the Settlement Class, and they have retained qualified counsel with extensive experience in representing plaintiffs in antitrust class litigation.  Two years of hard-fought litigation certainly demonstrate the Named Plaintiffs' willingness to "vigorously prosecute the interests of the class."

The Court must also determine that proposed Class Counsel are qualified under the criteria of Rule 23(g).  Fed. R. Civ. P. 23(g)(1)(B).  The Court is aware of the claims brought in this action and the extraordinary time and effort already expended by Plaintiffs' Counsel in this action.  Moreover, Plaintiffs' Counsel includes some of the leading firms nationwide in the prosecutions of complex litigation and class actions and, in particular, for the types of claims brought in this lawsuit.  There can be no doubt that Plaintiffs' Counsel satisfies the requirements of Rule 23(g).  *See* firm Resumes for Keller Rohrback L.L.P., CMST, and J&H, attached as Exhibits E, F and G to the Griffin Decl. (Dkt No. 322).

**B.  The Requirements of Rule 23(b)(3) are Satisfied.**

A class may be certified under Rule 23(b)(3) if, in addition to meeting the requirements of Rule 23(a), the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed R. Civ. P. 23(b)(3).  Rule 23(b) (3) identifies some "matters pertinent to these findings …: (A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability or of concentrating the litigation of

claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed R. Civ. P. 23(b)(3)(A-D).

"The rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 632 (1997).  To satisfy the predominance requirement, a plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Beattie v. Century Tel., Inc*. 511 F.3d 554, 564 (6th Cir. 2007).  Since there is no bright line for determining whether common questions predominate, a claim will meet the predominance requirement when "there exists generalized evidence which proves or disproves an element on a simultaneous, class wide basis." *In re Cardizem,* 200 F.R.D. at 307.

For an antitrust action, the court's inquiry will address whether the plaintiffs, by using predominantly common evidence, can establish each of the required elements of an antitrust claim- (1) a violation of antitrust law; (2) injury and causation; and (3) damages.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d. Cir. 2001) (internal citations omitted), *overruled on other grounds*, *In re Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir. 2006). Here, Plaintiffs allege the Defendants and their co-conspirators conspired to depress the wage of RNs in the Detroit MSA.  Proof of the alleged conspiracy will focus on the actions and conduct of Defendants, not the individual class members.  *See In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("common issues predominate when the focus is on the defendant's conduct and not on the conduct of the individual class members").

First, common evidence exists that each Defendant engaged in multiple communications, whereby, every Defendant exchanged information regarding aspects of nurses' pay on a regular

basis.   Plaintiffs intend to prove this by offering testimony of Defendants' corporate representatives and employees and through voluminous documentary evidence implicating all the Defendants.   This evidence, in addition to other common evidence will show that the conspiracy to depress nurses' wages, affected all members of the Settlement Class.

Second, common evidence will show that interference with the market (an artificial decrease in demand via an employer conspiracy) caused injury to all members of the Settlement Class.   "Proof that the scope of conspiracy extended to all members of the class alone is sufficient to prove common impact."   *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 409-410.   Additionally, Plaintiffs have offered the expert analysis of the Joseph Douglas Green Professor of Economics at Princeton University, and one of the foremost experts in the economics of labor markets, Prof. Orley Ashenfelter, who has concluded that it can be shown with common evidence that all or almost all of the members of the class have been harmed by the alleged conspiracy.   *See* Report of Orley Ashenfelter, ¶¶ 107-121.[5]   According to Prof. Ashenfelter, each class members' wages, and most other elements of their compensation, were determined in a common administered compensation system.   As a result, the conspiracy affected the compensation of all or almost all individual class members.   The evidence shows that relative labor supply to the various jobs in the class is very elastic, which implies that even if the alleged conspiracy only directly affected a subgroup of the class, such as a plausible benchmark group, pay for all jobs held by members of the class were depressed.   Using a conservative benchmark of an adjusted measure of what the Defendant hospitals paid to agencies to supply nurses to the hospitals (nurses who performed the same work as, and indeed worked

---

[5] Copies of this report have been filed as Exhibit D to the Griffin Decl. (Dkt No. 322) as well as in support of Plaintiffs' Class Certification Motion and multiple motions filed by Defendants. Rather than burden the Court with another copy of this large document, Plaintiffs respectfully refer the Court to the multiple copies already on file.

side by side with, class members), Prof. Ashenfelter concluded that almost all of the members of class actually earned less than they would have, but for the conspiracy.  Thus, all or almost all of the Settlement Class was harmed by the conspiracy and this can be shown using evidence that is common to the Settlement Class.

With regard to damages to the class, Prof. Ashenfelter has concluded that under his "but for" earning analysis, it is possible to calculate the aggregate amount of damages and calculate how to distribute this total among individual class members in a reasonable way without resort to individual analysis.  No precise damage formula is needed at the class certification stage.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *10 (N.D. Cal. June 5, 2006) (quoting *Potash*, 159 F.R.D. at 697) ("Plaintiffs need not supply a 'precise damage formula,' but must simply offer a proposed method for determining damages that is not 'so insubstantial as to amount to no method at all.'").  "There is no requirement that the plaintiffs choose one method now, as long as they offer a methodology that is generally accepted."  *In re Carbon Black Antitrust Litig.*, *No. Civ A. 03-10191-DPW*, 2005 WL 102966, at *20 (D.Mass. Jan. 18, 2005).[6]

Thus, all questions common to the Settlement Class predominate over questions affecting individual members and the requirements of Rule 23(b)(3).

### C.  Superiority

As to the superiority requirement, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that

---

[6] Indeed, while Plaintiffs here have proposed a feasible method for determining damages for all class members without resort to individual analysis, it is well recognized that the mere fact of individual damages does not defeat certification. *See, e.g.*, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).

there be no trial." *Amchem Prod.*, 521 U.S. at 620.  Such is the case here.  The settlement

between Plaintiffs and Bon Secours obviates the need for a trial against Bon Secours, and thus

questions concerning the manageability of litigating Plaintiffs' claims on a class-wide basis are

irrelevant.  Here, for the reasons set forth above, a class settlement with Bon Secours is superior

to continued litigation against the same.  Accordingly, the superiority requirement of Rule

23(b)(3) is satisfied.

**V.   THE FORM OF NOTICE SHOULD BE APPROVED, AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO CLASS MEMBERS.**

Once a court grants preliminary approval to a proposed settlement, "[n]otice of the

proposed settlement and the fairness hearing must be provided to class members."  *Reed v.*

*Rhodes,* 869 F. Supp. 1274, 1278 (N.D. Ohio 1994); *see also* Fed. R. Civ. P. 23(e)(1)(B), (C).

To satisfy due process, notice to a Settlement Class must be "reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306, 314 (1950).  Substantively, the notice should provide a "very general description[]

of the proposed settlement."  *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982),

*superseded by statute on other grounds, 1983 Amendment to Fed. R. Civ. P. 11, as recognized in*

*Glasser v. Cincinnati Milacron, Inc.,* 808 F.2d 285 (3d Cir. 1986).  This description should

nevertheless allow Settlement Class members "a full and fair opportunity to consider the

proposed decree and develop a response."  *Reed*, 869 F. Supp. at 1279.  Procedurally, members

of the Settlement Class must receive the "best notice practical under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  *Vukovich,*

720 F.2d at 921. Where, as here, the names and last known addresses of all Settlement Class

members are available from the Defendants' records and the State of Michigan, mailing the

notice to the Settlement Class members at those addresses is the best notice practicable under the circumstances.  *Thompson, v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) (citing *Mullane,* 339 U.S. at 315).   Moreover, the Settlement Agreement requires the Claims Administrator to undergo rigorous procedures – including "skip tracking" – to track down class members' current addresses for those notices that are returned as undeliverable, and to establish a website containing the full text of the settlement agreement and other important documents.   Finally, while individual circumstances will dictate the length of time between the notice and the fairness hearing, no less than two weeks should be provided. *Vukovich,* 720 F.2d at 921.

Here, the proposed form of Class Notice, modeled on that suggested by the Federal Judicial Center, describes in plain English the terms and operation of the Settlement Agreement, the considerations that caused the Plaintiffs and Lead Counsel to conclude that the Settlement Agreement is fair and adequate and the procedure for objecting to the Settlement Agreement, and the date and place of the Fairness Hearing.  *See* HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 8.34 (4th ed. 2002).  Within 30 days after entry of an Order of Preliminary Approval by the Court, the Claims Administrator shall mail to each member of the Settlement Class on the Class List by first class mail postage prepaid, a Notice in the form approved by this Court.  Plaintiffs attach as Exhibit B to the Griffin Bon Secours Declaration a proposed form of Notice.  The Claims Administrator shall establish and maintain a website on the internet, the URL of which shall be included in the Class Notice.  This notice will fairly apprise Settlement Class members of the Settlement and their options, and satisfy due process requirements.

## VI. CONCLUSION

The Settlement is an excellent result for the Bon Secours Settlement Class in this

complex and hard-fought antitrust class action.  Thus, Plaintiffs respectfully request that the Court grant their motion and enter an order (1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the proposed Bon Secours Settlement Class; (2) certifying the Bon Secours Settlement Class, as defined below; (3) appointing Keller Rohrback L.L.P., Cohen Milstein Sellers & Toll, P.L.L.C., James & Hoffman, PC, as Class Counsel for the Settlement Class, and Pat Cason-Merenda and Jeffrey A. Suhre as Class Representatives; (4) approving the form of the class notice; (5) approving the notice plan and directing that notice be mailed; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections by Settlement Class members; (8) establishing a deadline for Settlement Class members to exclude themselves from the proposed Settlement Class; (9) establishing a date for a hearing on final approval of the proposed settlement; and (10) ordering a stay of all proceedings against Bon Secours except those proceedings provided for or required by the Settlement Agreement.  A proposed form of Order is being filed concurrently herewith.

Dated this 14th day of September, 2009

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By:  /s/   Mark A. Griffin
Mark A. Griffin
Ray Farrow
Tana Lin
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

Daniel A. Small
Sharon K. Robertson
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
Emilie S. Kraft
JAMES & HOFFMAN
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036-4748
Tel: (202) 496-0500
Fax: (202) 496-0555

Stephen Wasinger
STEPHEN F. WASINGER PLC
26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel:  248-544-5100
Fax: 248-479-0391
Email:  sfw@sfwlaw.com

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A.
SUHRE on behalf of themselves and others
similarly situated,

Case No. 06-15601

       Plaintiffs,

Hon. Gerald E. Rosen

   v.

Magistrate:  Donald A. Scheer

DETROIT MEDICAL CENTER, HENRY
FORD HEALTH SYSTEM, MOUNT
CLEMENS GENERAL HOSPITAL, INC., ST.
JOHN'S HEALTH, OAKWOOD
HEALTHCARE, INC., BON SECOURS
COTTAGE HEALTH SERVICES, WILLIAM
BEAUMONT HOSPITAL d.b.a. BEAUMONT
HOSPITALS, and TRINITY HEALTH CORP.,

       Defendants.

## CERTIFICATE OF SERVICE

   I hereby certify that on September 14, 2009 I served the attached document(s) on the parties listed below as indicated:

**VIA ECF**

| | | |
|---|---|---|
| Alethea A. Wilson | Charles N. Raimi | Patricia C. Schabath |
| Sandra D. Hauser | Amy J. Carletti | David Marx, Jr. |
| David L. Hanselman, Jr. | Stephen Y. Wu | Terrence J. Miglio |
| Gouri G. Sashital | David A. Ettinger | Peter E. Boivin |
| Jill L. Marr | Margo Weinstein | Christopher Q. King |
| Corey M. Shapiro | Howard B. Iwrey | Fred K. Herrmann |
| Shari Ross Lahlou | Bethany M. Wimsatt | Thomas M.J. Hathaway |
| David A. Hardesty | Bruce L. Sendek | Michael R. Shumaker |
| Toby G. Singer | Michael R. Turco | Mark T. Nelson |
| Sheldon H. Klein | Catherine F. Wenger | |
| David B. Gunsberg | | |

         s/Mark A. Griffin
         Mark A. Griffin