UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PAT CASON-MERENDA and
JEFFREY A. SUHRE on behalf of
themselves and all others similarly situated,

                         Plaintiffs,                    CASE NO.:  2:06-cv-15601

-v-                                                     Hon.  Gerald E. Rosen
                                                        Magistrate:  Donald A. Scheer
DETROIT MEDICAL CENTER,
HENRY FORD HEALTH SYSTEM,
MC LAREN HEALTH CARE CORP, d/b/a
MOUNT CLEMENS REGIONAL MEDICAL
CENTER, f/k/a MOUNT CLEMENS GENERAL
HOSPITAL, ST. JOHN HEALTH PARTNERS,
OAKWOOD HEALTHCARE INC., BON
SECOURS COTTAGE HEALTH SERVICES,
WILLIAM BEAUMONT HOSPITAL, and
TRINITY HEALTH CORP.,

                         Defendants.
_____/


**DETROIT MEDICAL CENTER'S MOTION SEEKING DEFERRAL OF PLAINTIFFS'
MOTIONS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS
OR, AT A MINIMUM, DEFERRAL OF CLASS NOTICE**

**PUBLIC VERSION**


DETROIT MEDICAL CENTER,
LEGAL AFFAIRS

By:  Charles N. Raimi (P29746)
Attorney for defendant Detroit Medical Center
4707 St. Antoine, Suite W514
Detroit, MI  48201
E-Mail:  craimi@dmc.org
(313)  966-2226

November 3, 2009

The Detroit Medical Center, for the reasons stated in the accompanying brief, respectfully asks that the Court defer – until after decision on the pending dispositive and class motions – consideration of plaintiffs' motions seeking preliminary approval of settlements or, at a minimum, that the Court defer issuance of class notice.

DETROIT MEDICAL CENTER,
LEGAL AFFAIRS


By: /s/ Charles N. Raimi
Charles N. Raimi (P29746)
Attorney for defendant Detroit Medical Center
4707 St. Antoine
Suite W514
Detroit, MI  48201
E-Mail:  craimi@dmc.org
(313) 966-2226

Dated:  November 3, 2009

**HIGHLY CONFIDENTIAL
UNDER PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and
JEFFREY A. SUHRE on behalf of
themselves and all others similarly situated,

                        Plaintiffs,                      CASE NO.:  2:06-cv-15601

-v-                                                      Hon.  Gerald E. Rosen
                                                         Magistrate:  Donald A. Scheer
DETROIT MEDICAL CENTER,
HENRY FORD HEALTH SYSTEM,
MC LAREN HEALTH CARE CORP, d/b/a
MOUNT CLEMENS REGIONAL MEDICAL
CENTER, f/k/a MOUNT CLEMENS GENERAL
HOSPITAL, ST. JOHN HEALTH PARTNERS,
OAKWOOD HEALTHCARE INC., BON
SECOURS COTTAGE HEALTH SERVICES,
WILLIAM BEAUMONT HOSPITAL, and
TRINITY HEALTH CORP.,

                        Defendants.
_____/

**DETROIT MEDICAL CENTER'S BRIEF IN SUPPORT OF ITS MOTION
SEEKING DEFERRAL OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENTS
OR, AT A MINIMUM, DEFERRAL OF CLASS NOTICE**

DETROIT MEDICAL CENTER,
LEGAL AFFAIRS

By:  Charles N. Raimi (P29746)
Attorney for defendant Detroit Medical Center
4707 St. Antoine, Suite W514
Detroit, MI  48201
E-Mail:  craimi@dmc.org
(313)  966-2226

November 3, 2009

**Question Presented**

1.   Whether the Court should exercise its discretion to defer consideration of plaintiffs' motions for preliminary approval of class settlements or, at a minimum, defer sending class notice, until after the Court has decided the pending dispositive and class certification motions.


**DMC response:**   DMC contends the plaintiffs' motions should be deferred or, at a minimum, class notice should be deferred, pending resolution of dispositive and class certification motions.


**Principal Authority**

- Fed. R. Civ. P. 23(d) and 23(e)

- *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009), ("Rule 23 gives the district court broad discretion in handling class actions * * *")

- *Harris v. Reeves*, 761 F.Supp. 382, 393 (E.D.Pa. 1991), (Under Fed. R. Civ. P. 23(e), "the trial court has broad discretion in determining the timing and manner of notice")

- *American Timber & Trading Co. v. First National Bank of Oregon*, 690 F.2d 781, 786, 787 (9th Cir. 1982), ("Rule 23(d) confirms the district court's broad discretion to manage a complex class action")

i

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................................1

FACTS ..........................................................................................................................................3

    A.    The parties..........................................................................................................3

    B.    The lawsuit .........................................................................................................3

    C.    Plaintiffs' expert theories ....................................................................................4

    D.    The SEIU's role in this lawsuit ...........................................................................6

    E.    The SEIU's involvement in the nurse wage cases
         led to denial of class certification in the Tennessee case .................................7

    F.    The initial St. John settlement and misleading press release by the SEIU ......................8

    G.    DMC's partnership with its nurses ........................................................................8

ARGUMENT ..................................................................................................................................9

    I.    THE COURT HAS BROAD DISCRETION TO DEFER
       CONSIDERATION OF THE CLASS APPROVAL MOTIONS
       OR TO DEFER SENDING CLASS NOTICE .................................................9

    II.    THE COURT SHOULD DEFER CONSIDERATION OF THE
       CLASS APPROVAL MOTIONS OR, AT A MINIMUM,
       DEFER SENDING CLASS NOTICE, UNTIL AFTER
       THE COURT HAS DECIDED THE PENDING DISPOSITIVE
       AND CLASS CERTIFICATION MOTIONS .............................................10

        A.    DMC and its nurses will suffer great prejudice if deferral is not granted..............10

        B.    Plaintiffs will not suffer any prejudice if deferral is granted ................................12

CONCLUSION AND RELIEF...................................................................................................13

## **INTRODUCTION**

Detroit Medical Center (DMC) respectfully asks the Court to defer consideration of plaintiffs' preliminary approval motions, or, at a minimum, defer issuance of class notice, until resolution of the pending dispositive and class certification motions.  The DMC did not join the other defendants' recent motion seeking this relief.  Although the DMC believes defendants' arguments are sound, defendants failed to address the real world dynamics that threaten DMC and its nurses with serious harm if deferral is not granted.[1]

The Court has broad discretion on these issues.  In exercising that discretion, the Court should be aware of the real world dynamics that will seriously impact the DMC and its nurses if deferral is not granted.  ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Within the past year, the DMC has been subjected to (unsuccessful) attempts by the SEIU and other unions to organize the DMC's workers.

The DMC is justly concerned by the damaging impact on its nurses and its business operations if the settlements receive preliminary approval, and class notice is issued, before the Court addresses the dispositive and class certification motions.  The SEIU has previously issued

---

[1] DMC was delayed in filing this motion because DMC was only able to obtain, a few days ago, exhibit 8 to this brief, the Order denying class certification in the Tennessee nurse wage case.  The Order was issued under seal on September 4, 2009.  DMC learned of the substance of the Order through public materials disseminated shortly thereafter, but the Order itself remained under seal.  On October 19, Judge Mays directed that the Order be unsealed, but plaintiffs' counsel in Tennessee has evidently expressed concerns about public disclosure of certain information regarding one of the named plaintiffs.  Because that discussion is not relevant to this motion, it has been redacted from the Order.

a seriously misleading press release concerning the St. John settlement.  Ex. 9.  The SEIU will undoubtedly use Court approval and issuance of class notice to launch a misleading public relations blitz and, likely, renewed organizational efforts.

The DMC has worked hard to create a true partnership with its nurses.  Nevertheless, the SEIU will be free to "spin" the settlements and class notice as it sees fit, just as the SEIU previously misrepresented the St. John settlement.  On the other hand, plaintiffs contend that the DMC is barred from communicating directly with its nurses about this lawsuit.

Allowing the SEIU to attack the DMC and misrepresent the litigation to the DMC's nurses would be particularly unfair here, where dispositive motions are pending.  Although plaintiffs have filed mountains of paper, it has become painfully clear that not only is plaintiffs' lawsuit unsound on all levels, but the very premise of the case – that nurse pay in Detroit has been "suppressed" – is demonstrably false.  Publicly available information confirms that nurse wages in Detroit have at all times been far above both the national average and nurse wages in comparable Midwestern cities.  ███████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

While the DMC and its nurses will be gravely prejudiced if the Court moves forward with preliminary approval and class notice before deciding the dispositive motions, the nurses will not suffer any prejudice if this motion is granted.  Settlements cannot be concluded or monies distributed until after resolution of the dispositive and class certification motions.

## FACTS

### A.    The parties.

The Detroit Medical Center (DMC) is a charitable organization which operates hospitals in the City of Detroit and suburbs.  DMC hospitals provide the primary "safety net" for the hundreds of thousands of indigent, uninsured, and underinsured citizens in the City.  The DMC, together with other Detroit area hospital systems, are the defendants in this case.

The plaintiffs are two registered nurses who have been employed at various of the defendant hospitals.  Plaintiffs have moved to certify this lawsuit as a class action; the non-settling defendants including DMC have opposed that request.  On April 24, 2009, the DMC moved for summary judgment as did the other non-settling defendants.

### B.    The lawsuit.

This is an antitrust conspiracy case brought under the Sherman Act.  Count 1 of the complaint alleges, in essence, "wage fixing" by defendants.  However, after exhaustive discovery, defendants' production of millions of pages of documents, and some 100 depositions, plaintiffs have not unearthed one iota of evidence demonstrating any sort of collusion among the defendants.  The uncontested facts show that defendants and, in particular, DMC, engaged in independent decision-making.  Nursing pay varied dramatically as between the defendants and often varied dramatically as between similarly situated nurses within the same hospital.

Count 2 apparently alleges that information exchanges between the defendants, even in the absence of collusion, somehow suppressed nurse compensation.  That claim is unprecedented in law – there is no reported case where a court has awarded antitrust money damages based solely on "information exchange" without collusion.  Moreover, plaintiffs' experts offer no

- 3 -

theory as to how such "suppression" might have occurred where there has been no collusion and, to the contrary, independent decision-making.  Case law and plaintiffs' expert, Orley Ashenfelter, confirm that information sharing in the absence of collusion can have powerful pro-competitive effects.

Finally, plaintiffs have not produced any plausible or credible evidence to suggest that putative class members' wages have been "suppressed."

**C.      Plaintiffs' expert theories.**

Plaintiffs' initial discovery requests demanded defendants' payroll and human resources databases not only for nurses, but also for many non-nursing categories of employees including physicians.  In support of their request for non-nurse employee data, plaintiffs produced the declaration of Professor Henry Farber.  D.E. 70, June 21, 2007.  Farber argued that non-nurse data was needed to allow plaintiffs to compute damages, by comparing the relative compensation of RNs at defendant hospitals versus the relative compensation of RNs in "non-conspiracy" cities.  Farber declaration, D.E. 70.  Relying on Farber's declaration, Magistrate Judge Scheer ordered production of the non-nurse data.

More than a year later, and well after defendants had produced the required data, plaintiffs decided not to use Prof. Farber.  Plaintiffs instead engaged Professor Orley Ashenfelter as their expert.   Ashenfelter does not rely on the relative compensation damages theory articulated by Farber.  Instead, Ashenfelter computes damages by comparing the **wages** of staff nurses **permanently employed** by defendant hospitals, to **fees** paid by defendant hospitals to **nurse staffing agencies** for **temporary** staff nurses – with certain "adjustments."  That analysis makes no sense.  It completely ignores the fact that nurse agencies, to stay in business, must charge fees sufficient to cover not only the nurses' wages but, also, the agency's administrative salaries, rent, utilities, overhead, and profit.

**D.**   **The SEIU's role in this lawsuit.**

The Service Employees International Union ("SEIU") is primarily responsible for initiating and is actively funding this lawsuit.  ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████

In 2004, two years before this lawsuit was commenced, the SEIU hired the academic who speculated that collusion between hospitals was a possibility.  Ex. 2, p. 31.[2]  The SEIU then hired Prof. Farber to conduct a statistical analysis that the SEIU thought would help it to identify the markets where lawsuits might be brought.  _Id_.  Around the same time, the SEIU hired a polling company, the Feldman Group, to conduct a national survey designed to collect evidence of claimed collusive activity.  _Id_.  Finally, the SEIU hired a private investigation firm, the Mintz Group, to investigate claimed collusion in areas selected by the SEIU.  _Id_, and _see_ ex. 3 (SEIU's payment of $519,000 for services of the Mintz Group).

The SEIU was front and center at the press conference announcing the filing of the nurse antitrust cases.  Ex. 4.  ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████  The SEIU's "Contract Campaign

---

[2] Exhibit 2 is an excerpt of a brief filed by defendant hospitals (including a St. John affiliate) in the Albany nurse antitrust lawsuit.  DMC believes the facts cited in the excerpt, and above, are uncontested.

Manual" explains that the SEIU seeks to coerce employers into accepting unionization by pressuring them with costly litigation.  Ex. 6, ¶ 3.

The SEIU arranged for its law firm, James & Hoffman, to actively participate in this case as one of the many law firms representing plaintiffs.  James & Hoffman regularly represents the SEIU and its lawyers include Judith Scott, General Counsel to the SEIU, and Mary Joyce Carlson, Counsel to the Health Care Division of the SEIU.  _See_ the James & Hoffman website, www.jamhoff.com. ████████████████

████████████████

████████████████

████    In the plaintiffs' pending motions, James and Hoffman is asking to serve as "class counsel" together with two other firms.

**E.    The SEIU's involvement in the nurse wage cases led to denial of class certification in the Tennessee case.**

In the Tennessee nurse wage antitrust case, the Court very recently issued an order denying class certification.  Ex. 8.  The Court found the two proposed class representatives inadequate.  One of the two proposed representatives was in bankruptcy, the other (Suzanne Clarke) was disqualified because of her relationship with the SEIU.

Clarke had worked for the Nurse Alliance, an advocacy group affiliated with the SEIU. The Defendants argued "[Clarke's] interests are primarily those of the Union," and "a conflict of interest exists because 'the SEIU has exercised improper control over this litigation, for unionizing goals wholly inconsistent with the claims in this litigation.'"  Order, ex. 8, p. 11, citing defendants' papers.  The Court found Clarke to be an inadequate representative, citing her admission that her main goal in the lawsuit was not to financially benefit the class but, rather, to

- 7 -

improve working conditions for Memphis nurses.  Order, ex. 8, p. 12.[3]

**F.**     <u>**The initial St. John settlement and misleading press release by the SEIU.**</u>

On March 26, 2009, plaintiffs filed their motion for preliminary approval of the initial St. John settlement.  The proposed settlement amount was $13,583,475, however, if a litigation class was not certified then St. John was given the right to "renegotiate."  No minimum payment was required by the initial St. John settlement.

A few days after plaintiffs filed the St. John settlement papers, the SEIU issued a misleading press release touting the settlement.  *See* ex. 9, titled:  "*Nurses Win $13.6 Million Settlement Aimed at Boosting Recruitment, Retention in Detroit-Area Hospitals.*"  The release states that "Nurses in the Detroit area are celebrating a settlement that has been reached with St. John's Health System of a class action lawsuit brought to expose attempts by area hospitals to hold down wages for nurses despite an ongoing shortage of RNs willing to work in acute care hospitals." Ex. 9.  There was no mention of St. John's right to renegotiate.

**G.**     <u>**DMC's partnership with its nurses.**</u>

While unions including the SEIU have been attempting to organize DMC's nurses and other health care staff, DMC has been working hard to build partnerships to improve the DMC's patient care services.  Only a few weeks ago, DMC's Detroit Receiving Hospital was accorded "Magnet" nursing status.  Ex. 10.

---

[3]

This is a very big deal.  The Magnet Recognition Program is explained by the American Nurses Credentialing Center as follows:

> "The Magnet Recognition Program® was developed by the American Nurses Credentialing Center (ANCC) to recognize health care organizations that provide nursing excellence.  The program also provides a vehicle for disseminating successful nursing practices and strategies.
>
> "Recognizing quality patient care, nursing excellence, and innovations in professional nursing practice, the Magnet Recognition Program provides consumers with the ultimate benchmark to measure the quality of care that they can expect to receive.  When *U.S. News & World Report* publishes its annual showcase of "America's Best Hospitals," being a Nurse Magnet[TM] facility contributes to the total score for quality of inpatient care.  Of the hospitals listed on the exclusive 2007 Honor Roll rankings (July 23, 2007), seven of the top ten were Magnet hospitals."  Ex. 11.

Only 5% of hospitals nationwide have achieved Magnet status.  Only four of the dozens of hospitals operating in the Detroit Metropolitan area have achieved Magnet status:  (i) The DMC's Children's Hospital, (ii) William Beaumont's Royal Oak and Troy hospitals, and (iii) now, DMC's Detroit Receiving Hospital.  Several other DMC hospitals are on the path to Magnet certification.  However, the DMC's ongoing efforts to improve nurses' working conditions and improve patient care are threatened by the SEIU's organizational efforts.

## ARGUMENT

### I.    THE COURT HAS BROAD DISCRETION TO DEFER CONSIDERATION OF THE CLASS APPROVAL MOTIONS OR TO DEFER SENDING CLASS NOTICE.

This Court has broad discretion to defer consideration of the class approval motions or defer sending class notice.  *See* certain defendants' initial motion to stay consideration of the St. John settlement, D.E. 335, pp. 4-5, citing and discussing *In re New Motor Vehicles Canadian Expert Antitrust Litigation*, 236 F.R.D. 53 (D.Me. 2006), and *see* generally Fed. R. Civ. P. 23(d)

and 23(e); *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009), ("Rule 23 gives the district court broad discretion in handling class actions * * *"); *Harris v. Reeves*, 761 F.Supp. 382, 393 (E.D.Pa. 1991), (Under Fed. R. Civ. P. 23(e), "the trial court has broad discretion in determining the timing and manner of notice"); *American Timber & Trading Co. v. First National Bank of Oregon*, 690 F.2d 781, 786, 787 (9th Cir. 1982), ("Rule 23(d) confirms the district court's broad discretion to manage a complex class action").

Plaintiffs argue that there is no case exactly on point in support of deferral. That is scarcely surprising in view of the unique facts and circumstances here. DMC's research has not disclosed any case where (as in the St. John's settlement) the class stood to receive dramatically different payments depending on whether a litigation class was certified. That unique fact, as well as the unique involvement of the SEIU in these nurse wage cases, and the other facts discussed above, all present overwhelming support for this motion.

## II.   THE COURT SHOULD DEFER CONSIDERATION OF THE CLASS APPROVAL MOTIONS OR, AT A MINIMUM, DEFER SENDING CLASS NOTICE, UNTIL AFTER THE COURT HAS DECIDED THE PENDING DISPOSITIVE AND CLASS CERTIFICATION MOTIONS.

### A.   DMC and its nurses will suffer great prejudice if deferral is not granted.

If the Court gives preliminary approval to the pending settlements, and class notice is sent, the DMC's nurses will be subjected to a blizzard of misleading SEIU publicity. The SEIU will tout the settlement and the SEIU's role in it, while attacking the DMC and the other defendants for "collusion" and "wage suppression." The SEIU will hold themselves out as nurse "champions" and will renew their ongoing efforts to organize DMC nurses and other health care staff.

DMC and DMC nurses have a compelling interest in the nurses not being subjected to

misleading SEIU propaganda.  *C.f., Molton Company v. Eagle-Picker Industries*, 55 F.3d 1171 (6th Cir. 1995), (Sixth Circuit affirmed preliminary injunction to prohibit dissemination of false and misleading information).  Here, the SEIU has already issued a shamefully misleading press release concerning the initial St. John settlement.  Absent deferral, the SEIU will certainly continue to inundate the nurses with more of the same, while DMC will have limited, if any, ability to respond.

Indeed, according to plaintiffs, the DMC is prohibited from directly communicating with their nurses about the lawsuit.  The plaintiffs' proposed class notice for the St. John settlement includes the following:

> "You should be aware of certain rights you have concerning communications with the Defendant hospitals about this lawsuit.  **Because you are represented in this lawsuit by Class Counsel (or your own counsel if you choose), the Defendant hospitals are restricted in communicating with you about this lawsuit, even if you are currently employed by one of them.**  These restrictions exist not because there has been any finding that the Defendant hospitals have done, or will do, something wrong, but because there are certain legal and ethical restrictions on the Defendant hospitals' ability to communicate directly with class members about this lawsuit.  The Defendant hospitals can make general statements to the public concerning the lawsuit, including denials of the Plaintiffs' claims.   Also, the Defendant hospitals are permitted to communicate directly with class members concerning matters other than this lawsuit, such as matters concerning the operation of, and other business matters concerning, the Defendant hospitals."  Ex. B to Griffin declaration in support of motion for preliminary approval of St. John settlement, D.E. 579-3, emphasis added.

The SEIU's goal in fomenting these nurse wages lawsuits has been to drive a wedge between hospitals such as DMC and their nurses.  The DMC has worked extremely hard, under the most difficult of circumstances, to forge a true partnership with its nurses to improve patient care.  The DMC firmly believes that this lawsuit not only is meritless but that the underlying theory – that nurse wages in Detroit have been "suppressed" – is demonstrably false and that this

case should never have been filed.  The DMC and its nurses will be gravely prejudiced if the Court  proceeds with approval and class notice, giving the SEIU a huge platform and megaphone to inundate DMC's nurses with propaganda, to which the DMC cannot freely respond.

### B. **Plaintiffs will not suffer any prejudice if deferral is granted.**

Plaintiffs will not suffer any prejudice if deferral is granted.  Under the revised St. John settlement, the amount of the settlement cannot even be determined until after the dispositive and class certification motions are decided.   Likewise, under the revised St. John settlement, distribution is not even possible until after the Court has decided those motions, because the parties specifically agreed that:  "no monies from the Settlement Fund will be distributed until after the Court has ruled on Class Certification or the Court has approved settlements with all Non-Settling Defendants, whichever is earlier."   St. John Revised Settlement Agreement, ¶ 49. Dkt. # 579-2.

Likewise under the Oakwood settlement, settlement proceeds will not be distributed until all claims are resolved against all parties.  Proposed Class Notice, Ex. A to Oakwood Settlement Agreement, ¶ 8, Dkt. # 462-2.   The Bon Secours Settlement also does not contemplate distribution at this time.  Bon Secours Settlement ¶ 44, Dkt. # 585-2.

Plaintiffs contend they will suffer prejudice because they will lose interest if preliminary approval is deferred.  In view of current interest rates well below 1%, any such "loss" is *de minimis* at best.[4]

---

[4] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████

## CONCLUSION AND RELIEF

The DMC respectfully asks that the Court exercise its discretion to defer consideration of the pending approval motions or, at a minimum, defer sending class notice, until after the Court has decided the pending dispositive and class certification motions.

DETROIT MEDICAL CENTER,
LEGAL AFFAIRS


By: /s/ Charles N. Raimi
Charles N. Raimi (P29746)
Attorney for defendant Detroit Medical Center
4707 St. Antoine
Suite W514
Detroit, MI  48201
E-Mail:  craimi@dmc.org
(313) 966-2226

Dated:  November 3, 2009

- 13 -

## CERTIFICATE OF SERVICE

      I, Charles N. Raimi, an attorney of record in this case, hereby certify that I have caused a copy of the foregoing to be served electronically to the following counsel of record this 3rd day of November, 2009.

| | |
|---|---|
| Stephen F. Wasinger<br>STEPHEN F. WASINGER PLC<br>26862 Woodward Avenue, Suite 100<br>Royal Oak, MI  48067-0958<br>E-mail:  sfw@sfwlaw.com<br>Counsel for plaintiffs | Mark A. Griffin<br>Keller Rohrback<br>1201 Third Avenue, Suite 3200<br>Seattle, WA  98101<br>E-mail:  mgriffin@kellerrohrback.com,<br>Counsel for plaintiffs |
| Charles P. Tompkins<br>COHEN, MILSTEIN, HAUSFELD & TOLL<br>1100 New York Avenue NW<br>West Tower, Suite 500<br>Washington, DC  20005<br>E-mail:  ctompkins@cmht.com<br>Counsel for plaintiffs | David P. Dean<br>JAMES & HOFFMAN<br>1101 17th Street, N.W., Suite 510<br>Washington, DC  20036<br>E-mail:  dpdean@jamhoff.com<br>Counsel for plaintiffs |
| David Marx, Jr.<br>Stephen Y. Wu<br>McDERMOTT, WILL & EMERY<br>227 W. Monroe Street<br>Chicago, IL  60606<br>E-mail:  dmarx@mwe.com,<br>Counsel for Henry Ford Health System | David A. Ettinger<br>HONIGMAN MILLER SCHWARTZ AND<br>COHN LLP<br>660 Woodward Avenue, Suite 2290<br>Detroit, MI  48226-3506<br>E-mail:  dettinger@honigman.com,<br>Counsel for McLaren Health Care Corp. |
| Howard B. Iwrey<br>DYKEMA GOSSETT<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, MI  48304-2820<br>E-mail:  hiwrey@dykema.com<br>Counsel for Oakwood Healthcare Inc. | Margo Weinstein<br>SONNENSCHEIN NATH & ROSENTHAL<br>7800 Sears Tower<br>Chicago, IL  60606-6404<br>mweinstein@sonnenschein.com<br>Counsel for Trinity Health Corp. |
| Shari Ross Lahlou<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, DC  20004-2595<br>slahlou@crowell.com,<br>Counsel for Bon Secours Cottage Health<br>Services | Michael R. Shumaker<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C.  20001-2113<br>mrshumaker@jonesday.com,<br>Counsel for St. John Health Partners |

| Sheldon H. Klein<br>Michael R. Turco<br>BUTZEL LONG<br>150 W. Jefferson, Suite 100<br>Detroit, MI  48226-4430<br>klein@butzel.com<br>Counsel for William Beaumont Hospital | |
|---|---|

/s/ Charles N. Raimi
DETROIT MEDICAL CENTER,
LEGAL AFFAIRS
4707 St. Antoine
Suite W514
Detroit, MI  48201
(313) 966-2226
craimi@dmc.org

Date:  November 3, 2009