UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | Case No. 06-15601 |
| v. | ) ) | Hon. Gerald E. Rosen |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL and TRINITY HEALTH CORP. | ) ) ) ) ) ) ) ) ) | Magistrate: Donald A. Scheer |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF SETTLEMENTS WITH ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC.,
AND BON SECOURS COTTAGE HEALTH SERVICES**

Plaintiffs move the Court for an Order approving the Settlement Agreement with St John Health, the Amended Settlement Agreement with Oakwood Healthcare, Inc., and the Settlement Agreement with Bon Secours Cottage Health Services described herein. The Settlements provide for payment of $13,583,475, $7,183,000 and $325,000 respectively, to be allocated among the Settlement Class in a manner to be determined if and when additional funds become available whether through additional settlements or judgments.[1] The St. John settlement (but no other settlement) includes a "step-down" (or "high/low") provision whereby the settlement amount is reduced to $3,400,410 if this Court denies certification of a substantially similar

---

[1] As explained in the Memorandum in support of this Motion, having evaluated the options available, Plaintiffs do not believe it would be in the best interest of members of the Settlement Classes to distribute these funds at this time.

litigation class to the Settlement Class defined in the St. John Amended Settlement Agreement. These settlements were reached after years of vigorous litigation including extensive fact and expert discovery and through three, lengthy processes of arms-length negotiations, each spread over many months.  The revised St John Settlement and the Oakwood settlement were negotiated in part with the assistance of the Court-appointed Settlement Master, Prof. Eric Green.  The Settlements will provide significant benefits to the Class, while removing the risk and delay associated with further litigation against these three defendants.   The three Settlement Agreements are attached as Exhibits 2, 3 and 4 to the Declaration of Mark A. Griffin In Support Of Plaintiffs' Motion For Final Approval Of Settlements And In Support Of Plaintiffs' Counsel's Application For Reimbursement Of Expenses ("Griffin Decl.").

Dated this 19th day of July, 2010

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By:   /s/   Mark A. Griffin
Mark A. Griffin
Ray Farrow
Tana Lin
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

Daniel A. Small
Sharon K. Robertson
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
Emilie S. Kraft
JAMES & HOFFMAN
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036-4748
Tel: (202) 496-0500
Fax: (202) 496-0555

Stephen Wasinger
STEPHEN F. WASINGER PLC
26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel:  248-544-5100
Fax: 248-479-0391
Email:  sfw@sfwlaw.com

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | Case No. 06-15601 |
| v. | ) | Hon. Gerald E. Rosen |
| | ) | |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL and TRINITY HEALTH CORP. | ) ) ) ) ) ) ) ) ) | Magistrate:  Donald A. Scheer |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH ST. JOHN HEALTH, OAKWOOD HEALTHCARE, INC., AND BON SECOURS COTTAGE HEALTH SERVICES**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................. 1

   A. The Litigation .......................................................................................... 1

   A. The Settlements ....................................................................................... 3

      1.   Settlement Negotiations and Investigation .................................... 3

      2.   The Settlement Classes .................................................................. 4

      3.   The Settlement Amounts ................................................................ 5

      4.   Other Benefits to the Settlement Classes. ..................................... 6

      5.   The Releases .................................................................................. 7

   B. Preliminary Approval and Notice to the Class ........................................ 7

III. THE COURT SHOULD APPROVE THE SETTLEMENTS. ........................... 9

   A. The Risk of Fraud or Collusion ............................................................. 11

   B. The Complexity, Expense and Likely Duration of the Litigation .......... 12

   C. The Amount Of Discovery Engaged In By The Parties .......................... 12

   D. The Likelihood Of Success On The Merits ........................................... 13

   E. The Opinions Of Class Counsel And Class Representatives ................... 13

   F. The Reaction Of Absent Class Members ............................................... 14

   G. The Public Interest ................................................................................ 14

IV.  CERTIFICATION OF THE SETTLEMENT CLASSES IS WARRANTED. ..... 15

   A. The requirements of Rule 23(a) are readily satisfied here. .................... 15

   B. The requirements of Rule 23(b)(3) are readily satisfied here. ............... 17

V.   CONCLUSION ............................................................................................ 20

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should approve the St. John Health Settlement.

2.      Whether the Court should approve the Oakwood Healthcare Inc. Settlement.

3.      Whether the Court should approve the Bon Secours Cottage Health Services Settlement.

**Plaintiffs' Response To All Questions: YES**

<u>STATEMENT OF</u>
<u>MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT</u>

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Int'l Union v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Bacon v. American Honda Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)

*Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983)

*Carson v. American Brands, Inc.,* 450 U.S. 79 (1981)

*Rankin v. Rots,* ("*In re KMART ERISA Litig*") No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006)

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985 (S.D. Ohio 2001).

*Berry v. Sch. Dist. of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998).

*In re Delphi Corp. Sec., Derivative &"ERISA" Litig.,* 248 F.R.D. 483 (E.D. Mich. 2008)

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007)

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)

*In re Pharma. Ind'y Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009)

# I.  INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Pat Cason-Merenda and Jeffrey Suhre, on behalf of themselves and the certified Settlement Classes (collectively "Plaintiffs"), respectfully submit this Memorandum in support of their motion for final approval of three settlements: with St. John Health ("St. John"), Oakwood Healthcare, Inc., ("Oakwood"), and Bon Secours Cottage Health Services ("Bon Secours") (jointly "Settling Defendants").  In aggregate the Settlements, if finally approved by the Court, secure a cash payment of either $21,091,475 if this Court subsequently certifies a litigation class of Staff Nurses or $10,908,410 if this Court does not.  In addition, the Oakwood Settlement requires that Oakwood not engage in certain exchanges of information concerning current and prospective nurse compensation, the effect of which will undermine the anticompetitive impact of any such exchange among the Defendants by preventing such an exchange from including one of the most significant local nurse employers.  In addition, all Settling Defendants have agreed to certain formal and informal discovery cooperation.

For the reasons set forth below, the Settlements are fair, reasonable, adequate, and in the best interest of the members of each proposed Settlement Class, and Plaintiffs respectfully request that the Court grant their request for final approval of the Settlements.  Proposed forms of Judgment and Final Order for each settlement are submitted herewith.

# II.  BACKGROUND

## A.    The Litigation

Plaintiffs filed this lawsuit individually and as representatives of all persons employed by any defendant or co-conspirator to work in a hospital in the Detroit MSA as a Registered Nurse ("RN") from December 12, 2002 to the present.  The Third Amended Complaint (Docket No. 67) alleges that the Defendant hospitals engaged in a conspiracy to depress the wages of their

hospital nurses and to exchange information regarding nurse pay with the effect of suppressing wages and that, as a result of the alleged conduct of Defendants, the wages of RNs were depressed during the Class Period.

Early in the litigation, following full briefing, the Court denied Defendants' motion seeking bifurcated discovery. *See* Order, Dkt. No. 85 (July 11, 2007). The Court subsequently denied Defendant Mount Clemens' motion for summary judgment which sought dismissal on the grounds that its nurses were paid according to a collectively bargained agreement (*see* Order Denying Mount Clemens' Motion for Summary Judgment, Dkt. No. 319 (March 24, 2009)) as well as Trinity Health's motion to dismiss (*see* Order Denying Trinity Health Motion to Dismiss, Dkt. No. 193 (March 31, 2008)). Griffin Decl. at ¶ 7.

During the course of discovery in this case, Plaintiffs analyzed and reviewed over 8.2 million pages of documents produced by Defendants and third parties and analyzed enormous quantities of data produced by the Defendants regarding the compensation of their RN employees. In addition, Plaintiffs and Defendants have thus far taken a total of over ninety party and third-party depositions, as well as multi-day depositions of six expert witnesses. Plaintiffs also consulted with their expert economists, Professor Orley Ashenfelter and Dr. Gregory Vistnes. Professor Ashenfelter prepared an expert report, and Professor Ashenfelter and Dr. Vistnes submitted rebuttal reports. Plaintiffs prepared Professor Ashenfelter and Dr. Vistnes for, and defended, their depositions. Plaintiffs also prepared for and took the deposition of Defendants' expert economists, Professor Daniel Rubinfeld, Professor Daniel S. Hamermesh, and Dean Edward Snyder, and purported expert Mr. Joseph Caracci. *Id*. at ¶ 8.

### A.  The Settlements

#### 1.   Settlement Negotiations and Investigation

After extensive, arm's-length negotiations between experienced counsel stretching over many months, three separate settlement agreements have been reached between Plaintiffs and St. John, Oakwood and Bon Secours.   Each series of discussions was founded on a full understanding of the strengths and weaknesses of the case against each settling defendant and was based on information gleaned from discovery, Plaintiffs' extensive pre-filing investigation, and substantial economic analysis of impact and damages issues.[2]

Specifically as to the Bon Secours settlement, Plaintiffs' counsel undertook a lengthy and careful analysis of the potential for recovery from any Bon Secours entity.  Griffin Decl. at ¶ 6. Bon Secours Cottage Health Services ("BSCHS"), the defendant in this matter, operated as a joint venture between Henry Ford Health Services ("HFHS") and Bon Secours Health System, Inc., ("BSHSI) since 1997.[3]  *Id*.  On October 1, 2007 the BSCHS Joint Venture was terminated, with one Bon Secours facility transferred to HFHS and the other sold to Beaumont Hospitals.[4] *Id*.  BSHSI continued to defend this matter while denying that it had any obligation to do so and that it could be held liable for any of the conduct alleged in the Complaint.  No Bon Secours entity has any insurance to cover any judgment in this matter.  *Id*.  BSCHS has been renamed Bon Secours Gross Point ("BSGP") and, according to BSGP's Articles of Incorporation, that

---

[2] Plaintiffs note that at the time that the first St. John settlement was signed on February 20, 2009 (a settlement which was subsequently revised in August of 2009), essentially all fact discovery (depositions and document review) had been completed, Plaintiffs' experts had produced their reports and Defendants' experts had produced their rebuttal reports.  By the time the Oakwood and Bon Secours settlements were signed, all fact and expert discovery was complete.

[3] Bon Secours Answer ¶ 14 and Articles of Incorporation – Nonprofit for Bon Secours Cottage Health Services (as filed with Michigan Department of Consumer and Industry Services, Feb. 27, 1998).

[4] Press Release from Beaumont Hospitals, http://www.beaumonthospitals.com/news-beaumont-hospitals-acquires-bon-secours-michigan.

entity had real or personally property valued at $0.00 as of October 1, 2007. *Id.* Plaintiffs'

counsel verified and expanded on their understanding of Bon Secours' history, organization, and

financial status through an extensive process of interviewing Bon Secours' executives, in house

counsel, and others. *Id.* Plaintiffs' counsel also devoted extensive time and resources to

investigating multiple theories of recovery from these various entities (BSHSI, HFHS, BSCHS,

BSGP, William Beaumont Hospitals) and determined that no colorable argument existed for

pursuing recovery from any entity with positive net worth.[5] *Id.* Only after concluding this

extensive factual and legal investigation did Plaintiffs agree to the final settlement terms with

Bon Secours.

The basic terms of the Settlement Agreements include:

### 2.   The Settlement Classes

The St. John and the Bon Secours Settlement Classes are each defined as follows:

> All registered nurses who provided direct patient care in short term
> acute care facilities exclusive of supervisory, managerial, and
> advanced practice nurses, and who were employed by Defendants
> within the Detroit Michigan Metropolitan Statistical Area at any
> time from December 12, 2002 through December 12, 2006.

St. John Agreement at ¶ 3; Bon Secours Agreement at ¶ 2. The St. John and Bon Secours

settlement classes are identical to the litigation class for which Plaintiffs have moved for

certification in the continuing litigation against the remaining five Defendants.  At Oakwood's

insistence, the Oakwood settlement includes all these same nurses plus Advanced Practice

Nurses ("APNs") employed by any of the eight Defendants, during the class period:

> All persons employed by any Defendant to work in a short-term
> acute care facility in the Detroit, Michigan Metropolitan Statistical
> Area as a Registered Nurse ("RN"), excluding RNs providing

---

[5] Of course, HFHS and Beaumont Hospitals are still Defendants in this matter, jointly and
severally liable for all injuries to Settlement Class members.

> supervisory or managerial services, at any time from December 12,
> 2002 through December 12, 2006.

Oakwood Agreement at ¶ 2.

### 3. The Settlement Amounts

#### a) Oakwood

The Amended Settlement Agreement with Oakwood provides that Oakwood will pay $7,183,000 in cash for the benefit of the Oakwood Settlement Class.  Oakwood Agreement at ¶ 26. This amount has been paid by Oakwood and deposited in a fully insured Qualified Settlement Fund where it is earning interest which accrues to the benefit of the Oakwood settlement class.  If Plaintiffs subsequently enter into a settlement agreement with any Non-Settling Defendant for less than two percent of the total Registered Nurse Wages paid by that Defendant to the Class during the Class Period, Plaintiffs, subject to certain exceptions, will refund to Oakwood the percentage difference between two percent and the percentage paid by the Non-Settling Defendant, multiplied by the Settlement Amount paid by Oakwood. *Id*. at ¶ 69.[6]

#### b) Bon Secours.

The Bon Secours Agreement provides that Bon Secours will pay $350,000 in cash for the benefit of the Bon Secours Settlement Class.  Bon Secours Agreement at ¶ 20.

#### c) St. John.

The Settlement Agreement with St. John provides that St. John will pay or cause to be paid $13,583,475 in cash for the benefit of the St. John Settlement Class.  St. John Settlement Agreement at ¶ 28.  However, should this Court decline to certify a litigation class substantially similar to the St. John Settlement Class, St. John shall only pay $3,400,410.  *Id*.  The Agreement

---

[6] A provision permitting Oakwood to terminate the Settlement Agreement if more than five percent of the Settlement Class opted out (*id*. at ¶ 61) has been rendered irrelevant by the minimal number of timely opt outs.  *See* Griffin Decl. at ¶ 15 (detailing that less than one tenth of one percent of the St John Settlement Class has chosen to opt out of the Settlement).

includes a "most favored nations" provision similar to that described above for Oakwood, also subject to certain exceptions.  *Id.* at ¶¶ 58-61.[7]

### 4.  Other Benefits to the Settlement Classes.

#### a)  Injunctive relief.

Pursuant to the Injunctive Relief provision set forth in Paragraphs 72-77 of the Oakwood Amended Settlement Agreement, Oakwood has also agreed that its executives, human resources, recruiting and other personnel will refrain from engaging in certain conduct, including:

1.      making any request or responding to any request from any non-Oakwood health care facility regarding information concerning prospective wages to be paid to Oakwood Settlement Class members;

2.      sponsoring any surveys of wages and/or base pay of Oakwood Settlement Class members unless such surveys: (a) are managed by a third party; (b) the information requested of survey participants is at least three months past the effective date; and (c) there are at least five participants reporting data upon which each disseminated statistic is reported, no individual provider's data represents more than 25% on a weighted basis of that statistic, and any information disseminated is sufficiently aggregated such that it would not allow recipients to identify the wages or base pay by any particular participant; and

3.      knowingly participating in any surveys of wages and/or base pay of Oakwood Settlement Class members that do not satisfy the requirements listed in paragraph 2 above.

These antitrust compliance provisions, to remain in effect for three years, provide a

---

[7] As with the Oakwood Agreement, a "blow-up" provision in case of substantial opt-outs (*id.* at ¶ 39(b)(2)) has been rendered irrelevant by the minimal number of timely opt outs.  The St. John Settlement Agreement also allows St. John to reduce the Settlement Amount based on the percentage of the St. John Settlement Class that elects to opt out.  *Id.* at ¶ 39. 16 class members have opted out of the St. John Settlement.  Griffin Decl. at ¶ 15.

benefit to all members of the Oakwood Settlement Class (including APNs) because they ensure that Oakwood will not engage in the alleged anticompetitive activity with respect to any types of nurse, including APNs.

### b) Cooperation

All Settling Defendants have provided, and have agreed in the future, to provide various levels of cooperation with regard to the continuing litigation.

### 5. The Releases

In exchange for the above consideration from the Settling Defendants, Plaintiffs have agreed for themselves and on behalf of the Settlement Classes to release and discharge the Settling Defendants from any and all claims against the Settling Defendants arising out of the facts, occurrences, transactions or other matters alleged in the Class Action that relate in any way to any anticompetitive conduct by the Settling Defendants concerning class members' monetary compensation, non-monetary compensation, recruitment, employment and/or retention in short term acute care facilities in Detroit as registered nurses in the Class. St. John Agreement at ¶ 37; Oakwood Agreement at ¶ 49; Bon Secours Agreement at ¶ 40.[8]

### B. Preliminary Approval and Notice to the Class

Plaintiffs moved for preliminary approval of the St. John, Oakwood and Bon Secours settlements on March 26, 2009, May 18, 2009 and September 14, 2009, respectively.[9]  On March 16, 2010, the Court entered an Order Granting Preliminary Approval of the Settlements. (Dkt No. 684).   Pursuant to that Order, on May 3, 2010, a copy of the Court-approved Summary

---

[8] In all cases, the agreements carefully do not release claims arising from any class member's period of employment at any Defendant hospital as an RN in a position outside those included in the settlement class -- such as when employed in a managerial or supervisory position.

[9] On August 31, 2009, Plaintiffs filed a motion to approve a revised Settlement Agreement with St. John, replacing the previously filed motion.

Notice was published in the Mid-West Edition of <u>Nursing Spectrum</u>.  On May 15, 2010, 23,836 copies of the Court-approved Notice were mailed to all Settlement Class members using the address information provided by Defendants as part of the discovery in this matter supplemented by use of various additional sources.[10]  Declaration of Jonathan Paul at ¶¶ 6-9.  The Notice and Summary Notice explained the procedures by which class members could exclude themselves from one or more of the Settlement Classes or object to one or more of the settlements and provided notice of the September 2, 2010, hearing on final approval of the settlements and related matters.[11]

This Court held that this notice fully and properly informed all Class members about their rights under these settlements and that this notice included statements accurately describing the current state of the litigation and statements about Defendants' denial of the validity of Plaintiffs' claims.  Nonetheless, at least one non-settling Defendant, Trinity Health, chose to send its own letter directly to class members, emphasizing Defendants' view of the validity of this lawsuit, claiming that there is a "lack of evidence" with no mention of Plaintiffs' responses detailing the

---

[10]  These sources included data obtained from the Michigan Department of Community Health from which entity Plaintiffs purchased a database which provided both more current addresses than those available through the Defendants' databases produced to Plaintiffs and addresses for a significant number of Class Members for whom address information was missing from Defendants' databases.  Griffin Decl. at ¶ 27 and Ex. 13.   In addition, the claims administrator updated all address information provided by use of the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Declaration of Jonathan Paul at ¶ 7 (Dkt No. 690).

[11] At the time Plaintiffs moved for preliminary approval they indicated that they would evaluate whether it would be in the best interest of the Settlement Class to distribute these funds upon final approval or wait until it is known whether further funds will be available to distribute. Having now seen how much it cost to distribute the notice to the Class and having obtained from Rust Consulting estimates relating to the cost of distributing funds, Plaintiffs do not believe it would be in the best interest of the Class to distribute these funds at this time, potentially incurring those distribution costs more than once.  Griffin Decl. at ¶ 16.  At the very least, Plaintiffs believe distribution should be delayed until it is known if the additional $10,183,065 from the St. John Agreement becomes available.  These funds will continue to accumulate interest for the benefit of the Class pending distribution.

myriad of evidence they believe exists supporting their allegations.[12]  Griffin Decl. at ¶ 21 and Ex. 7.  Plaintiffs are unaware whether other Defendants have sent similar letters, having only obtained copies of the Trinity letter by chance.

Despite receiving this letter written by defendant Trinity, and maybe other letters from other Defendants, seeking to minimize the strength of the claims against them, only 19 class members (out of over 23,000) have requested exclusion from one or more of the Settlement Classes.  *Id*. at ¶ 15.   Plaintiffs' Counsel have not yet received any objection to the proposed Settlements, although the deadline for filing such objections is not until August 13, 2010.

### III.  THE COURT SHOULD APPROVE THE SETTLEMENTS.

Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be approved by the Court before a case may be dismissed or compromised.

> Before approving a settlement, a district court must conclude that it is "fair, reasonable, and adequate."  Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(C) and citing Fed. R. Civ. P. 23(e)(1)(A), *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992), and *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

In reviewing a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

---

[12] Further, the letter contained several additional factual inaccuracies.  First, the letter suggested "the lawsuit is brought on behalf of … Advanced Practice Nurses, excluding managerial and supervisory positions."  However, while the Oakwood settlement includes APNs, the lawsuit is no longer brought on behalf of APNs.  Second, the letter omitted that Mount Clemens remains in the case as a defendant.  Third, the letter did not have the correct name of Mr. Griffin's law firm.

A court also should "not substitute its business judgment for that of the parties." *Rankin v. Rots,* ("*Kmart ERISA Class Action*") No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006). Rather, the only question for a court is "whether the settlement, taken as a whole, is so unfair on its face to preclude judicial approval." *Id.* (internal quote omitted). "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001). This is particularly true with class actions, the settlement of which is generally favored. *Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Recoveries of two percent of the total Registered Nurse Wages paid by two of the Settling Defendants to the Settlement Class during the Class Period and a recovery of approximately $150 per class member from an insolvent entity represent very good results, especially with five remaining defendants (almost all with substantial assets and insurance)[13] each jointly and severally liable for any monies uncollected from these three Settling Defendants. Indeed, even if the settlements were a much smaller percentage, "courts have determined that a settlement can be approved even if the benefits amount to a small percentage of the recovery sought . . . And 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery.'" *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974). These percentage recoveries are well within the range of settlements approved in other antitrust cases. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) (approving settlement representing approximately one and a half percent of relevant sales); *In re Linerboard*

---

[13] Subject to final approval by the Michigan Attorney General and various other government entities (including those overseeing Medicare and Medicaid), Detroit Medical Center was recently purchased by the for-profit hospital entity, Vanguard Health Care. *See,* "A New Partnership for Detroit", June 11, 2010 (available at http://www.dmc.org/news/?sid=1&nid=178)

*Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (approving settlement representing approximately 1.6 percent of sales); *Fischer Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving a settlement representing 0.2 percent of the defendant's sales, and noting that earlier approved settlements represented 2.4 percent, 0.88 percent, 0.65 percent, 0.3 percent, 0.2 percent, and 0.1 percent of other settling defendants' sales).

Further, for members of the Settlement Classes to recover over $10.9 million, including $3.4 million from St. John, in the event this Court was to decline to certify a substantially identical litigation class, represents an excellent recovery. Under those circumstances, the value of the Settlement Class members' claims would otherwise be substantially impaired because no individual nurse's recovery could possibly justify the cost of pursuing a claim. *See, generally*, *Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not [a large number of] individual suits, but zero individual suits, as only a lunatic or a fanatic sues for [a recovery that is insignificant relative to the cost of suit].")

Maybe most importantly, because the Class Notice informed the Class of the amount they will receive under the two possible scenarios, members of the Settlement Class were fully informed of the value of these proposed Settlements and the circumstances that will give rise to a greater and lesser recovery and were able to make an informed judgment whether such settlement is preferable to the risk of ongoing litigation, including against St. John under the circumstances that would trigger the step-down recovery.

### A.  The Risk of Fraud or Collusion

This Court has had ample opportunity, both directly and through the involvement of the Court-appointed Special Master, to observe the intensely adversarial nature of this litigation and of the negotiation of these settlements. Almost every single sentence of these settlement

agreements gave rise to protracted disputes.  There is no favoring of the named Plaintiffs or any other basis for believing that these are anything other than the result of true, arm's length, hotly contested negotiations among experienced counsel acting in the best interest of the class and their clients.  *See, generally, Telectronics,* 137 F. Supp. 2d at 1018 ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

### B.  The Complexity, Expense and Likely Duration of the Litigation

It has been observed that "[a]n antitrust class action is arguably the most complex action to prosecute."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 619, 639 (E.D. Pa. 2004); *see also Wesely v. Spear*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust class actions are "notoriously complex, protracted and bitterly fought.").  The risk does not end with the risk of trial. "Antitrust litigation in general, and class action litigation in particular, is unpredictable … [T[he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeed at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998).  Such a high degree of uncertainty, complexity, expense, and duration favors approval of these substantial settlements because under such circumstances "a bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

### C.  The Amount Of Discovery Engaged In By The Parties

This factor weighs heavily in favor of approval.  Because of this Court's decision not to bifurcate discovery, these settlements were finalized after all parties had a deep understanding of

the strengths and weaknesses of their cases.[14]  The settlements were negotiated based upon what had been discovered about the conduct at issue based upon a review of millions of pages of documents, the testimony of almost one hundred fact witnesses and the testimony of six purported experts.

### D.  The Likelihood Of Success On The Merits

In light of the continuing litigation against five Defendants, Plaintiffs are wary about discussing this factor in any detail but suffice it to say that litigation is always subject to uncertainty.  While Plaintiffs remain extremely confident as to the validity of their claims and have detailed some of the evidence they have developed in support of their allegations in their response to Defendants' motions for summary judgment and are awaiting a ruling whether a certain Henry Ford Memo was privileged (or if it was, whether the privilege has been waived, (including by allowing a publicly available Order (Dkt No. 310) fully describing the Memo to remain unredacted for 17 months)), Defendants have vigorously defended this matter and at least some Defendants appear to believe their likelihood of success is great enough to be unwilling to settle on terms similar to those obtained to date.  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003)  ("Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation.").

### E.  The Opinions Of Class Counsel And Class Representatives

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties."  *Kmart ERISA Class Action*, 2006 U.S. Dist. LEXIS 45706, at *8.

---

[14] See infra n. 2.

Plaintiffs' Counsel here has extensive experience in handling antitrust cases and other complex litigation.  Lead Counsel Keller Rohrback L.L.P. and Cohen Milstein Sellers and Toll ("CMST") are national leaders in this area of complex litigation.  Lead Counsel James and Hoffman ("J&H") brings unique experience in litigating employment-related class actions as well as having played a critical role in this matter.  These three firms are also counsel in the related nurse wage antitrust actions pending in Albany, Chicago, Memphis, and San Antonio, giving them truly unique experience in understanding the legal and factual issues underlying the proposed class's claims.  Griffin Decl. ¶ 1; Small Decl ¶ 4.  Lead Counsel was, therefore, in a strong position to evaluate the strengths and weaknesses of its case.   The Class Representatives, who have maintained an active involvement in this litigation throughout, including attending settlement conferences and hearings, fully recognize their duty to do the best they can for their fellow-nurses, and have also evaluated and agreed to these settlements.

### F.  The Reaction Of Absent Class Members

The deadline for the filing of objections to these settlements has not yet passed, hence Plaintiffs cannot fully report on the reaction of absent class members at this time. However, the fact that only 19 out of over 23,000 nurses have opted out of the Settlements (less than one tenth of one percent), even after receiving a letter from Trinity Health (and maybe others) presenting Defendants' view of these cases without any balancing presentation of Plaintiffs' views, suggests that Detroit nurses are happy to participate in these settlements.

### G.  The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem CD*, 218 F.R.D. at 530 (quoting *Granada Invs.,*

14

962 F.2d at 1205).   In addition to this general policy favoring settlements of such complex matters, here the settlement includes vital injunctive relief that will ensure that Detroit hospitals compete as they should for the services of these nurses in the future.   Against these public interests, Plaintiffs are unaware of any interest that counsels against approval.

### IV. CERTIFICATION OF THE SETTLEMENT CLASSES IS WARRANTED.

As part of approving the Settlements, the Court must also approve and certify the proposed Settlement Classes.   This Court already considered whether it was appropriate to certify these classes as part of the process of preliminary approval.    The Court's Order on Preliminary Approval included findings in support of the Court's certification of these classes. Preliminary Approval Order ¶¶ 5-9 (Dkt No. 684).   Rather than repeat at length Plaintiffs' extensive explanation as to why certification is appropriate for these classes in their prior briefing, Plaintiffs merely summarize that material here and incorporate by reference the more detailed discussion on pages 14-22 of Plaintiffs' Motion for Preliminary Approval of Settlement with St. John (Dkt No. 578), pages 14-22 of Plaintiffs' Motion for Preliminary Approval of Settlement with Oakwood Healthcare (Dkt No. 462), pages 13-21 of Plaintiffs' Motion for Preliminary Approval of Settlement with Bon Secours Cottage Health Services (Dkt No. 584), and pages 9-11 of  Plaintiffs' Opposition to Certain Defendants' Motion to Defer Consideration of Plaintiffs' Motion for Preliminary Approval of Settlement with Oakwood. (Dkt No. 501).

### A.  The requirements of Rule 23(a) are readily satisfied here.

23(a)(1) – Numerosity: With over 23,000 nurses in the settlement classes, numerosity is satisfied under any standard articulated by the courts, especially given the reality that these nurses may be wary about suing their current employer.  *Bacon v. American Honda Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) ("sheer number of potential litigants in a class, especially if it

is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)."); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) *cert. den*. 528 U.S. 1159 (2000) (relevant to numerosity query is the fact that employees "might be unwilling to sue [their employer] individually ... for fear of retaliation at their job.")[15]

23(a)(2) – Commonality:  Commonality is readily satisfied when the basis for each class member's claim is an identical allegation of collusive conduct, focusing entirely on aspects of the conduct of the Defendants that must be proven by each nurse.  "[T]here need be only a single issue common to all members of the class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), and commonality is satisfied if "the resolution of [that common issue] will advance the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

23(a)(3) – Typicality: As to typicality, "[i]n the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants.  Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom - precisely what the absent class members must prove to recover."  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 (S.D. Ohio 2007).   Application of this principle here shows that the claims of Ms. Cason-Merenda and Mr. Suhre are typical of those of every Detroit nurse in the Settlement Classes.

23(a)(4) – Adequacy: As to adequacy, this Court has explained that "the Sixth Circuit

---

[15] The Oakwood class is slightly larger than the St. John and Bon Secours classes because, at Oakwood's insistence, that settlement also resolved the claims of APNs employed at the Defendant hospitals against Oakwood.  Those APNs, of course, fully retain their rights against the other Settling Defendants as well as the Non-Settling Defendants.  Courts routinely recognize that it can be appropriate to approve settlements on behalf of classes broader than those whose claims are being pursued through the ongoing litigation.  *See, e.g. In re Pharmaceutical Industry Average Wholesale Price Litig.*, 588 F.3d 24, 29-30 & 40 (1st Cir. 2009); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 56 (D. Me. 2006).

appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff." *Kmart ERISA Class Action,* 220 F.R.D. 511, 520 (E.D. Mich. 2004).  No Defendant has even suggested the presence of any conflict or other reason for questioning the adequacy of the Named Plaintiffs and their counsel.[16]

### B.  The requirements of Rule 23(b)(3) are readily satisfied here.

As to Rule 23(b)(3)'s predominance requirement, the Sixth Circuit recently affirmed that:

> Even where there are individual variations in damages, the requirements of Rule 23(b)(3) *are satisfied* if the plaintiffs can establish that the defendants conspired to interfere with the free-market pricing structure.

*In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 535 (6th Cir. 2008) (emphasis added). That is exactly what Plaintiffs would seek to establish here and is consistent with decades of authority recognizing that the common questions arising from proof of the existence of the alleged conspiracy will invariably predominate over any minimal individual inquiries that might arise as to proof of impact and damages.  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) ("predominance is a test readily met in certain cases alleging … violations of the antitrust laws"); *In re Foundry Resins*, 242 F.R.D. at 408 ("[C]ourts have consistently found that common issues regarding the existence and scope of the conspiracy predominate over questions affecting only individual members."); *In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 245 (E.D.N.Y. 1998) (same, collecting cases).  As this Court has noted before "the Court's inquiry [when evaluating predominance] is directed towards the issue of liability [and the fact that] a single set of operative facts establishes liability" weighs in favor of certification under Rule 23(b)(3).  *In re*

---

[16] Notably, despite filing a sixty page opposition to class certification, the Non-Settling Defendants did not present any challenge to the adequacy of Ms. Cason-Merenda or Mr. Suhre, identify any conflicting interests they may have with the class, or challenge the adequacy of Plaintiffs' counsel.

*Delphi Corp. Sec., Derivative &"ERISA" Litig.*, 248 F.R.D. 483, 495 (E.D. Mich. 2008).

Proof of the existence of the conspiracy, which focuses entirely on Defendants' conduct, as well as proof that the nature of the injuries alleged and suffered here are "of the type the antitrust laws were intended to prevent," are both matters involving only common questions of law and fact. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 & 107 n.11 (2d Cir. 2007) (holding that allegations of the existence of a price-fixing conspiracy are susceptible to common proof, and explaining that "[b]ecause each member allegedly suffered the same type of injury, the legal question whether such an injury is of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful is a common one."); *see also, In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 267-68 (3d Cir. 2009) (holding that proving three elements of an antitrust claim "(1) concerted action by defendants; (2) that produced anticompetitive effects … [and] (3) that the concerted actions were illegal" all "focus on the conduct of the defendants" and hence reflect common questions for the proposed settlement class.)

As to the remaining elements of a Plaintiffs' antitrust damages claim it is, of course, well-established law that even if some individual issues exist as to computing damages, their presence is no bar to class certification under Rule 23(b)(3). *In re Scrap Metal,* 527 F.3d at 535. As to proof of impact, as the *Insurance Brokerage* court explained of the claim there, since the allegedly fixed price was "'built' into every commercial premium for commercial insurance products" and plaintiffs alleged that "the conspiratorial conduct of all Defendants … reduced or eliminated competition … thereby raising the insurance premiums paid by … all members of the class" that this was enough to show that "whether … class members were proximately injured by the conduct ... is a question that is capable of proof on a class-wide basis." *In re Insurance*

*Brokerage*, 579 F.3d at 268-69.  This analysis, which is consistent with the teachings of countless previous courts holding that impact may be shown by common methods of proof even in the presence of disparate individual prices if the starting point for those prices is a common price list (*see*, Plaintiffs' Motion for Class Certification at 28 n. 34), directly applies here. Plaintiffs allege conduct to reduce or eliminate competition that affected the fixed pay scales and differentials under which all nurses at each hospital were paid, so that even if some nurses are paid additional sums for merit pay, shift premiums, etc., that suppressed base wage (and suppressed differential, where applicable) is "built into" every nurse's pay, demonstrating how common evidence shows whether or not each nurse was impacted by the conspiracy.  In addition, while this Court need not consider the expert analysis that was prepared to respond to the arguments of the Non-Settling Defendants who are not parties to this unopposed motion, here Plaintiffs' expert, Prof. Orley Ashenfelter of Princeton University, has developed and fully implemented a method that allows a formulaic computation of a lower bound estimate of damages for each individual class member, a method that also allows proof of impact for every individual class member without resort to any individual inquiry.[17]  Further, proof that the scope of the conspiracy extended to all members of the class alone is sufficient to prove common impact.  *In re Foundry Resins*, 242 F.R.D. 409-10; *In re Auction Houses Antitrust Litig*., 194 F.R.D. 162, 166 (S.D.N.Y. 2000).

As to those aspects of superiority relevant here (excluding "manageability," *see*, *Amchem Prods.,* 521 U.S. at 620), numerous courts have recognized that antitrust damages claims are most efficiently litigated through the class action device avoiding the enormous expense, duplication of effort, burden on the Courts, and denial of recovery to almost all absent class

---

[17] As explained in Plaintiffs' Motion for Class Certification at 24-29, Prof. Ashenfelter presents two additional methods for proving class-wide impact.

members, that would follow from a denial of certification.  *In re Foundry Resins*, 242 F.R.D. at
411-12; *Carnegie*, 376 F.3d at 661.  These considerations are even more important in a matter
where absent the class device individuals would be required to sue their individual employer.
*Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 348 (M.D. Tenn. 2008) (fact that
plaintiffs were employees subject to fear of retaliation is relevant to a superiority analysis)

## V.  CONCLUSION

Each of these Settlements represents an excellent result for the Settlement Classes in this
complex and hard-fought antitrust class action.  Thus, Plaintiffs respectfully request that the
Court grant their motion and enter an order approving each of three settlements.  Plaintiffs
separately move for a ruling on certain aspects of the distribution of the currently available
settlement funds.  The Oakwood Settlement required that Plaintiffs submit an agreed form of
proposed order which is being filed concurrently herewith (references to an award of attorneys'
fees from the Oakwood settlement funds in the agreed Order have been deleted since Class
Counsel are seeking no such award at this time).  Plaintiffs' counsel have also prepared Proposed
Orders for the St. John and Bon Secours settlements (closely modeled on the Oakwood Order).

Dated this 19th day of July, 2010

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By:  /s/  Mark A. Griffin
Mark A. Griffin
Ray Farrow
Tana Lin
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

Daniel A. Small
Sharon K. Robertson
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
Emilie S. Kraft
JAMES & HOFFMAN
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036-4748
Tel: (202) 496-0500
Fax: (202) 496-0555

Stephen Wasinger
STEPHEN F. WASINGER PLC
26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel:  248-544-5100
Fax: 248-479-0391
Email:  sfw@sfwlaw.com

Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A.
SUHRE on behalf of themselves and others
similarly situated,

                              Plaintiffs,

       v.

DETROIT MEDICAL CENTER, HENRY
FORD HEALTH SYSTEM, MOUNT
CLEMENS GENERAL HOSPITAL, INC., ST.
JOHN'S HEALTH, OAKWOOD
HEALTHCARE, INC., BON SECOURS
COTTAGE HEALTH SERVICES, WILLIAM
BEAUMONT HOSPITAL d.b.a. BEAUMONT
HOSPITALS, and TRINITY HEALTH CORP.,

                              Defendants.

Case No. 06-15601

Hon. Gerald E. Rosen

Magistrate: Donald A. Scheer

## CERTIFICATE OF SERVICE

     I hereby certify that on July 19, 2010 I served the attached document(s) on the parties listed below as indicated:

**VIA ECF**

| | | |
|---|---|---|
| Alethea A. Wilson | Charles N. Raimi | Patricia C. Schabath |
| Sandra D. Hauser | Amy J. Carletti | David Marx, Jr. |
| David L. Hanselman, Jr. | Stephen Y. Wu | Terrence J. Miglio |
| Gouri G. Sashital | David A. Ettinger | Peter E. Boivin |
| Jill L. Marr | Margo Weinstein | Christopher Q. King |
| Corey M. Shapiro | Howard B. Iwrey | Fred K. Herrmann |
| Shari Ross Lahlou | Bethany M. Wimsatt | Thomas M.J. Hathaway |
| David A. Hardesty | Bruce L. Sendek | Michael R. Shumaker |
| Toby G. Singer | Michael R. Turco | Mark T. Nelson |
| Sheldon H. Klein | Cathrine F. Wenger | |
| David B. Gunsberg | | |

                                  s/Raymond J. Farrow
                                   Raymond J Farrow