UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. | ) | |
| SUHRE on behalf of themselves and others | ) | |
| similarly situated, | ) | Case No. 06-15601 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Gerald E. Rosen |
| | ) | |
| DETROIT MEDICAL CENTER, HENRY | ) | Magistrate:  Donald A. Scheer |
| FORD HEALTH SYSTEM, MOUNT | ) | |
| CLEMENS GENERAL HOSPITAL, INC., | ) | |
| ST. JOHN HEALTH, OAKWOOD | ) | |
| HEALTHCARE INC., BON SECOURS | ) | |
| COTTAGE HEALTH SERVICES, WILLIAM | ) | |
| BEAUMONT HOSPITAL and TRINITY | ) | |
| HEALTH CORP. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT WITH WILLIAM BEAUMONT HOSPITAL**

Plaintiffs move the Court for an Order granting preliminary approval of the Class Action

Settlement Agreement and Release ("Settlement Agreement") with Defendant William

Beaumont Hospital ("Beaumont").  The Settlement Agreement provides for the payment of

$11,342,904 in exchange for a release of all claims brought by Plaintiffs and the Settlement

Class[1] identified in that agreement.  This Settlement Fund will be allocated among members of

the Settlement Class in a manner to be determined if and when additional funds become

available whether through additional settlements or judgments against any remaining

Defendants".[2]  This settlement was negotiated under the auspices of the Court-appointed

---

[1] All capitalized terms are as defined in the Settlement Agreement.

[2] Plaintiffs have reached an agreement in principal with Mt Clemens and anticipate filing a motion for preliminary approval of that settlement in the very near future.  Plaintiffs include with this filing a proposed form of notice. However, should the Mount Clemens settlement be finalized in the near future, Plaintiffs intend to propose a form of joint notice to be issued instead.

Settlement Master, Judge Layn R. Phillips (Retired), during and after a Court-ordered Settlement Conference held on November 30, 2011 and December 1, 2012.  The Settlement will provide significant benefits to the Settlement Class, while removing the risk and delay associated with further litigation against Beaumont.  This settlement is an excellent result, and Plaintiffs and their counsel are pleased to present it to the Court for preliminary approval.  The Settlement Agreement is attached as Exhibit A to the Declaration of Mark A. Griffin in Support of Plaintiffs' Motion for Preliminary Approval of the Beaumont Settlement ("Griffin Declaration").

Dated this 20th day of April, 2012.

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By: /s/   Mark A. Griffin
Mark A. Griffin
Ray Farrow
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

Daniel A. Small
Sharon K. Robertson
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
Emilie S. Kraft
JAMES & HOFFMAN
1130 Connecticut Avenue, NW, Suite 950,
Washington, DC 20036Tel: (202) 496-0500
Fax: (202) 496-0555

Stephen Wasinger
STEPHEN F. WASINGER PLC

26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel:  248-544-5100
Fax: 248-479-0391

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. | ) | |
| SUHRE on behalf of themselves and others | ) | |
| similarly situated, | ) | Case No. 06-15601 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Gerald E. Rosen |
| | ) | |
| DETROIT MEDICAL CENTER, HENRY | ) | Magistrate:  Donald A. Scheer |
| FORD HEALTH SYSTEM, MOUNT | ) | |
| CLEMENS GENERAL HOSPITAL, INC., | ) | |
| ST. JOHN HEALTH, OAKWOOD | ) | |
| HEALTHCARE INC., BON SECOURS | ) | |
| COTTAGE HEALTH SERVICES, WILLIAM | ) | |
| BEAUMONT HOSPITAL and TRINITY | ) | |
| HEALTH CORP. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF
<u>SETTLEMENT WITH BEAUMONT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

   A. The Litigation ............................................................................................... 2

   B. The Prior Settlemnts ..................................................................................... 2

   C. The Current Settlements ................................................................................ 3

     1.   The Settlement Class ............................................................................ 3

     2.   The Settlement Amounts ...................................................................... 4

     3.   The Release ........................................................................................... 4

   C. The Timeline ................................................................................................. 5

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL .......................... 5

   A. Standard for Granting Preliminary Approval .................................................. 6

   B. The Proposed Settlements are in the Range of Possible Approval as Fair, Reasonable and Adequate ............................................................................................... 8

   C. The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness. ................... 10

   D. The Proposed Settlements Achieve Excellent Results for the Class, Particularly Given the Expense, Duration and Uncertainty of Continued Litigation ........................................ 11

IV.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS ARE WARRANTED . 13

   A. The Proposed Class Satisfy the Requirements of Rule 23(a). ............................................. 14

     1.   The Settlement Class Meet the Numerosity Requirement. ............................................. 14

     2.   Common Questions of Law and Fact Exist. ................................................................. 14

     3.   Plaintiffs' Claims and Defenses Are Typical of Those of the Class. ............................. 15

     4.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of All Class Members. ............................................................................................................. 16

   B. The Requirements of Rule 23(b)(3) are Satisfied. ............................................................ 17

   C. Superiority ....................................................................................................................... 20

V.    THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO CLASS MEMBERS ................. 21

VI.   CONCLUSION ................................................................................................................. 22

i

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should preliminarily approve the Settlement Agreement with Beaumont.

2.      Whether the Court should certify the proposed Settlement Class.

3.      Whether the Court should approve the form and method of Class Notice.

4.      Whether the Court should set a Fairness Hearing, along with deadlines for Class Counsel to submit their motion for final approval of the proposed Settlement Agreement and their motion for award of attorneys' fees and reimbursement of costs.

## STATEMENT OF
## MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)

*Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983)

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 ( S.D. Ohio 2007)

*Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006)

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93 (W.D. Mich. 1998)

*Reed v. Rhodes,* 869 F. Supp. 1274 (N.D. Ohio 1994)

Fed. R. Civ. P. 23

## I.  INTRODUCTION

After over five years of litigation and hard fought, arms-length negotiation by highly experienced, capable counsel, Plaintiffs have reached a Settlement Agreement with William Beaumont Hospital resolving the claims of a proposed class of nurses who provide direct patient care in certain Detroit-area hospitals.  The Settlement Agreement provides for the payment of $11,342,904.   Therefore, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class; (2) certifying the Settlement Class, as defined below; (3) appointing Keller Rohrback L.L.P. ("Keller Rohrback"), Cohen Milstein Sellers & Toll, PLLC ("CMST"), and James & Hoffman ("J&H"), PC, as Class Counsel for the Settlement Class, and Pat Cason-Merenda and Jeffrey A. Suhre as Class Representatives; (4) approving the form of the Legal Notice of Class Action Settlement (the "Notice"), attached as Exhibit B to the Griffin Declaration; (5) approving the notice plan and directing that notice be mailed; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for attorneys' fees and reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections by members of the Settlement Class; (8) establishing a deadline for members of the Settlement Class to exclude themselves from the proposed Settlement Class; (9) establishing a date for a hearing on final approval of the proposed settlement; (10) ordering a stay of all proceedings against Beaumont except those proceedings provided for or required by the Settlement Agreement; and (11) authorizing Class Counsel to pay the cost of providing notice to the Class, taxes, tax expenses and charges of the Claim Administrator from the Settlement Fund as they are incurred.

## II.  BACKGROUND

### A.  The Litigation

Plaintiffs filed this lawsuit individually and as representatives of all persons employed by any defendant or co-conspirator to work in a hospital in the Detroit MSA as a Registered Nurse ("RN") from December 12, 2002 to the present.   The Third Amended Complaint (the "Complaint") (Docket No. 67) alleges that the Defendant hospitals engaged in a conspiracy to depress the wages of their hospital nurses and to exchange information regarding nurse pay with the effect of suppressing wages and that, as a result of the alleged conduct of Defendants, the wages of RNs were depressed during the Class Period.  Griffin Declaration, ¶ 4.

During the course of discovery in this case, Plaintiffs analyzed and reviewed over 8.2 million pages of documents produced by Defendants and third parties and conducted an extensive analysis of enormous quantities of data produced by the Defendants regarding the compensation of their RN employees.  In addition, Plaintiffs and Defendants have taken a total of over ninety party and third-party depositions, including multi-day depositions of six expert witnesses.  Plaintiffs have extensively consulted with their experts, Professors Henry Farber, Orley Ashenfelter, and Dr. Gregory Vistnes, regarding the complex economic and statistical issues presented by this case and assisted Professor Ashenfelter in preparing an expert report in support of Plaintiffs' case.  Dr. Vistnes has also submitted a Rebuttal Report responding to certain testimony presented by Defendants' experts.  Professor Ashenfelter (twice) and Dr. Vistnes have been deposed by counsel for Defendants, and Plaintiffs' counsel has deposed four purported experts who submitted reports on behalf of Defendants: Professors Daniel Rubinfeld, Edward Snyder, Daniel S. Hamermesh, and Mr. Joseph Caracci.  *Id.* at ¶ 5.

Plaintiffs filed a Motion for Class Certification on April 24, 2009 along with two motions to strike certain testimony in the Reports of Dr. Snyder and Prof. Rubinfeld as well as a motion

to completely strike the testimony of Mr. Caracci.  Defendants have filed various Motions for Summary Judgment and Motions to strike testimony presented by Dr. Vistnes and Prof. Ashenfelter.  On October 18, 2010, the Court granted Plaintiffs' motion to strike Mr. Caracci's testimony (Docket No. 723).  On March 22, 2012, the Court issued an Opinion and Order Regarding Defendants' Motions for Summary Judgment dismissing one of Plaintiffs' two claims in this matter (Docket No. 737).  The remaining motions are pending.  *Id.* at ¶ 6.

### B.  The Prior Settlements

Three of the Defendants, St. John Health, Oakwood Healthcare Inc., and Bon Secours Cottage Health Services, have previously agreed to settle this lawsuit, and the Court granted final approval of those settlements on September 8, 2010, dismissing those Defendants from this lawsuit.  Depending on how the Court rules on the pending motion for certification of a litigation class, these settlements will result in an aggregate cash payment of either $21,091,475 if this Court certifies a litigation class of Staff Nurses, or $10,908,410 if this Court does not.  *Id.* at ¶ 8.

### C.  The Current Settlement Agreement

The settlement with Beaumont was negotiated prior to the Court's ruling on Defendants' summary judgment motions under the auspices of the Court-appointed Settlement Master, Judge Layn R. Phillips (Retired), during and after a Court-ordered Settlement Conference held on November 30, 2011 and December 1, 2012.  *Id.* at ¶ 9.

These negotiations were founded on a full understanding of the strengths and weaknesses of the case, based, *inter alia*, on information gleaned from discovery and thoroughly analyzed in the pending motions.  The basic terms of the Settlement Agreement include:

### 1.  <u>The Settlement Class</u>

The Settlement Agreement defines the "Settlement Class" as follows:

> All Registered Nurses who provided direct patient care in short term acute care facilities during the Class Period, exclusive of Registered Nurses who worked solely as supervisory, managerial or advance practice nurses, and who were employed by Defendants within the Detroit MSA at any time during the Class Period who do not timely and validly elect to be excluded from the Settlement Class.

Settlement Agreement ¶ 21.  The Agreement defines the "Class Period" defined as "the period from and including December 12, 2002 through June 15, 2007."  Settlement Agreement ¶ 6.

### 2.  **The Settlement Amount**

The proposed Settlement Agreement provides that Beaumont will pay or cause to be paid $11,342,904 in cash for the benefit of the Settlement Class.  This amount is reasonable when considered in the context of past settlements.  Griffin Declaration, ¶ 10, Exhibit C.  The Beaumont payment is to be deposited in the already existing Qualified Settlement Fund ("QSF") within ten days of the entry by the Court of an Order of Preliminary Approval, Beaumont Settlement Agreement ¶ 26.  If more than 5 percent of the Settlement Class opts out of the Settlement, Beaumont has the right to terminate its Settlement Agreement.  *Id.* ¶ 50.

### 3.  **Release**

In exchange for the above consideration from Beaumont, Plaintiffs have agreed for themselves and on behalf of the Settlement Class, to release and discharge Beaumont from any and all claims against it arising from or relating in any way to any alleged anticompetitive conduct by Beaumont prior to the Execution Date concerning the monetary compensation, non-monetary compensation, recruitment, employment and/or retention of Settlement Class members in short term acute care facilities in Detroit.  *Id.* ¶ 39.  The Released Claims include all claims related to or arising out of the facts, occurrences, transactions or other matters alleged on behalf of the Settlement Class members in the Class Action during the Class Period, but exclude any

claims based upon a nurse's employment as a supervisory, managerial and advanced practice nurses.  *Id.*

### D.  The Timeline

Pursuant to Fed. R. Civ. P. 23(e), a hearing on the final approval of the settlement should take place after class members have received notice and have had the opportunity to evaluate the settlements.  Plaintiffs propose the following schedule:

1.  Notice to be mailed no later than 20 days following the date on which the preliminary approval order is entered by the Court ("Notice Date");

2.  Plaintiffs' motion for final approval of the settlement to be filed no later than 45 days following the Notice Date;

3.  Requests for exclusion from the proposed Settlement Class must be postmarked no later than 30 days following the Notice Date;

4.  Any objections to the settlement and request for fees and costs must be filed with the Court and served on Class Counsel, postmarked no later than 20 days prior to the date the Court sets for a hearing on final approval;

5.  Class counsel may respond to any objections no later than 10 days prior to the date the Court sets for a hearing on final approval;

6.  Affidavits or declarations showing that notice to the Class was made in accordance with the preliminary approval order to be filed no later than 10 days prior to the date the Court sets for a hearing on final approval;

7.  A hearing before the Court on final approval of the settlement to be scheduled subject to the Court's convenience, at least 80 days following the Notice Date.

### III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be approved by the Court before a case may be dismissed or compromised.  "Fed. R. Civ. P. 23(e)(1)(C) provides that 'the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.'"  *Rankin v. Rots,* (*"Kmart ERISA Class Action"*) No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *8 (E.D. Mich. June 28, 2006). "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement."  *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

### A.  Standard for Granting Preliminary Approval

In reviewing a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). A court also should "not substitute its business judgment for that of the parties."  *Kmart ERISA Class Action*, 2006 U.S. Dist. LEXIS 45706, at *9.  Rather, the only question for a court is "whether the settlement, taken as a whole, is so unfair on its face to preclude judicial approval." *Id.* (internal quote omitted).  Thus, a court's inquiry, even on final approval, is limited to a consideration of whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest."  *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)).  "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."  *Telectronics,* 137 F. Supp. 2d at 1008-9.  This is particularly true with

class actions, the settlement of which is generally favored.  *Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

However, the Court is not required at this first stage of the approval process to determine whether it ultimately will approve the Settlement Agreement.[3]  Rather, at this time, the Court's analysis is more limited: "the court first must determine whether the proposed settlement is *potentially* approvable."  *Berry,* 184 F.R.D. at 97 (emphasis added); *Reed v. Rhodes,* 869 F. Supp. 1274, 1278 (N.D. Ohio 1994).  The purpose of this preliminary review is to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Berry,* 184 F.R.D. at 97.  A district court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement."  *Telectronics,* 137 F. Supp. 2d at 1026; *In re Dun & Bradstreet Credit Servs. Litig.,* 130 F.R.D. 366, 370 (S.D. Ohio 1990).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement."  *Telectronics,* 137 F. Supp. 2d. at 1015 (quoting MANUAL FOR COMPLEX LITIGATION §30.44 (2d

---

[3] Courts usually conduct a detailed analysis of whether the proposed settlement is fair, adequate, and reasonable only at the final approval stage.  There, courts in the Sixth Circuit have found the following eight factors relevant in determining whether, the settlement is fair, adequate, reasonable and consistent with the public interest: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the risks, expense, and delay of further litigation; (3) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (4) the amount of discovery completed and the character of the evidence uncovered; (5) whether the settlement is fair to the unnamed class members; (6) objections raised by class members; (7) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (8) whether the settlement is consistent with the public interest.  *In re Delphi Corp. Sec., Derivative &"ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008); *In re Cardizem*, 218 F.R.D. at 522.  "The district court enjoys wide discretion in assessing the weight and applicability of these factors."  *Granada Investments,* 962 F.2d at 1205-06.

ed. 1985)).   Courts have wide discretion to determine what information to consider at the preliminary stage; this initial assessment can be made on the basis of information already known to the court.   MANUAL FOR COMPLEX LITIGATION (FOURTH), at §21.162 (2004).

Here, the settlement with Beaumont falls well within the range warranting preliminary approval and there are no grounds to doubt the fairness of the proposed settlement.   The parties engaged in arms-length negotiations during and after a Court-ordered Settlement Conference held on November 30, 2011 and December 1, 2012 before Court-appointed Settlement Master, Judge Layn R. Phillips (Retired).   Beaumont and the proposed Settlement Class were represented by experienced counsel, and the Settlement Agreement was executed after the completion of discovery and dispositive motions were fully briefed so the parties had a good understanding of the strengths and weaknesses of the case.   The Settlement Agreement provides certainty and a substantial settlement amount to be paid to members of the Settlement Class that avoids the risk of ongoing litigation.   This substantial relief is far preferable to the possibility of a smaller recovery or none at all.   In short, the proposed Settlement is an excellent result and merit preliminary approval.

### B.  The Proposed Settlement is in the Range of Possible Approval as Fair, Reasonable and Adequate.

"[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ."  *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972).   If, as here, the proposed settlements "fall[] with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement[s]."  *Telectronics,* 137 F. Supp. 2d at 1015.

A recovery equivalent to approximately two percent of the total Registered Nurse Wages paid by Beaumont is the same result as the Oakwood settlement approved by the Court.  Docket No. 718.  It is the same or more than the amount paid in the St. John settlement depending on whether the Court certifies a litigation class.  Docket No. 717.  It is more than the amount paid in the Bon Secours settlement, also approved by the Court.  Docket No. 719.   Thus, compared to the prior settlements approved by the Court, the Beaumont settlement is a very good result. Indeed, even if the settlements were a much smaller percentage, "courts have determined that a settlement can be approved even if the benefits amount to a small percentage of the recovery sought . . . And 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery.'" *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974).  This percentage of recovery is also in the range of settlements approved in other antitrust cases.  *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (settlement represented approximately two percent of sales during the Class Period); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) (settlement represented approximately two percent of sales during the Class Period); *Fischer Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving a settlement representing 0.2 percent of the defendant's sales, and noting that earlier settlements approved in the case represented 2.4 percent, 0.88 percent, 0.65 percent, 0.3 percent, 0.2 percent, and 0.1 percent of other settling defendants' sales).  Furthermore, a settlement of $11,342,904 is fair, reasonable, and adequate when balanced against the expense and risk that Plaintiffs and the Settlement Class would face in litigating this case through trial and possible appeal against Beaumont.  This is especially true because, as a result of joint and several liability Plaintiffs' claim based on Beaumont's

compensation stay in the case and the remaining non-settling Defendants will still be liable for any overcharge relating to that compensation.

### C. The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness.

In addition to being well within the range of possible approval, the proposed settlement does not disclose any ground for the Court to doubt its fairness.  Because vigorous, arms-length negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e), settlements resulting from such negotiations, particularly those conducted under the auspices of the Court-appointed Settlement Master, are entitled to deference from the Court.  *See, e.g., Telectronics,* 137 F. Supp. 2d at 1018 ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")).  Plaintiffs' Counsel here has extensive experience in handling antitrust cases and other complex litigation.  Lead Counsel Keller Rohrback L.L.P. and Cohen Milstein Sellers and Toll are national leaders in this area of complex litigation.  Lead Counsel James & Hoffman, PC brings unique experience in litigating employment-related class actions as well as having played a critical role in this matter.  These three firms are also lead counsel in the related nurse wage antitrust actions pending in San Antonio, and Memphis, and recently concluded (except for distribution of funds) in Albany, giving them experience in understanding the legal and factual issues underlying the proposed class' claims.  Griffin Declaration, ¶ 1.  Lead Counsel was, therefore, in a strong position to evaluate the strengths and weaknesses of its case.  Beaumont, in turn, was represented by nationally recognized antitrust and class action attorneys.

In preparation for such negotiations, Lead Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation.  Counsel reviewed over 8.2

million pages of documents produced by Defendants and third parties, analyzed data regarding the compensation paid to Defendants' RN employees, and deposed over ninety party and third-party deponents, including six expert witnesses. Plaintiffs' counsel briefed a motion to dismiss, numerous discovery motions, several summary judgment motions, *Daubert* motions, and a motion for class certification. Prior to negotiating the Settlement Agreement with Beaumont, they retained an expert labor economist, Professor Orley Ashenfelter, who estimated the wage suppression in the Detroit MSA for each Defendant. Docket. No. 450-1. This analysis formed the basis for the negotiations of the settlement amount with Beaumont. Thus, Class Counsel is significantly informed as to the facts of the case and the strengths of the claims asserted.

The arms-length nature of the negotiations and the participation of experienced counsel and former Judge Phillips throughout the process strongly support the conclusion that the proposed settlement is fair, reasonable, and adequate. In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Kmart ERISA Class Action*, 2006 U.S. Dist. LEXIS 45706, at *8. Nothing in the course of the negotiations or in the substance of the proposed settlement presents any reason to doubt its fairness.

### D.  The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the Expense, Duration and Uncertainty of Continued Litigation.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics*, 137 F. Supp. 2d at 1013. Presenting an

antitrust case of this type on the merits is a mammoth undertaking, with associated risks, expense, and delay.   Here, Plaintiffs have alleged violations of Section 1 of the Sherman Antitrust Act under the *per se* rule and the rule of reason analysis.  Success under the *per se* rule still leaves Plaintiffs with the burden of proving all issues of causation, injury, and damages,[4] while to prevail on their Rule of Reason claim requires proof of all those elements and others. *Cardizem*, 218 F.R.D. at 523.  "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation."  *Id*.  Continuing this litigation against Beaumont would entail a lengthy and expensive legal battle, involving complex legal and factual issues.[5]

Against this background, the Settlement represents an excellent result for the members of the Settlement Class.  Beaumont's $11,342,904 payment provides for significant compensation to the Settlement Class that will be available much earlier than if litigation against Beaumont continued through trial and appeal.  Because the "complexity, expense, likely duration and risks of litigation, the state of the proceedings to date, the negotiations leading up to, and the ultimate terms" of the settlement, it certainly falls within the possible range of approval as a "fair and reasonable" settlement of the Settlement Class' claims.  *See In re Delphi,* 137 F.R.D. at 502. Therefore, in light of (1) the risks faced by Plaintiffs, (2) the significant monetary benefits achieved by the Settlement, and (3) the fact that claims based on overcharges as a result of compensation paid by Beaumont to Settlement Class members remain in the case under principles of joint and several liability and therefore may still be pursued against the remaining

---

[4] The Court granted Defendants' summary judgment motion as to Plaintiffs' *per se* claim however Plaintiffs have moved for reconsideration of that ruling and under appropriate circumstances have the right to appeal that dismissal.
[5] Because Plaintiffs' Counsel may have to litigate against the remaining Defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

Defendants, the Settlement is well within the range of being fair, reasonable and adequate and should be preliminarily approved.

## IV. CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED.

As part of approving the settlement, the Court must also approve and certify the proposed Settlement Class.  Class certification is governed by Fed. R. Civ. P. 23 whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement.  *See, generally, Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 619-29 (1997).  Thus, the Court may certify the proposed Class now upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the three subdivisions of Rule 23(b).  *Id.*

Courts have recognized that antitrust cases are particularly suitable for class treatment.  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 258, 258 (D.C. Cir. 2002); *In re Playmobil Antitrust Litig.,* 35 F.Supp.2d 231, 238 (E.D.N.Y. 1998).  This is because the core allegation of such cases, and the vast majority of the issues to be litigated, focus entirely on the conduct of the Defendants, not on any aspect of Plaintiffs' response.  *See In re Vitamins* at 260.  Moreover, courts tend to favor class certification when there is doubt as to whether class certification is warranted.  *See Playmobil*, 35 F.Supp.2d at 239; *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("The interests of justice require that in a doubtful case…any error, if there is to be one, should be committed in favor of allowing a class action.")  For these reasons, antitrust cases are routinely certified, and this one should be no exception.

The Class that the parties seek to have certified here is identical (except for the Class Period) to those this Court has already certified for the purposes of the prior St. John and Bon Secours settlements, and is narrower than the class certified in association with the prior Oakwood settlement.

### A.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.  <u>The Settlement Class Meets the Numerosity Requirement.</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs believe the Settlement Class to include over twenty thousand members.  Ashenfelter Report, ¶ 33 (Docket No. 450-1).  Thus, the Class obviously are too large for joinder to be practicable and the numerosity requirement is satisfied. *See, e.g., In re Cardizem Antitrust Litig*., 200 F.R.D. 297, 303 (E.D. Mich. 2001) (numerosity satisfied by class of 80 class members).

#### 2.  <u>Common Questions of Law and Fact Exist.</u>

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class."  "[T]here need be only a single issue common to all members of the class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), so long as a "classwide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

In the present case, Plaintiffs have identified a series of common questions of law and fact, including: (a) whether hospitals in the Detroit MSA, including defendants, have conspired to depress the compensation they paid to their RN employees during the Class Period; (b) whether the alleged conspiracy has been effective in depressing RN compensation; (c) whether Detroit-area hospitals, including Defendants, have agreed to share regularly with each other detailed and non-public data about current and prospective RN employee compensation; (d) whether defendants and other Detroit-area hospitals have regularly exchanged detailed and non-public information current and future RN employee compensation; (e) whether the exchange of such information suppressed competition among Detroit-area hospitals in the compensation of

RN employees, and depressed the compensation paid to such employees; and (f) whether the formula and data exist for estimating the amount by which Settlement Class members' compensation was depressed.  Complaint, ¶ 23 (Docket No. 67).  The existence and the scope of the conspiracy at issue here is an issue common to all of the Settlement Class members, and thus commonality is readily satisfied in this context, as the Plaintiffs allege the Defendants conspired to depress compensation levels of all of the Settlement Class members.

### 3.  <u>Plaintiffs' Claims and Defenses Are Typical of Those of the Class.</u>

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class." *Kmart Class Action,* 220 F.R.D. at 518.  "The typicality requirement is met if the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory.'"  *Id.* (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 242-43 (E.D. Mich. 1997)).  Representatives and class members need not, however, have suffered identical injuries or damages.  *United Bhd. of Carpenters & Joiners, Local 899 v. Phoenix Assocs., Inc.,* 152 F.R.D. 518, 522 (S.D.W.Va. 1994).

"In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violations by defendants.  Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom - precisely what the absent class members must prove to recover."  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 ( S.D. Ohio 2007).

Plaintiffs' claims arise from the same course of events as the claims of the Settlement Class - the Defendants are alleged to have conspired to depress compensation levels of RNs in

non-supervisory or managerial positions in short term acute care facilities in the Detroit MSA. Each Settlement Class member can make the same arguments in support of the Defendants' liability.   With each Settlement Class member stating the same claim concerning the same conduct and seeking the same relief on behalf of the Settlement Class, there can be no fair dispute that the claims asserted are typical for purposes of Rule 23(a)(3).

### 4.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of All Settlement Class Members.

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent.   As this Court previously noted:

> In *Senter v. General Motors Corp*., 532 F.2d 511, 525 (6th Cir. 1976), the Sixth Circuit articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."

*Kmart ERISA Class Action,* 220 F.R.D. at 520.   Furthermore, "[b]ased on the language in *Senter*, the Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff."   *Id.*

These requirements are easily met here.   The Named Plaintiffs' interests are the same as those of the absent class members; all seek to recover damages against the Defendants.   There can be no question that the Named Plaintiffs' interests are aligned with those of the Settlement Class, and they have retained qualified counsel with extensive experience in representing plaintiffs in class litigation, including antitrust cases.   Five years of hard-fought litigation certainly demonstrate the Named Plaintiffs' willingness to "vigorously prosecute the interests of the class."

The Court must also determine that proposed Class Counsel are qualified under the criteria of Rule 23(g).  Fed. R. Civ. P. 23(g)(1)(B).  The Court is aware of the claims brought in this action, and the extraordinary time and effort already expended by Plaintiffs' Counsel in this action.  Moreover, Plaintiffs' Counsel includes some of the leading firms nationwide in the prosecutions of complex litigation and class actions, and in particular for the types of claims brought in this lawsuit.  There can be no doubt that Plaintiffs' Counsel satisfies the requirements of Rule 23(g).  *See* Firm Resumes for Keller Rohrback, CMST, and J&H, attached as Exhibits E to G to the previously filed Declaration of Mark A. Griffin (Docket No. 579).

**B.  The Requirements of Rule 23(b)(3) are Satisfied.**

A class may be certified under Rule 23(b)(3) if, in addition to meeting the requirements of Rule 23(a), the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed R. Civ. P. 23(b)(3).  Rule 23(b) (3) identifies some "matters pertinent to these findings …: (A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability or of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed R. Civ. P. 23(b)(3)(A-D).

"The rule 23(b)(3) predominance inquiry tests whether proposed Class are sufficiently cohesive to warrant adjudication by representation."  *Alchem Prod., Inc. v. Windsor*, 521 U.S. 591, 632 (1997).  To satisfy the predominance requirement, a plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as

a whole, … predominate over those issues that are subject only to individualized proof." *Beattie*

*v. Century Tel., Inc*. 511 F.3d 554, 564 (6th Cir. 2007). Since there is no bright line for

determining whether common questions predominate, a claim will meet the predominance

requirement when "there exists generalized evidence which proves or disproves an element on a

simultaneous, class wide basis." *In re Cardizem,* 200 F.R.D. at 307.

For an antitrust action, the court's inquiry will address whether the plaintiffs, by using

predominantly common evidence, can establish each of the required elements of an antitrust

claim: (1) a violation of antitrust law; (2) injury and causation; and (3) damages. *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d. Cir. 2001) (internal citations

omitted), *overruled on other grounds*, *In re Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir. 2006).

Here, Plaintiffs allege the Defendants and their co-conspirators conspired to depress the wage of

RNs in the Detroit MSA. Proof of the alleged conspiracy will focus on the actions and conduct

of Defendants, not the individual class members. *See In re Mercedes-Benz Antitrust Litig.*, 213

F.R.D. 180, 187 (D.N.J. 2003) ("common issues predominate when the focus is on the

defendant's conduct and not on the conduct of the individual class members").

First, common evidence exists that each Defendant engaged in multiple communications,

whereby, every Defendant exchanged information regarding aspects of nurses' pay on a regular

basis. Plaintiffs intend to prove this evidence by offering testimony of Defendants' corporate

representatives and employees and through voluminous documentary evidence implicating all

the Defendants named in the Complaint. This evidence, in addition to other common evidence

will show that the conspiracy to depress nurses' wages, affected all members of the Settlement

Class.

Second, common evidence will show that interference with the market (an artificial decrease in demand via an employer conspiracy) caused injury to all members of the Settlement Class. "Proof that the scope of conspiracy extended to all members of the class alone is sufficient to prove common impact." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 409-410. Additionally, Plaintiffs intend to offer the expert analysis of the Joseph Douglas Green Professor of Economics at Princeton University, and one of the foremost experts in the economics of labor markets, Prof. Orley Ashenfelter, who has concluded that it can be shown with common evidence that all or almost all of the members of the class have been harmed by the alleged conspiracy. *See* Report of Orley Ashenfelter, ¶¶ 107-121 (Docket No. 450-1). According to Prof. Ashenfelter, each class members' wages, and most other elements of their compensation, were determined in a common administered compensation system. As a result, the conspiracy affected the compensation of all or almost all individual class members. The evidence shows that relative labor supply to the various jobs in the class is very elastic, which implies that even if the alleged conspiracy only directly affected a subgroup of the class, such as a plausible benchmark group, pay for all jobs held by members of the class were depressed. Using a conservative benchmark of an adjusted measure of what the Defendant hospitals paid to agencies to supply nurses to the hospitals (nurses who performed the same work as, and indeed worked side by side with, class members), Prof. Ashenfelter concluded that almost all of the members of class actually earned less than they would have, but for the conspiracy. Thus, all or almost all of the Settlement Class were harmed by the conspiracy and this can be shown using evidence that is common to the Settlement Class.

With regard to damages to the class, Prof. Ashenfelter has concluded that under his "but for" earning analysis, it is possible to calculate the aggregate amount of damages and calculate

how to distribute this total among individual class members in a reasonable way without resort to individual analysis.  No precise damage formula is needed at the class certification stage.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *10 (N.D. Cal. June 5, 2006) (quoting *Potash*, 159 F.R.D. at 697) ("Plaintiffs need not supply a 'precise damage formula,' but must simply offer a proposed method for determining damages that is not 'so insubstantial as to amount to no method at all.'").   "There is no requirement that the plaintiffs choose one method now, as long as they offer a methodology that is generally accepted."  *In re Carbon Black Antitrust Litig.*, *No. Civ A. 03-10191-DPW*, 2005 WL 102966, at *20 (D.Mass. Jan. 18, 2005).[6]

Thus, all questions common to the Settlement Class predominate over questions affecting individual members and the requirements of Rule 23(b)(3).

### C.  Superiority

As to the superiority requirement, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem Prod.*, 521 U.S. at 620.  Such is the case here.  The settlement between Plaintiffs and Beaumont obviates the need for a trial against Beaumont and thus questions concerning the manageability of litigating Plaintiffs' claims on a class-wide basis are irrelevant.  Here, for the reasons set forth above, a class settlement with Beaumont is superior to continued litigation against that hospital.   Accordingly, the superiority requirement of Rule 23(b)(3) is satisfied.

---

[6] Indeed, while Plaintiffs here have proposed a feasible method for determining damages for all class members without resort to individual analysis, it is well recognized that the mere fact of individual damages does not defeat certification.  *See, e.g.*, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).

## V.  THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO CLASS MEMBERS.

Once a court grants preliminary approval to a proposed settlement, "[n]otice of the proposed settlement and the fairness hearing must be provided to class members."  *Reed v. Rhodes,* 869 F. Supp. 1274, 1278 (N.D. Ohio 1994); *see also* Fed. R. Civ. P. 23(e)(1)(B), (C).

To satisfy due process, notice to a Settlement Class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Substantively, the notice should provide a "very general description[] of the proposed settlement."  *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982), *superseded by statute on other grounds, 1983 Amendment to Fed. R. Civ. P. 11, as recognized in Glasser v. Cincinnati Milacron, Inc.,* 808 F.2d 285 (3d Cir. 1986).  This description should nevertheless allow Settlement Class members "a full and fair opportunity to consider the proposed decree and develop a response."  *Reed*, 869 F. Supp. at 1279.  Procedurally, members of the Settlement Class must receive the "best notice practical under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Vukovich,* 720 F.2d at 921. Where, as here, the names and last known addresses of all Settlement Class members are available from the Defendants' records, mailing the notice to the Settlement Class members at those addresses is the best notice practicable under the circumstances.  *Thompson, v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) (citing *Mullane,* 339 U.S. at 315).  Finally, while individual circumstances will dictate the length of time between the notice and the fairness hearing, no less than two weeks should be provided.  *Vukovich,* 720 F.2d at 921.

Here, the proposed form of Class Notice—substantively identical to those previously approved by this Court and modeled on that suggested by the Federal Judicial Center— describes in plain English the terms and operation of the Settlement Agreement, the considerations that caused the Plaintiffs and Lead Counsel to conclude that the Settlement Agreement is fair and adequate, the procedure for objecting to the Settlement Agreement, and the date and place of the Fairness Hearing.  *See* HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 8.34 (4th ed. 2002).  The Notice fully describes all terms of the Agreement, allowing class members to make an informed judgment as to whether the settlement represents an option preferable to bearing the risks of ongoing litigation against Beaumont.  Within twenty (20) days of entry of an Order of Preliminary Approval by the Court, the Claims Administrator shall mail to each member of the Beaumont Settlement Class on the Class List by first class mail postage prepaid, a Notice substantially identical to that attached as Exhibit C to the Griffin Declaration.  Class Counsel shall establish and maintain a web site on the internet, the URL of which shall be included in the Class Notice.  A copy of the Notice will also be available on the website.  This Notice will fairly apprise Beaumont Settlement Class members of the Settlement and their options, and satisfy due process requirements.

## VI. CONCLUSION

This Settlement is an excellent result for the Settlement Class in this complex and hard-fought antitrust class action.  Thus, Plaintiffs respectfully request that the Court grant their motion and enter an order: (1) preliminarily approving the Settlement and finding that the proposed Settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class; (2) certifying the Settlement Class, as defined above; (3) appointing Keller Rohrback, CMST, and J&H, as Class Counsel for the Settlement

Class, and Pat Cason-Merenda and Jeffrey A. Suhre as Class Representatives; (4) approving the form of the Class Notice; (5) approving the notice plan and directing that notice be mailed; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for attorneys' fees and reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections by Settlement Class members; (8) establishing a deadline for Settlement Class members to exclude themselves from the proposed Settlement Class; (9) establishing a date for a hearing on final approval of the proposed settlement; (10) ordering a stay of all proceedings against Beaumont except those proceedings provided for or required by the Settlement Agreement; and (11) authorizing Class Counsel to pay the cost of providing notice to the Class, taxes, tax expenses and charges of the Claims Administrator from the Settlement Fund as they are incurred.  A proposed form of Order is being filed concurrently herewith.

Dated this 20th day of April, 2012

Respectfully submitted:
**KELLER ROHRBACK L.L.P.**

By:  /s/   Mark A. Griffin
Mark A. Griffin
Ray Farrow
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

Daniel A. Small
Sharon K. Robertson
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
Emilie S. Kraft
JAMES & HOFFMAN, PC
1130 Connecticut Avenue, NW, Suite 950,
Washington, DC 20036
Tel: (202) 496-0500
Fax: (202) 496-0555

Stephen Wasinger
STEPHEN F. WASINGER PLC
26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel:  248-544-5100
Fax: 248-479-0391

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A.
SUHRE on behalf of themselves and others
similarly situated,                                    Case No. 06-15601

                              Plaintiffs,         Hon. Gerald E. Rosen

            v.                                      Magistrate: Donald A. Scheer

DETROIT MEDICAL CENTER, et al..,

                              Defendants.
_____

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2012 I served the attached document(s) on the parties

listed below as indicated:


**VIA ECF:**

| | | |
|---|---|---|
| Alethea A. Wilson | Charles N. Raimi | Patricia C. Schabath |
| Sandra D. Hauser | Amy J. Carletti | David Marx, Jr. |
| David L. Hanselman, Jr. | Stephen Y. Wu | Terrence J. Miglio |
| Bruce L. Sendek | Michael R. Turco | Thomas M.J. Hathaway |
| Sheldon H. Klein | David A. Ettinger | Peter E. Boivin |
| Jill L. Marr | Margo Weinstein | Christopher Q. King |
| Corey M. Shapiro | Cathrine F. Wenger | Fred K. Herrmann |
| David B. Gunsberg | | Mark T. Nelson |

And I have mailed by United States Postal Service the paper to the following non-ECF

participants:  N/A


s/Mark A. Griffin
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Ph: 206-623-1900
mgriffin@kellerrohrback.com