**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAT CASON-MERENDA and
JEFFREY A. SUHRE, on behalf of
themselves and others similarly
situated,

    Plaintiffs,                                        Case No. 06-15601

v.                                                        Hon. Gerald E. Rosen

DETROIT MEDICAL CENTER, HENRY FORD
HEALTH SYSTEM, MOUNT CLEMENS GENERAL
HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD
HEALTHCARE INC., BON SECOURS COTTAGE
HEALTH SERVICES, WILLIAM BEAUMONT
HOSPITAL, and TRINITY HEALTH CORP.,

    Defendants.
_____/

**OPINION AND ORDER DENYING
MOTIONS FOR RECONSIDERATION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         May 24, 2012       

PRESENT: Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

In a 92-page opinion and order dated March 22, 2012, the Court granted in part and denied in part a motion for summary judgment brought jointly by Defendants Henry Ford Health System, Mount Clemens General Hospital, Inc., William Beaumont Hospital, and Trinity Health Corp., and likewise granted in part and denied in part a summary judgment motion brought separately by Defendant Detroit Medical Center. Through a

motion filed on April 5, 2012, Defendant Trinity seeks reconsideration of certain aspects of the Court's March 22 ruling on behalf of two of the three Trinity hospitals involved in this case, St. Joseph Mercy Oakland in Pontiac ("Trinity-Oakland") and St. Mary Mercy Hospital in Livonia ("Trinity-Livonia").  In addition, Plaintiffs have filed an April 5, 2012 motion in which they seek reconsideration of other portions of the Court's March 22 opinion.

     Under Local Rule 7.1(h)(3) of this District, this Court ordinarily "will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication."  More generally, it is well established that "[a] motion for reconsideration is not properly used as a vehicle to rehash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mount Pleasant Public Schools,* 298 F. Supp.2d 636, 637 (E.D. Mich. 2003).  In this case, the parties were allowed hundreds of pages of briefing to state their positions in support of and opposition to Defendants' summary judgment motions, and these briefs were accompanied by hundreds of voluminous exhibits.  In addition, counsel were afforded nearly three hours of oral argument, and the Court then ruled on Defendants' motions in a comprehensive 92-page opinion.

     Against this backdrop, it would seem unlikely that Plaintiffs or Defendant Trinity could raise an argument in their present motions that was fairly presented in the parties' underlying and exhaustive summary judgment briefing, but that the Court nonetheless failed to recognize and address in its March 22 opinion.  In any event, there is no need to

contemplate this theoretical possibility, because the Court readily concludes that neither of the present motions provides a basis for reconsideration of the March 22 ruling.

### I.   Plaintiffs' Motion for Reconsideration

Plaintiffs' motion for reconsideration rests on the premise that the Court applied an incorrect legal standard in evaluating their *per se* claim under § 1 of the Sherman Act, 15 U.S.C. § 1.  In particular, Plaintiffs point to the following passage in the March 22 opinion as setting out this purportedly incorrect standard:

> The Sixth Circuit has identified four factors that a court should consider in evaluating the circumstantial evidence offered in support of a § 1 conspiracy claim:
>
> > (1) whether the defendants' actions, if taken independently, would be contrary to their economic self-interest; (2) whether the defendants have been uniform in their actions; (3) whether the defendants have exchanged or have had the opportunity to exchange information relative to the alleged conspiracy; and (4) whether the defendants have a common motive to conspire.

(3/22/2012 Op. at 49 (quoting *Re/Max International, Inc. v. Realty One, Inc.,* 173 F.3d 995, 1009 (6th Cir. 1999)).)  As Plaintiffs observe, the quoted language from *Re/Max International* is immediately followed by the statement that "[o]rdinarily, an affirmative answer to the first of these factors will consistently tend to exclude the likelihood of independent conduct." *Re/Max International,* 173 F.3d at 1009.  In Plaintiffs' view, the Court erred when it found that this first factor — *i.e.,* conduct contrary to a defendant's economic self-interest — weighed in Plaintiffs' favor, but nonetheless proceeded to conclude that the entire body of circumstantial evidence, considered as a whole, did not

3

tend to exclude the possibility of independent conduct by each of the Defendant hospitals in setting its RN wages.

      The Court, however, sees nothing in *Re/Max International,* much less the governing case law as a whole, that elevates the single above-quoted statement from this Sixth Circuit decision into the inviolate, black-letter rule posited by Plaintiffs — namely, that evidence of actions contrary to a defendant's economic self-interest is sufficient, by itself, for a plaintiff to withstand summary judgment in a *per se* antitrust case, and that a court need not proceed to consider the remaining factors identified in *Re/Max International* (or any other factors cited in the pertinent case law) once a plaintiff has produced evidence that would satisfy this first factor. Plainly, *Re/Max International* itself does not pronounce any such absolute rule, but instead observes only that an evidentiary showing that satisfies the first factor "[o]rdinarily" will suffice to permit a trier of fact to find an antitrust conspiracy. *Re/Max International,* 173 F.3d at 1009. Nor did the court in *Re/Max International* actually invoke any such hard-and-fast rule in deciding the case before it. Instead, the court cited the evidence in that case of conduct contrary to the defendants' independent economic interests as "additional evidence [which], taken together with the other circumstantial evidence of conspiratorial conduct, would entitle a reasonable jury to conclude" that the defendants had conspired in violation of § 1 of the Sherman Act. *Re/Max International,* 173 F.3d at 1009-10.[1] Thus, even if one were to

---

[1]Similarly, in this case, although Plaintiffs contended in their consolidated response to Defendants' summary judgment motions that their evidence of conduct inconsistent with the individual Defendant hospitals' independent self-interests was sufficient by itself to preclude

read the above-quoted language from *Re/Max International* as stating a controlling principle of law, as opposed to an empirical observation, the rule that would emerge would be a form of *primus inter pares — i.e.,* that of the four factors listed by the court in that case, the first ordinarily should be given the most weight.

The Court's March 22 ruling is not inconsistent with any such governing principle that could be gleaned from *Re/Max International.* Throughout its analysis of Plaintiffs' *per se* § 1 claim, the Court remained mindful of the overarching inquiry as mandated in *Re/Max International,* 173 F.3d at 1009, and other binding precedents, *see, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S. Ct. 1348, 1356-57; *Riverview Investments, Inc. v. Ottawa Community Improvement Corp.,* 899 F.2d 474, 483 (6th Cir. 1990) — namely, whether Plaintiffs had "present[ed] evidence that tends to exclude the possibility that the alleged conspirators acted independently." (3/22/2012 Op. at 42 (internal quotation marks and citation omitted); *see also id.* at 48, 50, 71 (reiterating this standard).) It is clear beyond dispute from the decision in *Re/Max International* itself, as well as the Sixth Circuit precedents upon which it relies, *see, e.g., Wallace v. Bank of Bartlett,* 55 F.3d 1166, 1168 (6th Cir. 1995), that the four factors cited earlier, as well as other relevant considerations noted in the case law and addressed in the Court's March 22 decision, are intended to guide a court's

---

summary judgment on their *per se* claim, they nonetheless went on to discuss additional circumstantial evidence which, "along with the unambiguous evidence of conduct contrary to self-interest . . . , lifts this case far beyond the level required for this Court to pass the evidence on to a jury" for evaluation "as a whole." (Plaintiffs' 6/16/2009 Response Br. at 82-83.)

analysis of the evidentiary record, rather than dictating an outcome through a rigid hierarchy of governing precepts.[2] Although Plaintiffs might take issue with the manner in which the Court applied and calibrated these various factors as it analyzed the record in support of Plaintiffs' *per se* claim, this sort of disagreement with the Court's decision, rendered after thorough briefing and following meticulous review of a voluminous record, does not provide a basis for the Court to revisit its carefully considered ruling.

## II.   Defendant Trinity's Motion for Reconsideration

---

[2]Curiously, while Plaintiffs fault the Court for failing to give controlling weight to a single sentence in *Re/Max International,* they devote a portion of their present motion to an attack upon the passage leading up to this sentence (and block-quoted above, as well as in the Court's March 22 opinion), in which the Sixth Circuit identifies four factors to be considered in evaluating circumstantial evidence of a § 1 conspiracy.  In Plaintiffs' view, this passage is mere *"dictum"* that inaccurately paraphrases a paragraph from the court's earlier decision in *Wallace*, which lists "[e]xamples" of "plus factors" considered by the courts in analyzing § 1 conspiracy claims.  (Plaintiffs' Motion at 7 n.6 (quoting *Wallace,* 55 F.3d at 1168).)  Thus, Plaintiffs urge the Court to "follow *Wallace,*" rather than a purported "misstatement of the law, in *dictum,* by the *Re/Max* court."  (Plaintiffs' Motion at 7 n.6.)

Yet, if *Re/Max International's* enumeration of four factors is mere *dictum,* the sentence that directly follows this passage surely is not entitled to any greater (much less controlling) weight.  Even assuming that the Sixth Circuit inaccurately restated the factors listed in its earlier *Wallace* decision, the court at least identified *some* basis in its precedents for considering these or similar factors.  The following sentence, in contrast — the one relied on by Plaintiffs here, in which the court observes that a showing of conduct contrary to a defendant's economic self-interest "[o]rdinarily" will "consistently tend to exclude the likelihood of independent conduct," *Re/Max International,* 173 F.3d at 1009 — is unsupported by any citation whatsoever.  Moreover, and as noted earlier, the court itself did not treat this statement as a definitive rule, but instead analyzed evidence bearing on several of the four factors it had identified, even after noting the evidence of conduct contrary to the defendants' self-interests.  Finally, as for Plaintiffs' suggestion that the Court should follow *Wallace* rather than *Re/Max International* — a suggestion made in a motion that is predicated almost entirely on a sentence from the latter decision — the reference in *Wallace* to "[e]xamples" of "plus factors" considered by the courts can hardly be viewed as dictating that evidence of conduct contrary to the defendants' independent self-interests is always sufficient, standing alone, to preclude an award of summary judgment on a *per se* § 1 claim.

Turning next to Defendant Trinity's motion for reconsideration, this motion is premised on the purported dearth of evidence that two of the three Trinity hospitals involved in this suit, Trinity-Oakland and Trinity-Livonia, were active or regular participants in the "practice of on-demand exchanges of wage data" that featured heavily in the Court's decision to deny Defendants' joint summary judgment motion as to Count II of Plaintiffs' complaint. (3/22/2012 Op. at 83.) As discussed briefly below, Defendant Trinity's request for reconsideration must be denied on two separate grounds.

First and foremost, the present motion rests upon a ground that was never raised in the underlying summary judgment motion filed jointly by Defendant Trinity and three other Defendant hospitals. As noted earlier, the courts have recognized that a motion for reconsideration is not an appropriate mechanism for "arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996). In the more than one hundred pages of briefing submitted in support of Defendants' joint motion, nowhere was it argued that Defendant Trinity (or certain of its affiliate hospitals) should be entitled to an award of summary judgment in its favor, even if the Court were to reject the contentions that applied equally to all of the moving Defendants.[3] Although Defendants did suggest — albeit only in passing, and without any effort to develop any sort of argument on the point — that such individualized assessment might be appropriate as to

---

[3] Notably, although Defendants Detroit Medical Center and Mount Clemens General Hospital filed separate summary judgment motions on their own behalf, Defendant Trinity elected not to do so.

Plaintiffs' claims against Defendants Henry Ford and Mount Clemens, (*see* Defendants' 7/1/2009 Reply Br. at 47), Defendant Trinity was not identified as warranting such treatment. In any event, the Court was not obligated to address this issue raised for the first time (and perfunctorily) in a reply brief. *See Scottsdale Insurance Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008); *Sundberg v. Keller Ladder,* 189 F. Supp.2d 671, 682-83 (E.D. Mich. 2002) ("[I]t is not the office of a reply brief to raise issues for the first time.").

Next, Defendant Trinity's motion rests upon a fundamental misapprehension of the Court's rulings in its March 22 opinion. While Defendant Trinity speaks repeatedly of facts purportedly "found" by the Court in this March 22 decision, (*see* Defendant Trinity's Motion at 3), the Court had no occasion to make any such factual "findings" in resolving Defendants' summary judgment motions. Rather, the Court was performing its customary task in addressing motions brought under Fed. R. Civ. P. 56 — namely, summarizing the (voluminous) record submitted by the parties, and then determining whether this record gave rise to genuine issues of material fact that would preclude a judgment as a matter of law in Defendants' favor. Thus, when the Court cited ***"example[s]"*** of direct contacts between employees at the three Trinity affiliate hospitals and their counterparts at other Detroit-area hospitals, (3/22/2012 Op. at 35-36 (emphasis added)), this does not mean that the Court "found" that these were the sole contacts occurring during the relevant period.

Indeed, even if the Court had felt it necessary in its March 22 ruling to

8

exhaustively regurgitate every shred of evidence offered by Plaintiffs in their effort to defeat Defendants' joint motion, this would not warrant a "finding" that Plaintiffs had unearthed only this evidence, and no more, bearing upon the potential liability of each individual Defendant. Just as it was not the Court's task to pen a *magnum opus* incorporating all of the information that could be gleaned from the parties' briefs and accompanying exhibits, Plaintiffs were under no obligation to produce a definitive and all-encompassing record of their discovery efforts in response to Defendants' motions. Rather, Plaintiffs' limited objective under Rule 56 was to produce evidence sufficient to give rise to questions of fact as to the issues actually presented in these motions. To be sure, Defendants complained in their summary judgment briefing that Plaintiffs were unfairly "lump[ing] together" the information exchanges conducted by the various Defendant hospitals. (*See, e.g.,* Defendants' 7/1/2009 Reply Br. at 24 n.23, 47.) Yet, Plaintiffs necessarily had to take Defendants' arguments as they found them, and these arguments did not call for analysis of the magnitude of each individual Defendant's participation in what the Court characterized — upon viewing the record in a light most favorable to Plaintiffs, as mandated under Rule 56 — as a practice of on-demand sharing of wage data. Having failed to pursue such an individualized challenge at the designated time for doing so, Defendant Trinity cannot now seek to raise this issue at the present, advanced stage of this protracted litigation.[4]

---

[4]It also is worth noting that Defendant Trinity has not cited any authority for what amounts to a *de minimis* exception to co-conspirator liability under § 1 of the Sherman Act. *Cf. Pinney Dock & Transport Co. v. Penn Central Corp.,* 991 F. Supp. 908, 911 (N.D. Ohio 1998)

**III.     Conclusion**

Accordingly, for the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' April 5, 2012 motion for reconsideration (docket #744) is DENIED.  IT IS FURTHER ORDERED that Defendant Trinity Health Corp.'s April 5, 2012 motion for reconsideration (docket #743) also is DENIED.  Finally, IT IS FURTHER ORDERED that Defendant Henry Ford Health System's May 4, 2012 motion for leave to file response to Plaintiffs' motion for reconsideration (docket #751) is DENIED AS MOOT, as the Court did not find it necessary to review Defendant Henry Ford's proposed response before ruling on Plaintiffs' motion.

                                   s/Gerald E. Rosen
                                   Chief Judge, United States District Court

Dated:  May 24, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 24, 2012, by electronic and/or ordinary mail.

                                   s/Ruth A. Gunther
                                   Case Manager

---

("[O]nce a party takes the affirmative step of entering into an illegal conspiracy, that party is responsible for all the acts and consequent injury caused in furtherance of the conspiracy.").