UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | Case No. 06-15601 |
| Plaintiffs, | Hon. Gerald E. Rosen |
| v. | Magistrate: Donald A. Scheer |
| VHS of MICHIGAN, INC., d.b.a. DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN'S HEALTH, OAKWOOD HEALTHCARE, INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL d.b.a. BEAUMONT HOSPITALS, and TRINITY HEALTH CORP., | |
| Defendants. | |

**PLAINTIFFS' MOTION TO DISTRIBUTE SETTLEMENT FUNDS AND PAY AND REIMBURSE EXPENSES**

Plaintiffs Pat Cason-Merenda and Jeffrey Suhre, on behalf of themselves and the certified Settlement Classes, hereby move the Court for an order authorizing Settlement Class Counsel to distribute the Settlement Funds and pay and reimburse expenses.

In support of this motion, Plaintiffs rely upon the accompanying Memorandum of Law and exhibits submitted therewith.

DATED this 7th day of July 2014.

KELLER ROHRBACK L.L.P.

By */s/Raymond J. Farrow*
Mark A. Griffin
Lynn L. Sarko
Raymond J. Farrow
Tana Lin
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel : 206-623-1900


Stephen Wasinger
STEPHEN F. WASINGER PLC
32121 Woodward Avenue, Suite 300
Royal Oak, Michigan 48073
Tel: 248-544-5100

Daniel A. Small
Sharon Robertson
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, NW,
West Tower, Suite 500

Washington D.C. 20005-3964
Tel: 202-408-4600

David P. Dean
JAMES & HOFFMAN
1130 Connecticut Avenue, NW, Suite 950,
Washington, DC 20036
Tel: 202-496-0500

Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel M. Cohen
CUNEO GILBERT & LADUCA, LLP
106-A S. Columbus Street
Alexandria, VA 22314
Tel: (202) 789-3960
Fax: (202) 789-1813

Daniel E. Gustafson
GUSTAFSON GLUEK PLLC
120 So. 6th Street, Ste. 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

***Settlement Class Counsel***

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY
A. SUHRE on behalf of themselves and
others similarly situated,

                              Plaintiffs,

      v.

VHS of MICHIGAN, INC., d.b.a.
DETROIT MEDICAL CENTER, et al..,

                          Defendants.

Case No. 06-15601

Hon. Gerald E. Rosen

Magistrate: Donald A. Scheer

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISTRIBUTE SETTLEMENT FUNDS
AND PAY AND REIMBURSE EXPENSES**

## <u>TABLE OF CONTENTS</u>

**I. INTRODUCTION** ................................................................................3

**II. STATEMENT OF FACTS** ...............................................................5

   **A.** **Background** ...............................................................................5

   **B.** **Claims Administration.** ..........................................................7

      **1.** **Claim Form Mailing and Receipt** .................................7

      **2.** **Processing of Customized Claims.** ................................10

      **3.** **Processing of Generic Claims** ......................................11

      **4.** **Processing of Deficient Claims** ....................................13

   **C.** **Distribution of the Settlement Funds** ...................................14

   **III. CONCLUSION** ...............................................................................22

## STATEMENT OF ISSUES PRESENTED

1.  Should the Court approve distribution of the net settlement funds?

2.  Should the Court approve payment and reimbursement of expenses associated with the claims administration process?

Plaintiffs' Answer to Both Questions Presented: Yes.

# I.  INTRODUCTION

Plaintiffs move this Court for entry of the accompanying Distribution Order and request that the Court:

(1)     Approve the procedures used and actions taken by Rust Consulting ("Rust" or the "Claims Administrator") and Settlement Class Counsel in disseminating the customized and generic claim forms to potential members of the Settlement Class. The claim forms were the Court-approved means by which class members could seek to share in funds obtained in the settlements with Defendants St. John Health, Oakwood Healthcare, Inc., Bon Secours Cottage Health Services, William Beaumont Hospital, Mount Clemens General Hospital, Henry Ford Health Systems, and Trinity Health Corp. (jointly "Settling Defendants"). The total amount of such settlement funds, plus all accrued interest, minus all disbursements made with Court approval are referred to herein as the "Settlement Funds."

(2)     Approve the procedures used and actions taken by Rust and Settlement Class Counsel for the administration of the Settling Defendant Settlements (hereinafter the "Settlements").

(3)     Approve the claims submitted by the claimants (hereinafter the "Authorized Claimants") listed in Exhibit A to the Declaration of Stacy Roe, Senior Project Administrator for Rust who oversaw Rust's administration of the Settlements ("Roe Decl.").

(4)     Reject the 120 claims set forth in Exhibit B to the Roe Declaration which have been determined ineligible because either the claimants are not members of any of the Settlement Classes or they have not provided the necessary information (signed their form, provided a Social Security Number, or they have not provided the required documentation to support a claim if sent a Generic Claim Form) despite being given an opportunity to cure that deficiency, or they withdrew their claim or opted out of the only settlement class of which they were a member;

(5)     Reject the entitlement of the 15,138 persons who were sent claim forms set forth in Exhibit C to the Roe Declaration because they did not timely return a completed claim form;

(6)     Approve the disbursement of $52,846.62 from the Settlement Funds to reimburse Settlement Class Counsel for final expenses incurred (or to be incurred) in connection with the claims administration process, as described in the Declaration of Raymond J. Farrow ("Farrow Decl."), attached hereto as Exhibit 2.

(7)     Approve disbursement of $75,039.38 in addition to previous sums authorized ($163,468.00) from the Settlement Funds to pay Rust for its services and expenses administering the Settlements and the claims process, and for its anticipated future services and expenses to complete the claims process, as described in the Roe Declaration and Exhibit A to the Farrow Declaration.

(8)     Approve the withholding of applicable state and federal income taxes from class member distributions, as provided below and in the Roe Declaration.

(9)     Authorize Rust to distribute the Settlement Funds, net of any expenses and payments awarded pursuant to this motion (hereinafter the "Net Settlement Fund"), to the Authorized Claimants in proportion to their Relevant Pay, as provided by the Court-approved Plan of Allocation. The Authorized Claimants' percentage shares of the Net Settlement Fund, as calculated by Rust, appear in Exhibit A to the Roe Declaration (these percentages account for the fact that certain claimants are members of some but not all of the seven certified Settlement Classes). Federal and state income taxes will be withheld from each Authorized Claimant's distribution, as explained below.

In support of this Motion, Plaintiffs state the following:

## II.  STATEMENT OF FACTS

### A.     Background

The full history of this lengthy litigation through April of 2013 has been recounted multiple times for the Court, most recently in the Declaration of Mark A. Griffin submitted in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Trinity Health Corp. ECF No. 790.  Plaintiffs below discuss only events since that date or earlier events directly relevant to this Motion.

Most pertinent to this motion, Plaintiffs settled with the seven Settling Defendants for a total of $48,059,400.00. This Court granted final approval to each of the seven Settlements. ECF Nos. 717, 718, 719, and 824. On August 9, 2013, Plaintiffs requested that the Court: 1) approve three types of customized claim form[1] and a generic claim form; 2) approve Plaintiffs' proposed allocation plan for distributing the settlement money pro rata based on each Settlement Class member's eligible pay; 3) set a deadline of 20 business days after entry the Court's order to mail the claim forms to class members; and 4) require that completed claim forms be signed and mailed to the Claims Administrator, postmarked no later than 45 days after the date of mailing. ECF No. 812. On September 13, 2013 the Court issued its Opinion and Order regarding Plaintiffs' Motion for Class Certification (ECF No. 819) certifying a class.[2] The Court then granted Plaintiffs' Motion regarding claim procedures, including approving the Claim Forms to be sent to Settlement Class members, on October 24, 2013. ECF No. 824. The Court approved the mailing of three variants on the Custom Claim Form to be sent depending on which Settlement Class (or Classes) the claimant was a member of. The standard Custom Claim Form explained that those nurses were entitled to

---

[1] Described below.

[2] The Court had earlier, in April of 2013, ruled denying Defendants' *Daubert* challenge to the testimony of Prof. Orley Ashenfelter. ECF No. 793.

share in the net proceeds available from settlements with seven hospitals,
settlements amounting to $48,059,400. Advanced Practice Nurses ("APNs") were
sent a distinct Custom Claim Form explaining that they only belonged to the
Oakwood Settlement Class and so would be entitled to a share of the net proceeds
available from that settlement ($7,183,000). Nurses who only worked after
December 2006 were sent a distinct Custom Claim Form because they only belong
to the Beaumont and Trinity Settlement Classes, and they were informed that they
would be entitled to share in the net proceeds available from those settlements
($16,487,161). On March 7, 2014 this Court issued its Order Reinstating the
Court's September 13, 2013 Opinion on Plaintiffs' Motion for Class Certification.
ECF No. 842.

**B.  Claims Administration**

**1.  Claim Form Mailing and Receipt**

On November 21, 2011, Rust sent a claim form by first-class mail to the
26,797 addresses associated with the individuals to whom the notices of the
Settlements were mailed. Roe Decl. at ¶ 9. Rust sent each individual either a
customized claim form or a generic claim form. *Id.* An additional 41 claim forms
were later sent to persons who heard about the settlements and requested a claim
form ("Self-identifying Claimants"). *Id.* at ¶17; Farrow Decl. at ¶ 4.

Customized claim forms were sent to 23,949 individuals whose Relevant Pay information was in the database compiled by Plaintiffs' experts from the payroll and human resources data produced by Defendants. Each customized claim form stated the total amount of their Relevant Pay according to Defendants' data. Roe Decl. at ¶ 9. Class members had the option either to accept this figure or to dispute it and provide documentation to support the additional amount of Relevant Pay claimed.

The Generic Claim Form was mailed to 2,889 individuals whose pay information does not appear in Plaintiffs' experts' database or for certain other potential settlement class members. Roe Decl. at ¶¶ 9, 17; Farrow Decl. at ¶14.[3] This form required a claimant to state his or her Relevant Pay and provide supporting documentation. *Id.*

Both the customized and generic forms required claimants to certify their membership in the Settlement Class and the accuracy of the information they provided.

---

[3] Other circumstances that led to a nurse being sent a generic claim form were previously described in the declaration of Raymond J. Farrow in Support of Plaintiffs' Motion for Final Approval of Four Settlements and for Approval of Proposed Plan of Allocation ¶8. ECF No. 813.

Following the November 21, 2013 mailing, Rust, to the extent better addresses could be determined, promptly re-mailed claim forms that were returned as undeliverable with or without forwarding addresses. Roe Decl. at ¶¶10-12.

Settlement Class Counsel operated a toll-free telephone number, clearly printed on all of the customized and generic claim forms and listed on the website www.detroitnursewages.com, to field calls from potential class members who had questions or required assistance with the claims process. Farrow Decl.¶ 4. Between November 21, 2013 and June 30, 2014, over 1,400 calls have been made to this number (including hang-ups). Settlement Class Counsel and their staff have responded to every (non-hang-up) telephone call and to over 140 emails or faxes. *Id*. Some of the callers requested a claim form after learning of the Settlements and the claims process, and others nurses wrote directly to Rust requesting that they be sent a claim form. *Id*. After Settlement Class Counsel eliminated requests where the requesting nurse was demonstrably not a member of any of the Settlement Classes, Rust mailed 41 additional claim forms to Self-identifying Claimants. *Id.*; Roe Decl. at ¶ 17.[4]

Class Counsel also continued to operate the settlement website on which class members could view settlement-related documents or obtain contact

---

[4] Some of the nurses requesting forms were nurses who had already been sent custom forms – they were sent duplicate replacement forms.

information for the Claims Administrator and Settlement Class Counsel. Farrow Decl. at ¶ 6.

Rust received 10,835 claim forms (eliminating duplicates) postmarked on or before January 6, 2014, the deadline for submission of claims set by the Court. Roe Decl. at ¶ 13. Rust received 866 additional claim forms (eliminating duplicates) postmarked after the January 6, 2012 deadline, but received before June 30, 2014, *id.*, for a total of 11,701 claim forms received.[5]

### 2. Processing of Customized Claims.

Rust reviewed each returned Customized Claim Form to determine its timeliness and completeness and whether the claimant had disputed the pre-printed Relevant Pay amount. *Id.* at ¶¶ 13-15. If the Relevant Pay figure was disputed, Settlement Class Counsel reviewed the accompanying documentation provided by the claimant for authenticity and sufficiency. Farrow Decl. at ¶ 8. If the documentation (usually W-2 forms) satisfied these criteria, it was cross-checked against Defendants' payroll data to ensure that the claimant was a class member during all of the periods for which he or she submitted documentation. *Id.* at ¶ 9. If a claimant failed to provide adequate documentation or the payroll data indicated that the individual was not a class member during certain claimed portions of the

---

[5] Rust actually received 11,837 claim forms but determined that 136 were duplicates. Roe Decl. at ¶ 13.

class period, Settlement Class Counsel mailed a follow-up letter to the claimant allowing him or her an opportunity to cure the defect. *Id*. at ¶ 10. Even if the claimant failed to provide sufficient documentation within the specified timeframe, Settlement Class Counsel worked closely with their expert and Defendants' data to ensure that all Relevant Pay was properly accounted for. *Id*.

If an individual claimed additional Relevant Pay for the same time period and hospital as reflected in Plaintiffs' database, and the additional amount was supported by adequate documentation, the claimant was credited with the claimed amount. *Id.* at ¶ 11.

Settlement Class Counsel wrote to every individual who had disputed his or her Relevant Pay setting forth the decision that had been made and the reason for that decision. Each was given an opportunity to dispute that determination. A handful of people supplied additional information after receipt of that letter and their dispute was further reviewed in light of the additional information provided. *Id*. at ¶ 10.

### 3.    Processing of Generic Claims

Rust and Settlement Class Counsel followed a similar procedure for generic claimants. Specifically, Rust reviewed each returned Generic Claim Form to determine its timeliness and completeness. If a claimant provided documentation, it was reviewed by Settlement Class Counsel to determine its authenticity and

sufficiency. *Id.* at ¶¶ 14-17. Rust mailed follow-up letters to claimants who failed to provide adequate documentation and provided them with an opportunity to cure the defect within a specified time frame. Roe Decl. at ¶ 16. Even if the claimant failed to provide sufficient documentation, Settlement Class Counsel worked closely with their expert and Defendants' data to determine whether the claimant was a class member and, if so, the amount of the claimants' Relevant Pay. Farrow Decl. at ¶¶ 15-17.

The majority of Generic claimants who sent in documentation provided W-2 forms or paystubs to substantiate their claims. *Id.* at ¶ 17. Although a W-2 form or paystub can demonstrate that a claimant was paid a certain amount of wages by a Defendant hospital during the class period, it cannot establish that those wages were earned in an in-class job title. *Id.* In order to determine whether the claimant received the wages in an in-class job, Settlement Class Counsel provided lists of such claimants to their database experts with requests for relevant information. *Id.* at ¶ 18. Using the hospital databases, sometimes with needed assistance from their experts, it was possible to determine whether and when these individuals held in-class job titles, and the wages they received in such jobs during the class period. *Id.* Generic claims were disallowed or adjusted if Settlement Class Counsel's review revealed that the individual was not a class member during any of the class period or during less of the class period than claimed. *Id.* at ¶ 19.

Through this process Settlement Class Counsel were able to determine that 236 of the 276 returned Generic Claim Forms represented claims by Settlement class members who had adequately documented their Relevant Pay. The remaining 40 Generic Forms were filled out by people who were not members of any of the Settlement Classes. *Id*. at ¶ 20.

### 4. Processing of Deficient Claims

If a claim was deficient because it was not signed or was missing a social security number,[6] Rust mailed letters to these claimants notifying them of the deficiency and providing them up to 14 days to correct the problem. Roe Decl. at ¶ 13. Claimants challenging their relevant pay without having provided sufficient documentation or submitting generic claim forms without adequate documentation were also given time to correct those deficiencies. Farrow Decl. at ¶¶ 10, 19. Settlement Class Counsel reviewed and audited all additional information and documentation received in response to the deficiency letters, allowing, disallowing and adjusting claims as appropriate. *Id*. at ¶¶ 10, 22. Settlement Class Counsel were in regular telephone contact with many of these claimants throughout the cure periods in an effort to ensure that they understood the nature of the documentation required and to answer questions as needed. *Id*. at ¶ 23. Claimants received final determination letters that indicated whether their claim would be accepted in full,

---

[6] Claimants were required to provide social security numbers so that the Claims Administrator could discharge tax reporting and withholding requirements.

accepted in part, or denied. In addition, if applicable, the letter provided the claimant with his or her final Relevant Pay determination. *Id.* at ¶10; Roe Decl. at ¶ 16.

Throughout the entire claims process, Settlement Class Counsel engaged in extensive correspondence and communication with the claimants with the goal of ensuring that valid claimants received credit for all Relevant Pay and eliminating or reducing the number of contested rejections or reductions of claims that would have to be resolved by the Court. Farrow Decl. at ¶ 23. As of the date of this filing, Rust and Settlement Class Counsel are unaware of any unresolved objection to the proposed rejection or reduction of a claim. *Id.* at ¶ 25.

**C.    Distribution of the Settlement Funds**

As of June 30, 2014, the amount collected through the seven settlements to date, plus interest earned, less all amounts previously approved by this Court to be withdrawn amounts to $31,498,107.04. This amount is the $48,059,400 collected through the approved settlements plus accrued interest of $110,979.43, minus the following amounts:

- $10,000 paid for escrow fees;

- $91,912.99 paid for providing the CAFA Notices and Class Notices of the first three settlements (with St. John, Oakwood and Bon Secours);

- $119,849.37 paid for providing the CAFA Notices and Class Notices for the last four settlements (with Henry Ford, Beaumont, Trinity and Mt. Clemens);

- taxes, accounting and wiring fees of $12,166.77

- $30,000 in incentive awards for the Named Plaintiffs, Pat Cason-Merenda and Jeffrey Suhre;

- $16,001,860.77 awarded as reimbursement of out-of-pocket expenses and payment of attorneys' fees;

- $398,650.00 approved funds retained to pay the expected costs of trial;

- $163,468 in Rust's estimated expenses associated with the mailing of claim forms and in administering the claims process.

Farrow Decl. Ex. A.

The Net Settlement Fund to be distributed to Authorized Claimants consists of these monies minus any additional amounts which may be awarded by the Court to reimburse Settlement Class Counsel and Rust for expenses associated with administering the claims process above the sum estimated when the Court previously authorized payment of those costs, plus any additional interest earned (net of taxes and accounting fees) between June 30, 2014 and whenever these funds are transferred to Rust for distribution.

If the final expenses of Plaintiffs' counsel (detailed below) are reimbursed as requested, and the final charges and expenses of Rust are also paid as requested, then the Net Settlement Fund available for distribution to Authorized Claimants as of June 30, 2014 would be $31,370,221, and the average amount per recommended Authorized Claimant before tax withholding would be slightly above $2,700. *See* Farrow Decl. ¶¶ 27-30 and Ex. A.

In October of 2013, Settlement Class Counsel presented the Court with Rust's estimate that it would incur costs of $248,646 associated with the mailing of a Class Notice and in administering the claims process. *See* Supplemental Declaration of Mark A. Griffin in Support of Pending Motions ¶7 (ECF No. 822). These costs were in part costs already incurred by Rust for mailing the Class Notice (in the amount $85,178) plus $163,468 estimated by Rust as the costs it would incur in sending claims forms and otherwise completing the claims process.

When approving the final settlements and the proposed plan of allocation, this Court emphasized to Settlement Class Counsel the importance of allowing claimants to be able to communicate with representatives of Class Counsel knowledgeable about the litigation rather than having Rust deal with all claimant queries. To that end, the Claims Forms and settlement website notified claimants of a telephone number attended to by paralegals and attorneys almost all of whom who had worked on this litigation since its inception. Settlement Class Counsel and their staff also took responsibility for mailing responses to claimants who were disputing aspects of their claim, persons requesting claim forms who were determined not to be members of any of the Settlement Classes, and dealing with numerous other communications with claimants.[7] The number of such queries and

---

[7] Rust dealt with one mailing, to persons who submitted generic claim forms. Those letters were prepared by Settlement Class Counsel but mailed by Rust.

16

the number of claim forms that required individual attention were significant.
Farrow Decl. ¶¶ 4, 8, 13, 20. Almost 1,000 of the submitted claim forms required
analysis and assistance from the database experts retained by Class Counsel to
extract relevant data from the hospitals' numerous (and disparate) human resource
databases to resolve issues with those claims. *Id*. ¶¶ 13, 20. Those same database
experts analyzed the requests by Self-identifying Claimants as to their membership
in one of the settlement classes. Roe. Decl. ¶17; Farrow Decl. ¶4. As a result, the
actual costs incurred to date and estimated to complete the claims distribution
process have proven to be higher than expected.

As of June 30, 2014, Settlement Class Counsel have incurred (or estimate
they will incur based on Rust's calculations of costs to complete the process of
distributing funds) $27,807.25 paid in fees to database experts at Cornerstone
Research and their economic experts verifying employment histories for persons
challenging their Relevant Pay or returning generic Claim Forms, Farrow Decl. at
¶ 27, $8,539.37 in costs incurred by Keller Rohrback for mailing, printing,
telephone costs and other similar items administering the claims process, *id*., plus
$238,507.38 in expenses to be paid to Rust Consulting for administering the claims
process, as explained in the Roe Declaration. Roe Decl. at ¶¶ 22-24 and Ex. D (this
amount equals the $163,468 previously estimated by Rust in June of 2013 and
already approved as a set-aside by the Court in its Order of October 24, 2103, plus

$75,039.38 in additional costs that Rust now estimates based on work done to date). Rust's work includes, without limitation, mailing the claim forms to class members, processing and auditing claim forms, providing information to, and responding to queries from Settlement Class Counsel about claims submitted, identifying deficient or rejected claims, mailing deficiency letters, notifying claimants of the status of their claim, and reviewing and auditing all attempts to cure deficient claims. *Id.* In addition, when sums are withdrawn from the Accounts in which they are being held, certain accounting costs, estimated to equal $6,500 will be incurred.  Finally, based on past experience, even when Authorized Claimants are sent their checks, there will inevitably be a number who will have follow-up queries or issues to be resolved. Settlement Class Counsel will maintain the toll-free number opened for this case in order to deal with such inquiries. Counsel estimate, based on the amount they spent to date and their experience in other litigation, that these costs will likely amount to $10,000. Settlement Class Counsel are requesting reimbursement of these additional expenses, whether incurred or anticipated, beyond those previously approved at this time. Farrow Decl. at ¶ 25. The total sum requested for all these items equals $123,866. *Id.* Ex. A.

The claims process had the overriding goal that all legitimate claims of class members be accepted and paid out of the Net Settlement Fund. It appears that

Rust's administration, with the substantial assistance and oversight of Settlement

Class Counsel, has resolved all disputes with claimants that originally contested

the proposed rejection or reduction of their claims. As of this filing, Rust and

Settlement Class Counsel are unaware of any contested claims that remain

unresolved. Rust will provide further services and incur substantial additional

expenses and charges in the distribution and post-distribution phases associated

with the Settlements, as described in the Roe Declaration. Roe Decl. at ¶¶22-24.

Federal and state taxing authorities require that employer and employee

taxes be withheld on the wage portion of each claimant's distribution. Consistent

with the advice of tax attorneys who have been consulted by Settlement Class

Counsel, Plaintiffs propose to treat each Authorized Claimant's distribution as

wages and withhold federal and state taxes therefrom. Rust, through its tax

department, will determine the tax liability of each Authorized Claimant and

withhold that amount. *Id.* ¶18.

Of the 11,701 claims received as of June 30, 2014 (eliminating duplicates),

Rust and Settlement Class Counsel have determined that 10,835 were timely

submitted, and that an additional 866 claims were untimely because they were

postmarked after the submission deadline of January 6, 2014. *Id.* at ¶ 13. Plaintiffs

propose to include these late claims (if otherwise determined valid) in the

distribution because their tardiness caused no prejudice and they are otherwise

valid.[8] Rust has provided a spreadsheet identifying the claims recommended for approval by their claim number, the validated Relevant Pay amount, and the proposed *pro rata* allocation of the Net Settlement Fund. *Id.*, Exhibit A. Plaintiffs seek the Court's approval to distribute that pro rata portion of the Net Settlement Fund to each Authorized Claimant, after withholding applicable taxes.[9]

---

[8] The timing of the mailing of claim forms meant that while the Court allowed 45 days for people to return forms it turned out that this period extended over Thanksgiving, Christmas and New Year. In addition the claim form deadline date of January, 7, 2014, was the day of one of Detroit's worst snowstorms on record. Many claimants informed Settlement Class Counsel that they were physically unable to get to a mailbox that day or for some days after. Settlement Class Counsel have also been informed by claimants that some claim forms took months to be delivered by the post office (even if properly addressed). Many claimants provided individual explanations for filing their claim forms late (such as being hospitalized or out of the country for an extended time). Farrow Decl. ¶ 5. For all these reasons, Settlement Class Counsel, consistent with their desire to distribute these funds to as many eligible nurses as possible, recommend acceptance of all late filed claim forms received by the Claims Administrator through June 30, 2014.

[9] Plaintiffs propose one deviation from a strict pro rata distribution based on Relevant Pay. Some individuals have filed claim forms despite having very little Relevant Pay during the Settlement Class Period. For instance, claimant 3277546 only earned $119.97 in the relevant time frame. Based on a strict pro rata allocation, those people would receive a very small check (for example, claimant 3277546's share of the Net Settlement Fund, before taxes, would be $0.73). Rather than send checks so small they will surely not be cashed, and because those claimants have taken the time to complete a claim form, review the materials, and provide all relevant information, Plaintiffs propose that all claimants be allocated a gross amount of at least $15. Based on preliminary calculations, this decision would affect 39 people who have submitted claims with a sufficiently low Relevant Pay amount that their strict pro rata share would be less than $15.

Settlement Class Counsel has determined that 120 persons who returned a claim form are ineligible to receive any of the Net Settlement fund because the claimant: (1) held only an out-of-class job title during the class period; (2) worked only at a non-Defendant hospital during the class period; (3) failed to provide adequate documentation (despite being given an opportunity to cure) and could not be verified as a class member through Defendants' payroll data; (4) failed to sign the claim form (despite being given an opportunity to cure); (5) failed to provide a social security number (despite being given an opportunity to cure), (6) had previously opted out of the only settlement for which the claimant was a Settlement Class member;[10] or (7) subsequently requested that she be allowed to withdraw her claim. *Id.* at ¶ 19. These claims are listed in Exhibit B to the Roe Declaration along with the claimed Relevant Pay amount and the reason for their proposed rejection. Plaintiffs request that the Court reject all of these claims. *Id.*

In addition, 15,138 persons who were sent claim forms are deemed ineligible because they did not return their Claim Form by June 30, 2014.[11] These potential claimants are listed in Exhibit C to the Roe Declaration.

---

[10] This individual was an APN who had opted out of the Oakwood settlement, the only settlement class to include APNs.

[11] This number almost certainly overstates the number of distinct potential claimants at issue since, in order to ensure that everyone got a claim form, some people were sent multiple claim forms (at different addresses or under different

In summary, the claims process—by which Rust, under the supervision and with the assistance of Settlement Class Counsel, has determined the proper allocation of the Net Settlement Fund among class members—has produced the following results:

| | |
|---|---|
| Customized Claims recommended for approval: | 11,349 |
| Generic Claims recommended for approval: | 232 |
| Customized Claims recommended for acceptance of challenge to stated pay: | 331 |
| Customized Claims recommended for rejection of challenge to stated pay: | 375 |
| Generic Claims recommended for rejection: | 40 |

## III.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court approve the procedures used and actions taken by Rust and Settlement Class Counsel for the administration of the Settlements and approve the distribution of the Settlement Funds as set forth in this Motion and the accompanying proposed Distribution Order.

//

//

names) and some claim forms were sent to people for whom it was uncertain whether they were members of any Settlement Class.

DATED this 7th day of July 2014.

Respectfully submitted:

KELLER ROHRBACK L.L.P.

By */s/Raymond J. Farrow*
Mark A. Griffin
Raymond J. Farrow
Lynn L. Sarko
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel : 206-623-1900

Stephen Wasinger
STEPHEN F. WASINGER PLC
32121 Woodward Avenue, Suite 300
Royal Oak, Michigan 48073
Tel: 248-544-5100

Daniel A. Small
Sharon Robertson
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Avenue, NW,
West Tower, Suite 500
Washington D.C. 20005-3964
Tel: 202-408-4600

David P. Dean
JAMES & HOFFMAN
1130 Connecticut Avenue, NW, Suite 950,
Washington, DC 20036
Tel: 202-496-0500

Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel M. Cohen
CUNEO GILBERT & LADUCA, LLP
106-A S. Columbus Street
Alexandria, VA 22314
Tel: (202) 789-3960
Fax: (202) 789-1813

Daniel E. Gustafson
GUSTAFSON GLUEK PLLC
120 So. 6th Street, Ste. 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

***Plaintiffs' Counsel***

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY
A. SUHRE on behalf of themselves and
others similarly situated,

                Plaintiffs,

   v.

VHS of MICHIGAN, INC., d.b.a.
DETROIT MEDICAL CENTER, et al..,

                Defendants.

Case No. 06-15601

Hon. Gerald E. Rosen

Magistrate: Donald A. Scheer

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2014 I served the attached document(s) on the

parties listed below as indicated:

**VIA ECF:**

| | | |
|---|---|---|
| David B. Gunsberg | Rodger Young | Sara Klettke McWilliams |
| Sandra D. Hauser | Shari Ross Lahlou | David Marx, Jr. |
| David L. Hanselman, Jr. | Stephen Y. Wu | Terrence J. Miglio |
| Bruce L. Sendek | Michael R. Turco | Thomas M.J. Hathaway |
| Sheldon H. Klein | David A. Ettinger | Michael Shumaker |
| Jill L. Marr | Margo Weinstein | Christopher Q. King |
| Corey M. Shapiro | Mark T. Nelson | Fred K. Herrmann |

And I have mailed by United States Postal Service the paper to the following

non-ECF participants: N/A

*/s/ Raymond J. Farrow*
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Ph: 206-623-1900
rfarrow@kellerrohrback.com