UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and
JEFFREY A. SUHRE, on behalf of
themselves and others similarly
situated,

    Plaintiffs,                                Case No. 06-15601

v.                                         Hon. Gerald E. Rosen

VHS OF MICHIGAN, INC., *et al.,*

    Defendants.
_____/

**OPINION AND ORDER REGARDING
DEFENDANT'S EMERGENCY MOTION TO COMPEL
PRODUCTION OF PREVIOUSLY PRODUCED DOCUMENTS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         August 6, 2015        

PRESENT: Honorable Gerald E. Rosen
                        Chief Judge, United States District Court

Through the present motion filed on July 21, 2015 — less than two months before the scheduled September 15, 2015 trial date in this long-pending action — Defendant VHS of Michigan, Inc. ("VHS") requests that the Court enter an order directing Plaintiffs to provide VHS with access to "all documents produced in this case by any party or third party." (VHS's 7/21/2015 Motion to Compel, Br. in Support at 6.) While this requested relief is breathtaking in scope and seemingly antithetical to our adversary system of justice, VHS maintains that a grant of access to the discovery materials compiled by

Plaintiffs in this lengthy litigation is warranted due to (i) VHS's recent discovery that its own database of such materials "d[oes] not contain a large number of the documents produced in this case," (*id.* at 2), and (ii) VHS's asserted inability to obtain copies of these documents from its co-Defendants[1] or from third parties. Plaintiffs oppose VHS's motion on a number of grounds, arguing principally (i) that VHS is guilty of undue delay, both in its discovery of apparent gaps in its document database and in seeking relief from the Court in the wake of this discovery, (ii) that VHS has failed to identify any basis for the relief it seeks, apart from equitable considerations that militate against its position, and (iii) that allowing VHS to gain access to the entirety of Plaintiffs' document database would threaten to disclose the protected work product of Plaintiffs' counsel.

As discussed below, the Court shares many of Plaintiffs' concerns regarding the breadth of the relief sought by VHS and the absence of grounds for this relief. Accordingly, the Court directs Plaintiffs to provide copies, at VHS's expense, of a far more limited and specifically identified set of materials compiled by Plaintiffs in the course of discovery.

## I. BACKGROUND

At the outset of this litigation, Defendant VHS — then known as the Detroit Medical Center ("DMC") — was jointly represented by the law firm of Dickinson Wright

---

[1] Each of VHS's seven co-Defendants has reached a settlement with Plaintiffs, leaving VHS as the sole remaining Defendant against which Plaintiffs will be litigating their claims at the forthcoming trial.

2

and by in-house counsel from DMC's Office of Legal Affairs.  Following Dickinson Wright's withdrawal in September of 2008, VHS was represented solely by in-house DMC attorneys throughout the remainder of the discovery period and during the briefing process for Defendants' summary judgment motions, the parties' motions challenging the proposed testimony of various expert witnesses, and Plaintiffs' motion for class certification.

In late 2010, DMC was acquired by Vanguard Health Systems.  On April 2, 2012 — just a few days after the Court ruled on Defendants' summary judgment motions — Rodger Young and Sara MacWilliams from the firm of Young & Associates entered their appearance on behalf of VHS.  VHS remained jointly represented by in-house counsel and Young & Associates until October 11, 2012, when the attorneys from DMC's Office of Legal Affairs withdrew their appearances.

In mid-2013, VHS changed hands again when Vanguard was purchased by Tenet Healthcare Corp.  Shortly thereafter, the Court issued its September 13, 2013 opinion and order granting Plaintiffs' motion for class certification.  When VHS subsequently sought leave from the Sixth Circuit Court of Appeals to appeal from this ruling, it was represented both by counsel from Young & Associates and by attorneys from the law firm of Gibson Dunn, and several attorneys from the Gibson Dunn firm have since filed papers on VHS's behalf or entered appearances as counsel for VHS in the proceedings before this Court.  As trial approaches, then, VHS is presently represented by attorneys from both Young & Associates and Gibson Dunn.

According to the declaration of attorney Sara MacWilliams that accompanies VHS's present motion, these various changes in the ownership and legal representation of VHS failed to trigger any sort of inquiry or investigation into the state of the record compiled by VHS's in-house counsel during the course of the lengthy discovery process in this litigation. Rather, Ms. MacWilliams states that when Young & Associates began representing VHS in April of 2012, she merely "understood" — on what basis, she does not say — that the document database maintained by VHS's in-house counsel "contained a complete set of the documents produced in this case." (VHS's 7/21/2015 Motion to Compel, Ex. B, MacWilliams 7/21/2015 Decl. at ¶ 4.) Although VHS was jointly represented by Young & Associates and in-house counsel for over six months — from April 2 to October 11, 2012 — Ms. MacWilliams explains that the Young and Associates attorneys did not review VHS's document database during this period of overlapping representation, because "[a]ccess to [this] online database had been turned off to save cost" and "remained closed while the class certification issue was under consideration and then later on appeal." (*Id.*)[2]

In March of 2015, the Court convened a status conference and entered an order setting this matter for trial on September 15, 2015. This order apparently prompted VHS

---

[2]In their response to VHS's motion, Plaintiffs state that they too had "put their own document database in a 'deep freeze' for several years as a cost saving measure." (Plaintiffs' 7/27/2015 Response at 7.) Plaintiffs further state, however, that when they recently asked their database vendor "what it would have taken to have temporarily reactivated their database . . . to inventory its contents," the vendor responded that this could have been done in less than a day and would have cost only a few hundred dollars. (*Id.*)

4

to reactivate its document database, but Ms. MacWilliams soon "realized that the document database did not contain a large number of the documents produced in this case." (MacWilliams 7/21/2015 Decl. at ¶ 5.) In the wake of this discovery, VHS reached out to counsel for its former co-Defendants and was able to obtain copies of at least some of the documents it was missing, but VHS remained "unable to obtain large numbers of produced documents." (*Id.* at ¶ 6.) Accordingly, counsel for VHS concluded "in early July 2015" that "there simply [wa]s no way to compile a complete set of the documents produced in this case from [VHS]'s former co-defendants," and that Plaintiffs were "the only party that possesses a complete set of documents produced in this case." (*Id.* at ¶¶ 8-9.)

In light of this predicament, counsel for VHS approached Plaintiffs' counsel and asked for a copy of the discovery record compiled by Plaintiffs, with VHS offering to reimburse Plaintiffs for the costs incurred in fulfilling this request.[3] Plaintiffs' counsel, however, denied this request. At around the same time, counsel for VHS learned that Plaintiffs' counsel was sending letters to VHS's settling co-Defendants that identified certain of Plaintiffs' trial exhibits and promised to make electronic copies of these documents available to these former parties. Yet, when VHS discovered that it did not have many of the documents listed in these letters and asked Plaintiffs' counsel to make

---

[3]Although VHS apparently made their initial request to Plaintiffs in early July of 2015, this is not entirely clear from the record. The earliest correspondence provided as an exhibit to VHS's motion is dated July 20, 2015, (*see* VHS's 7/21/2015 Motion to Compel, Ex. A), but this correspondence addresses a related matter (discussed immediately below), and does not necessarily reflect VHS's earliest effort to obtain documents from Plaintiffs.

them available to VHS through the same means offered to the settling co-Defendants, Plaintiffs again refused this request.  Having been unable to prevail upon Plaintiffs to make their document database available so that VHS could secure copies of the documents missing from its own database, VHS now seeks an order from the Court compelling Plaintiffs to provide access to all documents produced by any party or third party in the course of this litigation.

## II.  ANALYSIS

By any measure, the relief sought in the present motion is remarkable in its scope — and, so far as can be discerned from the parties' briefs and the Court's own research, wholly unprecedented.  In essence, VHS seeks access to the entirety of the record compiled and maintained by an opposing party during a discovery period that has long since closed, so that it may construct its own version of this discovery record in a form that suits its present counsel.  Contrary to VHS's assertion, it would require far more than "professional courtesy" for Plaintiffs and their counsel to meet this demand.  (VHS's 7/30/2015 Reply at 1.)  Rather, the Court agrees with Plaintiffs that VHS's request is tardy, inadequately justified, lacking in legal support, and insufficiently sensitive to legitimate work product concerns.  Accordingly, the Court awards far more limited relief to VHS, and structures this relief in a manner that places the burden squarely where it belongs – on VHS.

As a threshold matter, while VHS breezily insists that it "does not seek plaintiffs' work product," (*id.* at 4), the Court readily concludes that a collection of documents that

6

Plaintiffs' counsel saw fit to gather, maintain, and organize into a database during the course of discovery qualifies as protected work product. As the Supreme Court explained in its seminal discussion of the work product rule, "[p]roper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference," and it thus is "essential" that a lawyer be permitted to carry out these duties "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S. Ct. 385, 393 (1947). Justice Jackson put the point more forcefully in his concurrence in *Hickman,* observing that "a common law trial is and always should be an adversary proceeding," and that "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Hickman,* 329 U.S. at 516, 67 S. Ct. at 396 (Jackson, J, concurring); *see also* Fed. R. Civ. P. 26, advisory committee's note to 1970 amendments (explaining that "the requirement [under Rule 26] of a special showing for discovery of trial preparation materials reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side").

More specifically, the courts have recognized that "[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research." *Shelton v. American Motors Corp.,*

7

805 F.2d 1323, 1329 (8th Cir. 1986); *see also Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir. 1985); *FDIC v. Wachovia Insurance Services, Inc.,* 241 F.R.D. 104, 107 (D. Conn. 2007). While VHS suggests that Plaintiffs can avoid revealing their counsel's selection and compilation of documents by "simply provid[ing] all . . . documents" produced by anyone at any time during the discovery period, (VHS's 7/30/2015 Reply at 5), this assumes without any basis (i) that Plaintiffs and their counsel have chosen to preserve all such documents produced during discovery, (ii) that their organization of the documents they chose to retain would not be revealed through the act of granting VHS access to these materials, and (iii) that Plaintiffs and their counsel have not annotated or otherwise modified their copies of the documents produced during discovery. The Court does not know whether any of these assumptions are valid, and it declines to order Plaintiffs' counsel to disclose the strategic decisions made on each of these matters.[4]

Having determined that VHS's request implicates legitimate work product concerns, the Court turns to the specific circumstances that have led to this request. First, it bears emphasis that VHS's present predicament is entirely of its own making, and cannot be attributed to any failure by Plaintiffs (or any other party) to comply with any discovery request. Thus, Plaintiffs correctly observe that VHS's present motion, despite

---

[4]Alternatively, VHS suggests that Plaintiffs could erect some sort of "firewall" that would allow VHS to gain access to their document database without disclosing any work product. (*Id.* at 4-5.) Yet, while Plaintiffs note that such a scheme might have been workable earlier in this litigation, they aptly state that "[i]t is quite a different matter" on the eve of trial to "try to restructure a database that was not created with firewalls" so that it "would allow only appropriate sharing between opposing parties." (Plaintiffs' 7/27/2015 Response at 8.)

its caption, cannot be characterized as seeking to compel discovery within the meaning of Fed. R. Civ. P. 37(a), nor can VHS point more generally to any rule of discovery that could support an award of the relief sought in its present motion.  VHS presumably was given all the materials it requested during the discovery period, and it simply failed — perhaps by deliberate choice, as discussed below — to retain all of these materials.

Next, the Court agrees with Plaintiffs that VHS failed to act with reasonable diligence in alerting the Court to its present dilemma.  As Plaintiffs observe, it defies belief that as VHS brought in two new law firms to represent it and underwent two changes in ownership, no VHS official or attorney ever thought to investigate the state of the document database compiled by VHS's initial in-house counsel, but instead merely assumed or "understood," (MacWilliams 7/21/2015 Decl. at ¶ 4), that this database contained a complete set of documents produced by all parties and non-parties throughout this litigation.  Moreover, even assuming, as VHS states in its motion, that this inquiry was at long last triggered by the Court's entry of a March 27, 2015 order setting this matter for a September trial, VHS nonetheless waited nearly four more months, until July 21, 2015, before informing the Court of its discovery that its document database was missing a considerable portion of the documents produced in the course of this litigation. This delay and lack of diligence leaves the Court in a poor position to fashion relief that could save VHS from its considerable predicament, avoid the imposition of costly and time-consuming burdens on Plaintiffs and their counsel as they prepare for trial, and ensure that the existing September 15, 2015 trial date is not postponed.

The challenge of fashioning meaningful and appropriate relief is further exacerbated by VHS's failure to specify the documents it seeks or identify the reason why these documents were not retained in its database. As to the former question, VHS pleads that it is difficult to precisely identify or describe documents that it does not possess. While this is true, VHS fails to suggest why the burden of its lack of knowledge on this point should be placed upon Plaintiffs, and should lead to a directive that Plaintiffs open their entire document database to VHS's scrutiny so that it may pick and choose the documents it desires. Regarding VHS's lack of an explanation for the incomplete state of its document database, it is noteworthy that this database evidently contains some documents but not others, suggesting the possibility that VHS's prior, in-house counsel made a strategic decision not to retain the entirety of the documents produced by all parties during discovery. Significantly, VHS has nothing to say on this score in its submissions in support of its present motion, offering only the bare "under[standing]" of its present counsel that the document database maintained by its prior counsel "contained a complete set of the documents produced in this case." (MacWilliams 7/21/2015 Decl. at ¶ 4.)[5] As Plaintiffs correctly observe, VHS has "failed to establish that its failure to possess the full discovery record in this case was not by design," and it would be inappropriate to award VHS's current counsel a "do-over" of strategic decisions made by

---

[5]As noted earlier, VHS's current attorneys likely could have confirmed this understanding at minimal cost upon entering their appearances in this case, but they either failed or chose not to do so.

prior counsel that now appear to be undesirable or unwise. (Plaintiffs' 7/27/2015 Response at 5.)

In light of all these considerations, the Court readily concludes that VHS has not demonstrated an entitlement to the sweeping relief sought in its motion. Simply stated, nothing in the record suggests that Plaintiffs committed any discovery violation or engaged in any inequitable conduct, such that it would be appropriate to impose a significant burden on Plaintiffs and their counsel to compensate for the errors or strategic decisions made by VHS and its counsel.

Nonetheless, in furtherance of VHS's legitimate desire that its present counsel be fully prepared for the forthcoming trial, the Court finds that more modest relief is warranted. First, the Court directs Plaintiffs and their counsel to provide VHS with copies of only those documents that VHS is able to identify with specificity as produced during the course of discovery, with VHS bearing the full cost of Plaintiffs' retrieval and copying of these specified documents. Next, Plaintiffs must fulfill an obligation they have acknowledged in their response to VHS's motion, (*see* Plaintiffs' 7/27/2015 Response at 12) — namely, to provide copies to VHS of all documents on Plaintiffs' exhibit list and all other documents upon which Plaintiffs intend to rely at trial, with these copies to be furnished by the August 20, 2015 deadline for the parties to submit their exhibit lists.[6]

---

[6] In an August 3, 2015 supplemental filing, VHS appears to suggest that Plaintiffs are threatening to withhold copies of some of these documents until after they secure authentications

---

from the former Defendant hospitals from which these documents were obtained.  To the extent that this authentication process might extend beyond the August 20, 2015 deadline for the submission of exhibit lists, the Court cautions Plaintiffs that they must provide VHS with copies of *all* documents identified on their exhibit list and *all* documents upon which they intend to rely at trial by August 20, regardless of whether they have secured the desired authentications of these documents.  In addition, the Court urges the parties and their counsel to cooperate in the exchange of documents on their respective exhibit lists ***prior to*** the August 20 deadline, so that the parties are better able to raise any desired objections to these documents in the proposed joint final pretrial order that also is due by this same August 20 deadline.

### III.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant VHS's emergency motion to compel Plaintiffs to provide produced documents (docket #871) is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order.

                              s/Gerald E. Rosen
                              Chief Judge, United States District Court

Dated:  August 6, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 6, 2015, by electronic and/or ordinary mail.

                              s/Julie Owens
                              Case Manager, (313) 234-5135