# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAT CASON-MERENDA and )
JEFFREY A. SUHRE on behalf of )
themselves and others similarly situated, )    Case No. 06-15601
                     Plaintiffs, )
    v. )    Hon. Gerald E. Rosen
                                 )
VHS of MICHIGAN, INC., d/b/a )
DETROIT MEDICAL CENTER. )
                                 )
                Defendant. )
_____ )

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH VHS of MICHIGAN d/b/a DETROIT MEDICAL CENTER

Plaintiffs move the Court for an Order granting preliminary approval of the Class Action Settlement Agreement and Release ("Settlement Agreement") with Defendant VHS of Michigan, Inc., d/b/a Detroit Medical Center. ("DMC") that was achieved on August 31 following this Court's Final Pretrial Conference. The Settlement Agreement provides for the payment of $42,000,000 in exchange for a release of all claims brought by Plaintiffs and the Class identified in that agreement. Plaintiffs propose to allocate this Settlement Fund among members of the Class in the same manner as the monies collected through the previous seven settlements – *pro rata* based on pay earned during the class period.

This settlement was negotiated through lengthy and intense negotiation

including multiple rounds of mediation under the auspices of the Court and the Court-appointed Settlement Master, Judge Layn R. Phillips (Retired). The Settlement will provide very significant benefits to the Settlement Class, while removing the risk, cost and delay associated with further litigation against DMC. The Settlement Agreement is attached as Exhibit A to the Declaration of Raymond J. Farrow in Support of Plaintiffs' Motion for Preliminary Approval of the DMC Settlement ("Farrow Decl.").

Dated September 11, 2015

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By: /s/Raymond J. Farrow
       Mark A. Griffin
       Raymond J. Farrow
       Tana Lin
       Lynn L. Sarko
       1201 Third Avenue, Suite 3200
       Seattle, WA 98101-3052
       Tel: (206) 623-1200
       Fax: (206) 623-3384

Daniel A. Small
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue NW
Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
JAMES & HOFFMAN, PC
1130 Connecticut Avenue NW
Suite 950
Washington, DC 20036
Tel: (202) 496-0500
Fax: (202) 496-0555

E. Powell Miller (P39487)
THE MILLER LAW FIRM, PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200

Daniel E. Gustafson
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**

Joseph Goldberg
FREEMAN, BOYD, HOLLANDER,
GOLDBERG, URIAS, & WARD, PA
20 First Plaza, Suite 700
Albuquerque, NM  87102
Tel: (505) 244 7520

**Lead Trial Counsel**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| PAT CASON-MERENDA and | ) | |
| JEFFREY A. SUHRE on behalf of | ) | |
| themselves and others similarly situated, | ) | Case No. 06-15601 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Gerald E. Rosen |
|  | ) | |
| VHS OF MICHIGAN, INC, d/b/a/ | ) | |
| DETROIT MEDICAL CENTER, | ) | |
|  | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH
## <u>VHS OF MICHIGAN, INC., d/b/a DETROIT MEDICAL CENTER</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................4

II  BACKGROUND ................................................................................5

    B. The prior settlements ....................................................................7

    C. The current settlement agreement ................................................8

        1.  The settlement amount .........................................................8

        2.  Release .................................................................................8

    D. The timeline ..................................................................................9

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL. ..........10

    A. The standard for granting preliminary approval ..........................11

    B. The proposed settlement is in the range of possible approval as fair, reasonable and adequate. ..............................................................12

    C. The proposed settlement does not disclose grounds to doubt its fairness. ......14

    D. The proposed settlement achieves an excellent result for the class, particularly given the expense, duration and uncertainty of continued litigation. ..........................................................................................15

IV. NO FURTHER OPPORTUNITY TO OPT-OUT OF THE CLASS IS REQUIRED OR SHOULD BE OFFERED. ..................................................17

V.  THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO CLASS MEMBERS. ..................................................................................................18

VI. CONCLUSION ...........................................................................................20

i

## **STATEMENT OF ISSUES PRESENTED**

1.      Whether the Court should preliminarily approve the Settlement Agreement with DMC.

2.      Whether the Court should approve the form and method of Class Notice.

3.      Whether the Court should set a Fairness Hearing, along with deadlines for Class Counsel to submit their motion for final approval of the proposed Settlement Agreement and their motion for award of attorneys' fees and reimbursement of costs.

# STATEMENT OF
# MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008)

*Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006)

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93 (W.D. Mich. 1998)

*Reed v. Rhodes,* 869 F. Supp. 1274 (N.D. Ohio 1994)

Fed. R. Civ. P. 23(e)

## I.   INTRODUCTION

Plaintiffs are pleased to present to the Court this proposed settlement with the last remaining defendant in this litigation, VHS of Michigan Inc. d/b/a Detroit Medical Center ("DMC"), a settlement that was achieved with the Court's assistance on August 31, 2015, immediately following this Court's Final Pretrial Conference. If approved, this settlement will fully resolve this litigation and provide Detroit's nurses with a final settlement payment of $42,000,000, an amount almost equal to the total recovered from the previous seven settling defendants, resulting in a total recovery for the Class of over $90 million from this litigation.

This memorandum sets forth the reason why Plaintiffs' counsel believe that under all applicable standards this settlement is appropriate for preliminary approval, and why, therefore, the Court should enter an order:

(1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the Class;

(2) approving the Legal Notice of Class Action Settlement and notice plan;

(3) appointing Rust Consulting as the Settlement Administrator

4

(4) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for attorneys' fees and reimbursement of costs and expenses;

(5) establishing a deadline for the filing of objections by members of the Class;

(6) setting a date for a hearing on final approval of the proposed settlement; and

(7) ordering a stay of all proceedings against DMC except those proceedings provided for or required by the Settlement Agreement.

## II    BACKGROUND

The history of this litigation has been set forth in many prior filings, including the settlement papers associated with each of the previous seven settlements. *See e.g.*, Plaintiffs' Motion for Preliminary Approval of Settlement with Mt. Clemens (ECF No. 75); Plaintiffs' Motion for Reimbursement of Expenses and Payment of Incentive Award to Plaintiffs (ECF No. 692). Because this Court is intimately familiar with that history, Plaintiffs provide an abbreviated statement, focusing on activity since the date of the last settlements.

Plaintiffs filed this lawsuit individually and as representatives of a class of hospital nurses working for eight Detroit area hospitals on

December 12, 2006. The operative Third Amended Compliant (ECF No. 67) alleged an antitrust conspiracy aimed at the hospitals' nurse employees.

Plaintiffs analyzed over 8.2 million pages of documents produced by Defendants and third parties, analyzed enormous quantities of human resources and payroll data produced by the Defendants regarding the compensation of their RN employees, and have taken or defended a total of over ninety party and third-party depositions, including multi-day depositions of six expert witnesses.

On March 22, 2012, the Court issued an Opinion and Order Regarding Defendants' Motions for Summary Judgment dismissing one of Plaintiffs' two antitrust claims in this matter (ECF No. 737), but finding material issues of fact existed that required jury resolution as to Plaintiffs' claim that the Defendants conspired to exchange confidential wage information with the effect of suppressing their nurse employees' pay.

On September 13, 2013, the Court certified the Class (ECF No. 819). DMC tried and failed multiple times to reverse that ruling in the Sixth Circuit. DMC's first Rule 23(f) petition was denied on January 6, 2014, but the Sixth Circuit directed this Court to reconsider its ruling in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). After another round of briefing, this Court reinstated class certification. ECF No. 842. DMC moved

again under Rule 23(f) and that petition was denied on February 3, 2015. Finally, DMC filed a petition for rehearing *en banc*, but on April 28, 2015, the Sixth Circuit denied that petition, noting that no judge requested a vote. The mandate issued on May 6, 2015. Class Notices were mailed to approximately 24,500 Registered Nurses. Only three nurses excluded themselves from the Class.[1]

### B. The prior settlements

Settlements with three Defendants, St. John Health, Oakwood Healthcare Inc., and Bon Secours Cottage Health Services, were approved by this Court on September 8, 2010. ECF Nos. 717, 718, 719. In total, those settlements recovered $21,091,475 for the Class ($13,583,475 from St. John, $7,183,000 from Oakwood, and $325,000 from Bon Secours). Subsequently, settlements have also been approved with William Beaumont Hospital, Mt. Clemens General Hospital, Henry Ford Health Services, and Trinity Healthcare for $11,342,904, $2,036,791, $8,443,973, and $5,144,257 respectively. ECF No. 824.

Following the procedure and Plan of Allocation approved by the Court, ECF No. 812, all funds from these settlements have been distributed to 11,342 nurses who filed valid approved claims. ECF No. 860.

---

[1] This is consistent with the very low opt-out rate from the previous seven settlements.

### C. *The current settlement agreement*

The settlement with DMC was reached on August 31, 2015, with the Court's assistance immediately following this Court's Final Pretrial Conference. This followed multiple prior mediation sessions under the auspices of the Court-appointed Settlement Master, Judge Layn R. Phillips (Retired).

This final round of negotiations was conducted on the eve of trial (scheduled to begin October 5, 2015) and hence was based on a full understanding of the strengths and weaknesses of the case uncovered during discovery, subsequent motion practice and orders from the Court, including at the Pre-Trial Hearing. The basic terms of the Settlement Agreement include:

### 1.  The settlement amount

The proposed Settlement Agreement provides that DMC will pay $42,000,000 in cash for the benefit of the Class. Settlement Agreement ¶ 20. This amount exceeds the combined total collected from the four largest other defendants (St. John, Oakwood, Beaumont, and Henry Ford).

### 2.  Release

In exchange for the above consideration from DMC, Plaintiffs have agreed for themselves and on behalf of the Class, to release and discharge

8

DMC from any and all claims against it arising from or relating in any way to any alleged anticompetitive conduct by DMC prior to the Execution Date concerning the monetary compensation, non-monetary compensation, recruitment, employment and/or retention of Class members in short term acute care facilities in Detroit. *Id.* at ¶ 35. The Released Claims include all claims related to or arising out of the facts, occurrences, transactions or other matters alleged on behalf of the Class members in the Class Action during the Class Period, but exclude any claims based upon a nurse's employment as a supervisory, managerial and advanced practice nurses. *Id.*

This is the same scope of release as was included in all seven previously approved settlements.

### D. The timeline

Pursuant to Fed. R. Civ. P. 23(e), a hearing on the final approval of the settlement should take place after class members have received notice and have had the opportunity to evaluate the settlements. Plaintiffs propose the following schedule, which is consistent with the terms of the Settlement Agreement:

   1. Notice to be mailed on a date no later than 40 days after this Court issues its Order granting this Motion (the "Notice Date");

   2. Plaintiffs' motion for final approval of the settlement to be filed no later than 60 days following the Notice Date;

3.      Plaintiffs' counsel will submit any petition for fees or recovery of costs at least 45 days prior to the date the Court sets for a hearing on final approval;

4.      Any objections to the settlement and request for fees and costs must be filed with the Court and served on Class Counsel, postmarked no later than 20 days prior to the date the Court sets for a hearing on final approval;

5.      Class counsel may respond to any objections no later than 10 days prior to the date the Court sets for a hearing on final approval;

6.      Affidavits or declarations showing that notice to the Class was made in accordance with the preliminary approval order to be filed no later than 10 days prior to the date the Court sets for a hearing on final approval;

7.      A hearing before the Court on final approval of the settlement to be scheduled subject to the Court's convenience, but no sooner than 60 days from the Notice Date.

## III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be approved by the Court before a case may be dismissed or compromised. *Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *8 (E.D.

Mich. June 28, 2006). "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

### A. The standard for granting preliminary approval

The Court is not required at this first stage of the approval process to determine whether it ultimately will approve the Settlement Agreement.[2] Rather, at this time, the Court's analysis is more limited: "the court first must determine whether the proposed settlement is potentially approvable." *Berry v. Sch. Dist. of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998); *Reed v. Rhodes,* 869 F. Supp. 1274, 1278 (N.D. Ohio 1994). The purpose of this preliminary review is to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Berry,* 184 F.R.D. at 97. A district court "bases its preliminary

---

[2] Courts usually conduct a detailed analysis of whether the proposed settlement is fair, adequate, and reasonable only at the final approval stage. At that stage, the court considers an eight factor analysis to determine whether the settlement is fair, adequate, reasonable and consistent with the public interest. *In re Delphi Corp. Sec., Derivative &"ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008).

approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Telectronics,* 137 F. Supp. 2d at 1026; *In re Dun & Bradstreet Credit Servs. Litig.,* 130 F.R.D. 366, 370 (S.D. Ohio 1990). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d. at 1015 (quoting MANUAL FOR COMPLEX LITIGATION §30.44 (2d ed. 1985)).

**B. The proposed settlement is in the range of possible approval as fair, reasonable and adequate.**

Here, the settlement with DMC falls well within the range warranting preliminary approval and there are no grounds to doubt the fairness of the proposed settlement. The parties engaged in arms-length negotiations over many years, including multiple sessions with the assistance of the Court and the Court-appointed Settlement Master, Judge Layn R. Phillips (Retired). DMC and the Class were represented by experienced counsel, and the Settlement Agreement was executed just weeks before trial was to begin and

after the Court had issued its rulings on all pending Motions in Limine and all other pending matters. Transcript of Pretrial Conference, Aug 31, 2015. ECF No. 952. The Settlement Agreement provides certainty and a substantial settlement amount to be paid to members of the Class that avoids the risk of ongoing litigation. Such substantial relief is far preferable to the possibility of a smaller recovery or none at all. In short, the proposed Settlement is a result that merits preliminary approval.

"[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion ..." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). If, as here, the proposed settlements "fall[] with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement[s]." *Telectronics,* 137 F. Supp. 2d at 1015.

Recovery from a single defendant of an amount that exceeds the amount collected in settlements from the other four largest defendants in this case combined certainly suggests that this settlement falls within the range of possible approval. Viewed as a percentage of DMC's nurse wage bill—

the metric used for determining all previous settlements—DMC has agreed to pay slightly over 7.1% of its wage bill, versus 2% for previous settlements. This percentage of recovery is well within the range of settlements approved in other antitrust cases. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (settlement represented approximately two percent of sales during the Class Period); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) (settlement represented approximately two percent of sales during the Class Period).

### C. The proposed settlement does not disclose grounds to doubt its fairness.

In addition to being well within the range of possible approval, the proposed settlement does not disclose any ground for the Court to doubt its fairness. Because vigorous, arms-length negotiations between seasoned counsel with the assistance of the Court and a Court-appointed mediator protect against collusion and advance the fairness considerations of Rule 23(e), settlements resulting from such negotiations are entitled to deference from the Court. *See, e.g., Telectronics,* 137 F. Supp. 2d at 1018 ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")); *Rankin*, 2006 U.S. Dist. LEXIS 45706, at *8 ("The Court should

… consider the judgment of counsel and the presence of good faith bargaining between the contending parties."). Plaintiffs' Counsel here has extensive experience in handling antitrust cases and other complex litigation. Lead Counsel Keller Rohrback L.L.P. and Cohen Milstein Sellers and Toll are national leaders in this area of complex litigation. Lead Counsel James & Hoffman, PC brings unique experience in litigating employment-related class actions as well as having played a critical role in this matter. These three firms are also lead counsel in the related nurse wage antitrust actions pending in San Antonio and Memphis as well as the concluded nurse wage antitrust action in Albany, giving them experience in understanding the legal and factual issues underlying the proposed class' claims. Farrow Decl., ¶ 1. Lead Counsel was, therefore, in a strong position to evaluate the strengths and weaknesses of its case. DMC, in turn, was represented by nationally recognized antitrust and class action attorneys.

> **D. The proposed settlement achieves an excellent result for the class, particularly given the expense, duration and uncertainty of continued litigation.**

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain

little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013. Presenting an antitrust case of this type on the merits is a mammoth undertaking, with associated risks, expense, and delay. Here, Plaintiffs have alleged violations of Section 1 of the Sherman Antitrust Act. This Court has dismissed Plaintiffs' claim under the *per se* rule, rendering that claim potentially viable only after Plaintiffs expend considerable time on an appeal whose outcome is far from certain. Indeed, about the only thing certain at this time is that any resolution of that claim will be delayed by many years. To prevail on their Rule of Reason claim requires proof of multiple elements, as detailed and analyzed in this Court's ruling on summary judgment. That order set forth examples of what the Court viewed as challenges facing Plaintiffs in proving that claim. ECF No. 737. Continuing this litigation against DMC, even with a pending trial in a few weeks, would still entail a lengthy and expensive legal battle, involving complex legal and factual issues. *Cardizem*, 218 F.R.D. at 523. "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *Id.*

Against this background, DMC's $42,000,000 payment provides for

significant compensation to the Class that will be available much earlier than if litigation against DMC continued through trial and appeal. Because the "complexity, expense, likely duration and risks of litigation, the state of the proceedings to date, the negotiations leading up to, and the ultimate terms" of the settlement, it certainly falls within the possible range of approval as a "fair and reasonable" settlement of the Class' claims. *In re Delphi,* 137 F.R.D. at 502.

## IV.   NO FURTHER OPPORTUNITY TO OPT-OUT OF THE CLASS IS REQUIRED OR SHOULD BE OFFERED.

This settlement is on behalf of a class already certified by the Court under Rule 23(b)(3). ECF No. 842. As such, Rule 23(e)(4) vests in the Court the authority to decide whether or not another opportunity to opt out should be offered. The parties respectfully suggest that the circumstances of this case indicate that such an additional opportunity is neither required nor appropriate. Only three nurses opted out of the Class, and only a handful of nurses opted out of any of the previous settlements. This litigation has been going on for very many years. No nurse who opted out of any previous settlement appears to have done so because he or she wished to pursue his or her own individual claim.[3] Any nurse whose only goal in opting out is to

---

[3] Indeed, some of the people who opted out of prior settlement have since been in touch with Class Counsel wishing to retract that decision once they

express a desire not to share in the settlement can achieve that goal by simply not submitting a claim. There can be no serious suggestion that any nurse's opportunity to pursue an individual claim for underpayment of wages between 2002 and 2006 would be compromised if they were not allowed to opt out to pursue that claim alone now. Because adding another round of opt out opportunities will serve no substantive end, the parties (through Plaintiffs) suggest that this Court exercise its discretion and not allow another round of opt outs from the certified Class.

## V.   THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO CLASS MEMBERS.

Once a court grants preliminary approval to a proposed settlement, "[n]otice of the proposed settlement and the fairness hearing must be provided to class members." *Reed,* 869 F. Supp. at 1278; *see also* Fed. R. Civ. P. 23(e)(1)(B), (C).

To satisfy due process, notice to a Class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Substantively, the notice should provide enough information to

---

heard about the payments being received by their fellow workers. Others indicated they opted out because of a fear of retaliation for participating.

allow Class members "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Reed*, 869 F. Supp. at 1279. Procedurally, members of the Class must receive the "best notice practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Vukovich,* 720 F.2d at 921. Where, as here, the names and last known addresses of all Class members are available from the Defendants' records, and have been updated through the distribution process for the prior settlements, mailing the notice to the Class members at those addresses is the best notice practicable under the circumstances. *Thompson, v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) (citing *Mullane,* 339 U.S. at 315).

Here, the proposed form of Class Notice—substantively identical to those previously approved by this Court and modeled on that suggested by the Federal Judicial Center—describes in plain English the terms and operation of the Settlement Agreement, the considerations that caused the Plaintiffs and Lead Counsel to conclude that the Settlement Agreement is fair and adequate, the procedure for objecting to the Settlement Agreement, and the date and place of the Fairness Hearing. *See* HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 8.34 (4th ed. 2002). The Notice fully describes all terms of the Agreement, allowing class members

to make an informed judgment as to whether the settlement represents an option preferable to bearing the risks of ongoing litigation against DMC.

DMC has agreed to provide updated address information for Class members who were employed by DMC (similar information was previously obtained from the other settling defendants). Allowing time for that information to be provided and integrated into Plaintiffs' existing mailing list, Plaintiffs propose that within forty (40) days of entry of an Order of Preliminary Approval by the Court of this settlement, the Court appointed Claims Administrator shall mail to each member of the Class by first class mail postage prepaid, a Notice substantially identical to that attached to the Farrow Declaration as Exhibit B.[4] As has been done for all previous notices, Class Counsel shall maintain a web site on the internet, the URL of which shall be included in the Class Notice. A copy of the Notice will also be available on the website. This Notice will fairly apprise Class members of the Settlement and their options, and satisfy due process requirements.

## VI.   CONCLUSION

Plaintiffs respectfully request that the Court grant their motion and enter an order preliminarily approving the Settlement, approving the form of

---

[4] Plaintiffs propose that Rust Consulting continue to act as the Claims Administrator for this settlement due to its extensive familiarity with this litigation, including already having a compiled database of Class member contact information.

the Class Notice, setting all appropriate deadlines, and ordering a stay of all

proceedings against DMC except those proceedings provided for or required

by the Settlement Agreement. A proposed form of Order is being filed with

this Motion.

Dated this September 11, 2015

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By: /s/Raymond J. Farrow
Mark A. Griffin
Raymond J. Farrow
Tana Lin
Lynn L. Sarko
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384

Daniel A. Small
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue NW,
Suite 500 West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

David P. Dean
JAMES & HOFFMAN, PC
1130 Connecticut Avenue NW,
Suite 950
Washington, DC 20036
Tel: (202) 496-0500
Fax: (202) 496-0555

E. Powell Miller (P39487)
THE MILLER LAW FIRM, PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200

Daniel E. Gustafson
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**Attorneys for Plaintiffs**


Joseph Goldberg
**Freeman, Boyd, Hollander,
Goldberg, Urias, & Ward, P.A.**
20 First Plaza, Suite 700
Albuquerque, NM  87102
Tel: (505) 244 7520

**Lead Trial Counsel**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY
A. SUHRE on behalf of themselves and
others similarly situated,

                 Plaintiffs,

    v.

VHS of MICHIGAN, INC., d.b.a.
DETROIT MEDICAL CENTER, et al.,

                 Defendants.

No. 06-15601

Hon. Gerald E. Rosen

### CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the counsel of record for all parties for Civil Action No. 2:06-cv-15601-GER-DAS, and I hereby certify that there are no individuals entitled to notice who are non-ECF participants.

                 s/ Raymond J. Farrow
                 Keller Rohrback L.L.P.
                 1201 Third Avenue, Suite 3200
                 Seattle, WA 98101
                 Tel: (206) 623-1900
                 E-mail: rfarrow@kellerrohrback.com

CERTIFICATE OF SERVICE – PAGE 1